# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BAY CIRCLE PROPERTIES, LLC, *et al.* | ) | Case No.: 15-58440-wlh |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## NON-DEBTOR LOAN PARTIES' POST-HEARING BRIEF REGARDING DEBTOR'S MOTION TO OBTAIN POST-PETITION FINANCING

COME NOW Niloy, Inc., Nilhan Financial, LLC, Chittranjan K. Thakkar, Saloni Thakkar, Niloy & Rohan LLC, JAX Fairfield Financial, LLC, Niloy Thakkar, Rohan Thakkar, and Sugarloaf Centre Partners, LLC (collectively, "Non-Debtor Loan Parties"), and file this post-hearing brief regarding Debtor's Motion to Obtain Post-Petition Financing. [Dkt. No. 434]. Non-Debtor Loan Parties are parties to that Settlement Agreement (together with Debtors, the "Loan Parties"), that is the subject of the opposition filed by Bay Point Capital Partners, LP ("Bay Point"), as assignee of Wells Fargo Bank, N.A. ("Wells Fargo"). [Dkt. No. 446].

This matter came before the Court for an evidentiary hearing on October 20, 2016. Bay Point is the only party to object to Debtor's motion, which if approved would result in Bay Point's receipt of $7.5 million. As the sole grounds for its objection, Bay Point claims that Debtors committed certain defaults under the

Settlement Agreement.  The specific question before this Court is whether there exists any "Default or Event of Default" under the terms of the Settlement Agreement sufficient to allow Bay Point to maintain its lien on Parcels 2, 3, and 4 (collectively, the "Sugarloaf Parcels").  As observed by the Court in its closing remarks, Section 11A of the Settlement Agreement permits Debtors to obtain refinancing upon approval by this Court, but Bay Point is not required to release its lien against such refinanced parcel if there exists any Default or Event of Default. (Settlement Agreement, Def. Ex. 1, § 11A.)

In its analysis, the Court must consider the "cardinal rule of construction," which is "to ascertain the intention of the parties."  O.C.G.A. § 13-2-3; *Calhoun, GA NG, LLC v. Century Bank of Georgia*, 320 Ga. App. 472, 474–75 (2013). Further, Georgia law imposes on both parties an implied duty of good faith in carrying out the mutual promises of the contract.  *Freund v. Warren*, 320 Ga. App. 765, 769 (2013).  In performing the terms of the contract, the general rule is not "strict compliance" but "substantial compliance" with the "spirit and the letter of the contract."  O.C.G.A. § 13-4-20.  As explained by the Georgia Supreme Court:

> At common law a strict and literal performance of the terms of the contract was required, but by rules of equity, either adopted by statute or recognized by the courts, a substantial compliance with the terms of the contract is sufficient.

2

*Dennard v. Freeport Minerals, Co.*, 250 Ga. 330, 332 (1982) (finding substantial compliance with lease agreement where bargained-for considerations were not materially altered).  Corresponding to the requirement that performance of a contract need only be substantially in compliance with the spirit and the letter of the contract, "only a **material** breach of contract is actionable."  Ga. Contracts Law and Litigation § 11:7 (2d ed.) (citing *Dennard* and other Georgia cases) (emphasis added).

In light of the foregoing well-settled principles, none of the hyper-technical defaults alleged by Bay Point is grounds for its refusal to release its lien against the Sugarloaf Parcels:

1.   The intent of the Settlement Agreement is expressly stated as follows: "to give Obligors an opportunity, on or before the Maturity Date, to pay in full all of the Obligations in cash."  (Settlement Agreement, D. Ex. 1, § 10.B.)

2.   The Settlement Agreement entitled Debtors to obtain Permitted Refinancing as an available option for repayment of the Obligations, including release of Bay Point's lien on the refinanced Parcel, provided that the proceeds meet the Minimum Release Amount for such Parcel and "no Default or Event of Default then exists."  (*Id*. § 11.A.)

3

3. The Minimum Release Amounts were negotiated and agreed to as between Bay Point's predecessor (Wells Fargo) and Loan Parties, and reflect values that are at least equal to or greater than market value to ensure that the collateral that remains is adequate security for the Obligations.

4. There is no evidence that any of the defaults alleged by Bay Point impaired the value of the remaining parcels and, therefore, no grounds for Bay Point to object to the release of its lien against the Sugarloaf Parcels. Although Debtors believe that the value of the remaining parcels still far exceeds the balance of the Obligations, the value is irrelevant because the parties specifically negotiated and stipulated to the Minimum Release Amounts listed in the Settlement Agreement.

5. As admitted by Bay Point, the basis for Bay Point's objection to the release of its lien against the Sugarloaf Parcel has nothing to do with any of the alleged defaults of the Settlement Agreement. Instead, Bay Point purportedly views the Sugarloaf Parcels as the "crown jewel," the release of which would undermine Bay Point's "high risk, high reward" business model. Bay Point, however, stands in the shoes of Wells Fargo, and its status as a hard-money lender does not entitle Bay Point to renegotiate a higher Minimum Release Amount for the Sugarloaf Parcels.

6. None of the alleged defaults "materially alter the consideration for which [Bay Point's] predecessor bargained." *Dennard*, 250 Ga. at 333. The remaining parcels remain unaffected by any of the alleged defaults, which will be mooted as a practical matter upon approval of the proposed financing. Bay Point will receive the entire benefit of its bargain when it receives $7.5 million in exchange for the release of the Sugarloaf Parcels, consistent with the terms of the Settlement Agreement and the stated intent of allowing Loan Parties to pay down the remaining indebtedness.

7. Loan Parties have substantially performed their obligations under the Settlement Agreement, which is a lengthy and detailed document, including by making timely payments of approximately $2 million to Wells Fargo and Bay Point in accordance with the terms of the Settlement Agreement for the past year. The financing proposed by Debtors in their motion is necessary for Loan Parties to meet the payment milestone deadline of $5.5 million due on October 31, 2017 under the terms of the Second Amendment. (D. Ex. 3.) In light of Loan Parties' substantial compliance with the Settlement Agreement, the proposed financing should be approved and Bay Point's lien against the Sugarloaf Parcels released in accordance with the Settlement Agreement (and as required under the terms of SIMBA Global's loan commitment).

WHEREFORE, Non-Debtor Loan Parties request that the Court approve Debtor's Motion to Obtain Post-Petition Financing, require Bay Point to release its liens against the Sugarloaf Parcels, and allow the parties to continue to perform under the terms of the Settlement Agreement until the Maturity Date of April 30, 2017.

This 24th day of October, 2016.

/s/ *Richard L. Robbins*
Richard L. Robbins
Georgia Bar No. 608030
rrobbins@robbinsfirm.com
Jeremy U. Littlefield
Georgia Bar No. 141539
jlittlefield@robbinsfirm.com
ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD LLC
999 Peachtree Street, N.E., Suite 1120
Atlanta, Georgia 30309
Telephone: 678-701-9381
Fax: 404-856-3250

*Attorneys for Non-Debtor Loan Parties*

## CERTIFICATE OF SERVICE

I certify that on this day, I served a copy of the foregoing **NON-DEBTOR LOAN PARTIES' POST-HEARING BRIEF REGARDING DEBTOR'S MOTION TO OBTAIN POST-PETITION FINANCING** via the CM/ECF electronic filing system on all Electronic Filing Users who have consented to such service.

This 24th day of October, 2016.

>   */s/ Richard L. Robbins*
>   Richard L. Robbins