Case 15-58440-wlh    Doc 591    Filed 02/14/17    Entered 02/14/17 14:36:55    Desc Main
Document    Page 1 of 10

**IT IS ORDERED as set forth below:**



**Date: February 14, 2017**



_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | CASE NO. 15-58440-WLH |
| ) | (Jointly Administered) |
| BAY CIRCLE PROPERTIES, LLC *et al.*,[1] ) | |
| ) | CHAPTER 11 |
| Debtors. ) | |
| ) | JUDGE WENDY L. HAGENAU |

### SUPPLEMENTAL ORDER AUTHORIZING SALE

Debtors' Motion to Authorize Sale ("Motion") [Docket No. 567] came before the Court for an emergency hearing on January 31, 2017. At the conclusion of the hearing, the Court authorized the sale and at Docket No. 590 has entered an order approving such sale. The Court now enters this Supplemental Order to set forth its additional Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The Debtor Bay Circle Properties, LLC ("Bay Circle"), together with its affiliates DCT Systems Group, LLC, Sugarloaf Centre, LLC, Nilhan Developers, LLC and NRCT, LLC,

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Bay Circle Properties, LLC (1578), DCT Systems Group, LLC (6978), Sugarloaf Centre, LLC (2467), Nilhan Developers, LLC (6335), and NRCT, LLC (1649).

1

(collectively, "Debtors") filed bankruptcy petitions under Chapter 11 of the United States Bankruptcy Code on May 4, 2015. Bay Circle owns property at 6600 and 6610 Bay Circle, Gwinnett County, Georgia ("Bay Circle Property"). The Bay Circle Property has two office warehouse buildings which include approximately 81,000 square feet each. The building at 6600 Bay Circle has one tenant, while the building at 6610 is vacant.

On October 3, 2014, Good Gateway, LLC ("GG") and SEG Gateway, LLC ("SEG") obtained judgments in the amounts of $2.5 million and $12 million respectively against Chuck Thakkar (the Debtor's principal) and other non-debtor entities in the Circuit Court for the Ninth Judicial Circuit of Orange County, Florida. The judgment is not against Mr. Thakkar's wife nor against any of the Debtors in this case. GG and SEG recorded writs of *fieri facias* in Gwinnett County, Georgia with respect to those judgments on December 26, 2014. At that time, the Bay Circle Property was titled in Thakkar's and his wife's name. On May 1, 2015, Thakkar and his wife transferred their interest in the Bay Circle Property to Bay Circle, but subject to the liens of GG, SEG and Wells Fargo (discussed below).

By order entered on January 13, 2016 [Docket No. 302], the Court approved a Settlement Agreement, as amended, between and among all the Debtors and Wells Fargo Bank, National Association ("Wells Fargo") and other parties to the loans with Wells Fargo. Pursuant to the stipulations contained in the Settlement Agreement, Wells Fargo was owed over $22 million as of August 2015, the repayment of which is secured by a first priority lien on seven parcels of the Debtors' property, including the Bay Circle Property, and substantially all of the Debtors' personal property. The loans date back to at least 2013 and in part to 2009. Pursuant to the Settlement Agreement, the Debtors were to make certain milestone payments by certain deadlines. Wells Fargo agreed to release prices for each property. Upon an event of default, Wells Fargo was permitted under the terms of the Settlement Agreement and the order approving

it to foreclose on its collateral through the typical, non-judicial foreclosure process in Georgia, or to record deeds-in-lieu on each of the properties subject to its existing liens, or alternatively to record the deeds-in-lieu and credit the outstanding debt in the amount of the agreed-upon release prices. The Settlement Agreement, and in particular the first amendment thereto [Docket No. 300], provided that, in the event Wells Fargo intended to use the latter option (record the deeds-in-lieu and credit the debt), notice must be filed with the bankruptcy court and interested parties other than those parties to the loans could object within 10 days. If an objection was filed, then the lender could only proceed to use the third alternative after agreement with the objecting party. An objection, though, did not prohibit Wells Fargo from recording the deeds-in-lieu subject to their existing liens. This notice proviso was specifically added to satisfy the objections to the Settlement Agreement by GG and SEG, who expressed concern that the release prices could be too low at the time the deeds-in-lieu were recorded and that the public auction afforded by the non-judicial foreclosure sale would provide parties with an opportunity to insure that maximum value was obtained. Subsequently, Wells Fargo assigned its interest to Bay Point Capital Partners, LP ("Bay Point") which now stands in the shoes of Wells Fargo in all respects.

One of the milestone payment dates, according to the Settlement Agreement, was January 31, 2017 when approximately $3.5 million was due to Bay Point. Debtor Nilhan Developers had sought authority from the Court to refinance the debt on its property to enable payment by the milestone deadline. The Court entered an order granting Nilhan Developers' Motion to Obtain Post-Petition Financing on January 25, 2017 [Docket No. 557]. Nevertheless, on January 30, 2017, Debtor Bay Circle filed its Emergency Motion to Sell Bay Circle's Property for $5 million, alleging that the proposed refinancing of Nilhan Developers property was unable to close. The Court authorized an emergency hearing held on January 31, 2017. Notice of the hearing was served as directed on Bay Point, GG, SEG and all creditors via e-mail and fax. Bay Point filed a

Limited Objection to Motion to Sell, asserting its right to credit bid at the sale pursuant to 11 U.S.C. § 363(k) and the Settlement Agreement paragraph 10. Bay Point asserted that it was owed over $15 million as of this date which could be used for the credit bid. At the hearing, Bay Circle requested authority to sell the Bay Circle Property free and clear of liens pursuant to 11 U.S.C. §§ 363 (f)(2), (3), (4) and (5). Bay Point asserted its right to credit bid. GG and SEG objected to the sale of the Bay Circle Property free and clear of their liens, arguing that the shortness of time to consider the Motion made approval inappropriate, that Section 363(f) was not satisfied, that the Debtors should be required to marshal and sell other properties before selling the Bay Circle Property, and pointing out that there is a pending adversary proceeding involving the transfer of the Bay Circle Property from Mr. and Ms. Thakker to Bay Circle. Also present at the hearing was the proposed purchaser who represented that it was unrelated to any of the Debtors or their principals, and that the purchaser was prepared to close, with all of the consideration in its attorney's escrow account. The sale to the purchaser would net $5 million to Bay Circle which would be paid to Bay Point in accordance with the Settlement Agreement, satisfying the milestone payment deadline and the release price for the Bay Circle Property.

The Court authorized the attorney for the United States Trustee to conduct an auction between Bay Point and the third-party purchaser. The attorney for the U.S, Trustee represented that the parties held a "spirited" auction resulting in the high bid of $5,350,000 by Bay Point as a credit bid. At the conclusion of the hearing, the Court overruled the objections to the sale and authorized the sale.

## CONCLUSIONS OF LAW

A sale of the Debtor's property not in the ordinary course of business is authorized under 11 U.S.C. § 363. Such a sale may be made free and clear of liens, claims, encumbrances and interests based upon Section 363(f). This section allows the sale free and clear of liens to occur,

4

for example, if the holder of the lien consented to the sale, and upon other conditions described below.  Here, the property to be sold was encumbered by the first priority lien of Bay Point in an amount in excess of $15 million, which lien encumbered the entirety of the property.  A one-half interest in the property was encumbered by the judgments of GG and SEG, subordinate to Bay Point's lien.  The Court notes that Bay Point consents to the sale of the Bay Circle Property, particularly since it is the successful bidder with a credit bid, and thus the only lienholder on a one-half interest in the property has consented to the sale free and clear of liens as authorized under 11 U.S.C. § 363(f)(2).  The remaining question arises as to the Court's authority to authorize the sale of the other one-half interest of the property free and clear of the judgment liens of GG and SEG.

     The Debtor asserted first that a sale free and clear of GG's and SEG's liens was authorized under 11 U.S.C. § 363(f)(3) which allows such a sale if "such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property."  The Court recognizes there is a split among the courts as to the interpretation of this section.  The Ninth Circuit Bankruptcy Appellate Panel, in <u>Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)</u>, 391 B.R. 25 (BAP 9th Cir. 2008), held that Section 363(f)(3) requires that the purchase price be in excess of the face amount of all liens on the property.  On the other hand, other courts hold that a sale free and clear is authorized under Section 363(f)(3) if the purchase price of the property meets or exceeds the value of the liens asserted against it, with such value being determined in accordance with 11 U.S.C. § 506(a).  <u>In re Beker Industries Corp.</u>, 63 B.R. 474 (Bankr. S.D. N.Y. 1986).  Other courts in this district have held similarly.  <u>See</u> <u>In re Flyboy Aviation Properties LLC</u>, 501 B.R. 828 (Bankr. N.D. Ga. 2013) ("because the value of the liens, as determined by section 506 of the Bankruptcy Code, is being paid, section 363(f)(3) provides authority for the Debtor to sell the Property." <u>Id</u>. at 834.); <u>In re Atlanta Retail,</u>

Inc., 456 F.3d 1277 (11th Cir. 2006) (affirming the bankruptcy court's decision which included a rejection of the junior lienholder's argument that Section 363(f)(3) required repayment of the face value of all liens, Id. at 1282). The Court believes this latter reading of Section 363(f)(3) more appropriate. First, Section 363(f)(3) talks about the "value" of the liens, not the amount of the liens. Secondly, if Section 363(f)(3) were held to require payment in full of the face amount of all liens, there would seem to be little reason for the provision. A sale which results in the payment in full of the liens, of course, is free and clear of them.

The Court concludes that the purchase price of $5,350,000 meets or exceeds the value of the liens on the property. The Court notes that the Debtor scheduled the value of the property at $5.5 million and that the minimum release price in the Settlement Agreement is $5 million. Moreover, the current purchase price is a result of bidding between Bay Point and a disinterested third party who was willing to pay all cash and close by the end of the day. The Court notes further the first lien on the property is $15 million and there is no evidence or contention that the value of the property exceeds $15 million so as to provide any value to the liens of GG and SEG. As the liens of GG and SEG on a one-half interest in the Bay Circle Property have zero value, Section 363(f)(3) has been satisfied.

The Debtor also argued that a sale free and clear of liens was appropriate under 11 U.S.C. § 363(a)(4) because the judgments were on appeal and therefore the subject of a bona fide dispute. GG and SEG argued that an unstayed judgment on appeal does not constitute a bona fide dispute. The Court need not reach that argument since it has decided that the sale free and clear of liens is authorized under Section 363(f)(3). Finally, the Debtor argued that a sale free and clear of liens was authorized under 11 U.S.C. § 363(f)(5), contending that a "legal or equitable proceeding" as contemplated by this section could be either a cramdown process under

the Bankruptcy Code or a judicial foreclosure process under Georgia state law. Again, the Court need not reach this argument and expresses no opinion thereon.

Next, GG and SEG argued that the Bay Circle Property should not be sold because it is the subject of a fraudulent conveyance adversary proceeding. GG and SEG have brought an adversary proceeding in this bankruptcy case against the Debtor, Mr. Thakkar and his attorney, alleging that the transfer of the property from Mr. and Mrs. Thakkar to Bay Circle was a fraudulent one. The Court notes again that the fraudulent conveyance action is only as to a one-half interest in the property. GG and SEG acknowledge they have no judgment against Mrs. Thakkar and the *fi fas* that were recorded did not affect her one-half interest in the property. The Court concludes that the Bay Circle Property was property of the estate at the time the bankruptcy case was filed because the property was indisputably titled in the name of the Debtor. 11 U.S.C. § 541(a)(1). The property remains property of the estate unless and until some decision is made that results in it not being property of the estate. The Court notes that, even if GG and SEG prevail on their fraudulent conveyance argument resulting in an avoidance of the transfer, it would only avoid the transfer of a one-half interest. Bankruptcy courts have authority to sell a non-debtor co-owner's interest in property under Section 363(h), subject to certain protections of the co-owner's interest. Thus, the Court retains authority to dispose of the property of the estate.

Next, GG and SEG argue that the sale of the Bay Circle Property deprives them of their rights under the Settlement Agreement. The only right SEG and GG have under the Settlement Agreement between Bay Point and the Debtors is effectively to insist upon a non-judicial foreclosure sale. The Court is aware, because it presided over the hearings on the matter, that the concern of GG and SEG at the time was that the property would be worth significantly more than the minimum release price and the creditors wanted some additional mechanism to insure a fair

value was obtained. The Court notes, however, that there is no notice required under the Settlement Agreement for Bay Point to record their deeds-in-lieu subject to existing Bay Point liens.[2] In other words, upon an event of default, the deeds-in-lieu can be recorded and the Debtors lose the value of the property. It is also important to note that a default under the Settlement Agreement permits Bay Point to record the deeds-in-lieu as to <u>all</u> remaining properties of the Debtors, not just the Bay Circle Property. GG and SEG argued at the sale hearing that, by not requiring a non-judicial foreclosure, GG and SEG were unable to exercise their rights as lienholders in the foreclosure process. The Court notes that, with over $15 million owed Bay Point ahead of GG and SEG, it seems unlikely that SEG and GG would want to or be willing to pay the full amount owed to Bay Point in order to protect that interest. Even any attempt to "credit bid" their judgment liens would be challenging at best since their lien is only on a one-half interest in the property and is deeply subordinate to the first lienholder. GG and SEG did not request to credit bid in this sale and they were never prohibited from exercising any right to credit bid. Lastly, it is the Court's conclusion that the auction conducted by the attorney for the United States Trustee between the lender and the true disinterested third party satisfies the concern of the Court and should satisfy the concern of GG and SEG that the amount obtained for the Bay Circle Property is a fair amount.

  Finally, SEG and GG argued that the Court should require the Debtors to marshal all their properties for GG's and SEG's benefit. SEG and GG point out that their liens are only on the Bay Circle Property and with the Bay Circle Property being sold earlier in the process, they may lose an opportunity to share in ultimate equity of all the Debtors' properties. GG and SEG asked the Court to require the Debtors to sell other properties before the Bay Circle Property. The Court notes there is nothing in the Settlement Agreement that requires the Debtors to proceed in

---

[2] The Court added a requirement for five days notice in its cash collateral order [Docket No. 421].

any particular order to sell or refinance their properties. The fact that the Bay Circle Debtor could choose to sell its property before some of the other Debtors would choose to sell theirs has been a possibility for the entirety of this case and the issue has never been raised. Moreover, as counsel for the Debtors noted, each of the Debtors is separate and owns its property separately. Nevertheless, given the shortness of time within which the Court needed to consider the Motion to Sell, the Court deems it appropriate to give GG and SEG additional time to make this argument, and for the Court to consider the same. The Court can fashion an appropriate equitable remedy if GG and SEG establish the right to one. For example, the Court can consider granting GG and/or SEG a priority claim in other of the Debtors' cases to compensate for any actual harm caused by the sale. At the sale hearing, Mr. Thakkar, the principal of all of the Debtors, acknowledged this possibility. In order for the Court to have adequate time to consider the arguments and whether there is any likelihood that GG and SEG could suffer actual harm given the amounts owed and their interest in only one-half of Bay Circle's Property, the Court directed at the hearing and hereby directs that GG and SEG file any requests for marshaling by March 17, 2017. Debtors are directed to respond within 30 days thereafter at which point the Court will determine whether further proceedings are necessary.

## CONCLUSION

Based on the facts found and the conclusions of law stated above, and in its prior order, the Court authorizes Bay Circle to sell its property to Bay Point for $5,350,000 free and clear of the liens of Bay Point, GG, and SEG.

### ### END OF ORDER ###

**DISTRIBUTION LIST**

John A. Christy
J. Carole Thompson Hord
Jonathan A. Akins
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, Suite 800
Atlanta, GA 30309-4516

Thomas Wayne Dworschak
Office of the U. S. Trustee
75 Spring Street SW, Room 362
Atlanta, GA 30303

John F. Isbell
Garrett A. Nail
Thompson Hine LLP
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA  30326

Shayna M. Steinfeld
Steinfeld & Steinfeld
P.O. Box 49446
Atlanta, GA 30359

Jon E. Kane
Mateer & Harbert, PA
225 E. Robinson Street, 600
Orlando, FL  32801