

**IT IS ORDERED as set forth below:**

**Date: November 6, 2017**



_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRIST OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 15-58440-WLH |
| | ) | (Jointly Administered) |
| BAY CIRCLE PROPERTIES, LLC *et al.,*[1] | ) | |
| | ) | CHAPTER 11 |
| Debtors. | ) | |
| | ) | JUDGE WENDY L. HAGENAU |

**ORDER ON AMENDED AND RESTATED MOTION FOR RELIEF
UNDER 11 U.S.C. § 363 AND SUBSTANTIVE CONSOLIDATION**

The Amended and Restated Motion for Relief under 11 U.S.C. § 363, and Substantive

Consolidation ("Motion") [Docket No. 740] came before the Court for hearing, after notice, on

October 10, 2017.  The Court heard evidence and argument from the Debtors, represented by

John A. Christy, from the Movants, represented by Walter E. Jones, from Bay Point Capital

Partners LP ("Bay Point"), represented by Garrett A. Nail, and from Simba Global Pty. Ltd.

("Simba"), represented by Michael D. Robl.  The Court provided the parties an opportunity to

submit supplemental briefs, all of whom submitted briefs.  This Order constitutes the Court's

Findings of Fact and Conclusions of Law.

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Bay Circle
Properties, LLC (1578), DCT Systems Group, LLC (6978), Sugarloaf Centre, LLC (2467), Nilhan Developers, LLC
(6335), and NRCT, LLC (1649).

## FINDINGS OF FACT

The Debtor Bay Circle Properties, LLC ("Bay Circle"), together with its affiliates DCT Systems Group, LLC ("DCT"), Sugarloaf Centre, LLC ("Sugarloaf"), Nilhan Developers, LLC ("Nilhan") and NRCT, LLC ("NRCT"),   (collectively, "Debtors") filed bankruptcy petitions under Chapter 11 of the United States Bankruptcy Code on May 4, 2015.  At the time of filing, Bay Circle owned property at 6600 and 6610 Bay Circle, Gwinnett County, Georgia ("Bay Circle Property").

On October 3, 2014, Good Gateway, LLC and SEG Gateway, LLC (collectively, "Gateway") obtained judgments in the amounts of $2.5 million and $12 million respectively against Chuck Thakkar (the Debtors' principal) and other non-debtor entities in the Circuit Court for the Ninth Judicial Circuit of Orange County, Florida.  The judgment was not against Mr. Thakkar's wife or against any of the Debtors in this case.  Gateway recorded writs of *fieri facias* in Gwinnett County, Georgia with respect to those judgments on December 26, 2014.[2]  At that time, the Bay Circle Property was titled in Thakkar's and his wife's name.  On May 1, 2015, Thakkar and his wife transferred their interest in the Bay Circle Property to Bay Circle, but subject to the liens of Gateway and Wells Fargo Bank, National Association ("Wells Fargo").

Wells Fargo began its association with the Debtors in 2008.  On August 15, 2008, Niloy, Inc. ("Niloy") and Nilhan Financial, LLC ("Nilhan Financial") executed a loan agreement with Wells Fargo which was guaranteed by Chuck Thakkar, his wife Saloni Thakkar, DCT, Sugarloaf, Nilhan, NRCT, and Niloy & Rohan, LLC ("N&R").  On July 16, 2010, Chuck and Saloni Thakkar executed a promissory note to Wells Fargo which was secured by certain personal and real property of Mr. and Mrs. Thakkar and guaranteed by DCT, Niloy and Nilhan Financial.

---

[2] The *fi fas* were recorded at the same time and Gateway took the position there was no need to differentiate between them because under Georgia law all judgments recorded in the same term of court share the same priority.  O.C.G.A. § 9-12-87.

Also on July 16, 2010, DCT executed a promissory note to Wells Fargo secured by certain personal and real property of DCT, Mr. and Mrs. Thakkar, Niloy and Nilhan Financial. Pursuant to an Amended and Restated Loan Agreement dated April 30, 2013, Mr. and Mrs. Thakkar executed an Amended, Restated and Consolidated Promissory Note in the principal amount of $12,910,000 and Niloy and Nilhan Financial executed an Amended, Restated and Consolidated Promissory Note in the principal amount of $19,750,000, both payable to Wells Fargo. Under the Amended, Restated and Consolidated Loan Agreement, the obligations of Niloy and Nilhan Financial were guaranteed by Bay Circle, DCT, Nilhan, Sugarloaf, NRCT, N&R, Mr. and Mrs. Thakkar, Orlando Gateway Partners, LLC, and Jax Fairfield Financial, LLC. Pursuant to the same Loan Agreement, the individual loans of Mr. and Mrs. Thakkar were guaranteed by Bay Circle, DCT, Nilhan, Sugarloaf, NRCT, N&R, Orlando Gateway Partners, LLC, Jax Fairfield Financial, LLC, Niloy and Nilhan Financial. All of the obligations of the primary borrowers and guarantors were secured by, *inter alia*, the assets of Niloy and Nilhan Financial, by equity interests in and a note owed to Jax Fairfield Financial, LLC, and by real property owned by Bay Circle, DCT, Sugarloaf, Nilhan, NRCT, and Orlando Gateway Partners, LLC. By letter dated April 3, 2015, Wells Fargo sent a notice to all of its obligors accelerating the maturity of all amounts due and stating Wells Fargo's intent to foreclose on all of its real property collateral on May 15, 2015. This notice precipitated the bankruptcy filings in this case.[3]

After litigation between Wells Fargo and the Debtors in this case, they reached a settlement. By order entered on January 13, 2016 [Docket No. 302], the Court approved a Settlement Agreement, as amended, between and among all the Debtors and Wells Fargo and other parties to the loans with Wells Fargo. Pursuant to the stipulations contained in the Settlement Agreement, Wells Fargo was owed over $22 million as of August 2015, the

---

[3] Orlando Gateway Partners, LLC filed a bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida on April 20, 2015.

repayment of which was secured by a first priority lien on seven parcels of the Debtors' property, including the Bay Circle Property. Pursuant to the Settlement Agreement, the Debtors were to make certain milestone payments by certain deadlines. Wells Fargo agreed to release prices for each property. Upon an event of default, Wells Fargo was permitted under the terms of the Settlement Agreement and the order approving it to foreclose on its collateral through the typical, non-judicial foreclosure process in Georgia, or to record deeds-in-lieu on each of the properties subject to its existing liens, or alternatively to record the deeds-in-lieu and credit the outstanding debt in the amount of the agreed-upon release prices. Notice of the proposed Settlement Agreement was served on all creditors, including Gateway. Gateway objected to the Settlement Agreement and the result of the objection was the first amendment to the Settlement Agreement [Docket No. 300], which provided that, in the event Wells Fargo intended to record the deeds-in-lieu and credit the debt, notice must be filed with the bankruptcy court and interested parties other than those parties to the loans could object within 10 days. If an objection was filed, then the lender could only proceed to record the deeds-in-lieu and credit the debt if it reached agreement with the objecting party. An objection, though, did not prohibit Wells Fargo from recording the deeds-in-lieu subject to their existing liens. Subsequently, Wells Fargo assigned its interest to Bay Point which then stood in the shoes of Wells Fargo in all respects.

One of the milestone payment dates in the Settlement Agreement was January 31, 2017 when approximately $3.5 million was due to Bay Point. On January 30, 2017, Debtor Bay Circle filed an Emergency Motion to Sell Bay Circle's Property for $5 million. After notice of an emergency hearing to be held on January 31, 2017, Bay Point filed a Limited Objection to Motion to Sell, asserting its right to credit bid at the sale pursuant to 11 U.S.C. § 363(k) and the Settlement Agreement paragraph 10. Bay Point asserted that it was owed over $15 million as of

4

this date which could be used for the credit bid.  Gateway objected to the sale of the Bay Circle

Property free and clear of its liens, arguing, *inter alia*, that the Debtors should be required to

marshal and sell other properties before selling the Bay Circle Property.  An unrelated third-party

purchaser was also present at that hearing that stood ready and able to close the purchase of the

Bay Circle Property for $5 million.  After an auction between the third-party purchaser and Bay

Point, conducted by the United States Trustee, the high bid was $5,350,000 by Bay Point as a

credit bid.

The Court overruled the objections to the sale and authorized the sale to Bay Point via

credit bid free and clear of liens [Docket Nos. 590 and 591].  However, the Court provided

Gateway additional time to make its marshaling and other equitable arguments, noting the Court

could fashion an appropriate equitable remedy if Gateway established the right to a remedy.  The

Court noted specifically, "For example, the Court can consider granting [Gateway] a priority

claim in other of the Debtors' cases to compensate for any actual harm caused by the sale.  At the

sale hearing, Mr. Thakkar, the principal of all of the Debtors, acknowledged this possibility."

[Docket No. 591, p. 9].  The Court then permitted Gateway to file its request for equitable relief

within 30 days.  After an extension of time, Gateway filed a Motion for Relief Under 11 U.S.C.

§ 363 and the Doctrine of Marshaling on March 24, 2017 [Docket No. 624].  This Motion was

amended and restated on August 25, 2017 to request substantive consolidation of all Debtors

[Docket No. 740].  On October 24, 2017, after the hearing, Gateway withdrew its request for

substantive consolidation [Docket No. 795].

## LEGAL ANALYSIS

The Motion focuses on certain facts and perceived inequity to Gateway by the sale of the

Bay Circle Property.  Gateway held a judgment lien subordinate to Wells Fargo on only the Bay

Circle Property.  Wells Fargo held a lien on property of each of the Debtors.  If Wells Fargo's

claim could be satisfied by liquidation of less than all the properties, Gateway's interest in the Bay Circle Property was unnecessarily lost and the equity holders (including Mr. Thakkar and his family) benefitted.  Gateway raised three primary theories for recovery of equitable relief: substantive consolidation, marshaling, and adequate protection.

*Substantive Consolidation*

In Gateway's amended Motion, Gateway sought substantive consolidation of all Debtors. At the conclusion of the hearing on the Motion, the Court expressed reservation that substantive consolidation was appropriate here.  Gateway then withdrew its request for substantive consolidation on October 24, 2017 [Docket No. 795].  Even though the request has been withdrawn, because Gateway litigated the topic at the hearing and because similar facts are relevant to Gateway's other claims, the Court will address it briefly.

Substantive consolidation combines the assets and liabilities of two or more entities so that all the liabilities are paid from the combined assets.  See Eastgroup Properties v. Southern Motel Assoc., Ltd., 935 F.2d 245, 248 (11th Cir. 1991) (cites omitted).  "In addition, substantive consolidation eliminates the inter-corporate liabilities of the consolidated entities."  Id.  In determining whether substantive consolidation is appropriate, the Court must evaluate "whether there is a substantial identity between the entities to be consolidated and whether consolidation is necessary to avoid some harm or realize some benefit."  Id. at 250; see Reider v. FDIC (In re Reider), 31 F.3d 1102, 1107 (11th Cir. 1994).  The courts frequently focus on whether the debtors held themselves out to creditors as being separate or consolidated, and whether creditors relied upon that appearance. See, Id.

The Eleventh Circuit in Eastgroup set out a number of factors to be considered in determining whether substantive consolidation was appropriate.  The Court must evaluate these factors as they apply to the entities which are to be consolidated.  This is an important point in

6

this particular case as virtually all of Gateway's arguments for consolidation involve the activities of Mr. Thakkar, an individual who is not a debtor, and activities of non-debtor entities. Gateway did not ask the Court to substantively consolidate Mr. Thakkar with the five Debtors nor other non-debtor entities with the five Debtors.   Rather, Gateway asked the Court to consolidate only the five Debtors.   Thus, the factors can only be evaluated in the context of the five Debtors.

At the hearing, little admissible evidence was presented to the Court.   But from the admissible evidence presented and the Court's review of these cases, the Court can ascertain the following:  Each of the Debtors is a separate corporation.   The Debtors do not all have the same ownership, although all five Debtors are owned directly or indirectly by members of the Thakkar family.   Bay Circle is owned by Mr. and Mrs. Thakkar. Sugarloaf is owned by Sugarloaf Centre Partners, LLC, which in turn is owned by NCT Systems and the Debtor NRCT.   NRCT, DCT and Nilhan are all owned by Niloy Thakkar and Rohan Thakkar, Mr. Thakkar's children.

Each Debtor owns different property and each property serves its own purpose.   For example, DCT's property was in Gwinnett County and was a commercial warehouse and commercial office space; Sugarloaf's property was also in Gwinnett County and largely a strip shopping center; Nilhan's property was located in Cobb County and was also primarily office space and a strip shopping center; NRCT's property is undeveloped; and Bay Circle's property was commercial office space in Gwinnett County.   Because the assets owned by each of the Debtors were real property, segregating the assets of each is not difficult and tracking the income received from each of the properties is possible.

The schedules of these five Debtors reflect no intercompany debt among the five Debtors. Each of the five Debtors owed a non-debtor, Nilhan Financial, a substantial amount of money and Bay Circle claimed that Nilhan Financial (the non-debtor) owed it a substantial amount of

money.  Each of the Debtors guaranteed the individual debt of Mr. and Mrs. Thakkar as well as the debt of Niloy and Nilhan Financial.  The fact that all five Debtors may have intercompany debt with a non-debtor or are co-guarantors does not provide a basis alone for consolidating these five Debtors with each other.

Simba, which objected to the Motion, is a post-petition lender which provided financing to refinance the Sugarloaf property during the case.  Simba has only provided financing on one property and has no interest in any of the other Debtors or their property.  This transaction is further evidence of the separateness of the Debtors.

No admissible evidence was presented as to whether the Debtors provided consolidated financial statements to third parties and no evidence was presented regarding the maintenance of their books and records.  No admissible evidence was presented of any transfers of property between and among the five Debtors or of the five Debtors comingling their property, books and records.  Similarly, no admissible evidence was presented as to any of the five Debtors ignoring corporate formalities or the separate natures of each of the entities.

Movant's argument was that each of the five Debtors was part of a larger organization involving Mr. Thakkar and therefore these five entities should be consolidated.  The admissible evidence, however, did not show a substantial identity among the five Debtors, and no basis existed to substantively consolidate the Debtors.

*Marshaling*

"The doctrine of marshaling provides that, 'a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds.'"  Customized Distrib. LLC v. Lee's Famous Recipes, Inc. (In re Lee's Famous Recipes, Inc.), 2013 WL 432480, *3 (January 24, 2013 Bankr. N.D. Ga.) (citing Meyer v. United States, 375 U.S. 233, 236 (1963)).  Marshaling is "designed to promote fair dealing and

justice.  Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security."  Id., citing Meyer, 375 U.S. at 238.  Georgia law recognizes marshaling in O.C.G.A. § 18-2-2 which provides, "As among themselves, creditors shall so prosecute their own rights as not to jeopardize unnecessarily the rights of others; hence, a creditor having a lien on two funds of the debtor, equally accessible to him, will be compelled to pursue the one on which other creditors have no lien."  The three elements generally recognized for the imposition of marshaling are:  "1) that the creditors are creditors of the same debtor, 2) that there are two funds belonging to that debtor, and 3) that one of the creditors has the right to resort to both funds."  Lee's, 2013 WL 432480, *4, citing In re Hale, 141 B.R. 225, 226 (Bankr. N.D. Fla. 1992).

Gateway argues that Wells Fargo and Gateway are both creditors of Bay Circle, that Wells Fargo has a lien on collateral from other Debtors which can satisfy its claim and that Wells Fargo should be required to resort to the other Debtors' funds and properties first.  To avoid the requirement that the two funds belong to the same Debtor, Gateway argues that the five Debtors are effectively alter-egos of each other and should be viewed as one.  This is an argument similar to the substantive consolidation argument.

The Debtors respond that marshaling is not appropriate in this case.  They note first the Settlement Agreement did not require the Debtors to sell their properties in any particular order. The Debtors note that Gateway objected to the Settlement Agreement on other grounds, so was aware of the terms of the Settlement Agreement, and could have raised such an argument at the time the Settlement Agreement was approved by the Bankruptcy Court.  Having not objected to the Debtors' right to sell the properties in any order, Gateway has waived the marshaling argument, the Debtors contend.  Finally, the Debtors dispute that they are alter-egos of each other or that other equitable grounds exist for marshaling.  In its Amended Motion, Gateway

9

recognizes that marshaling in the strict definition of the concept no longer applies because the Bay Circle Property has now been sold.

This Court in its Sale Order effectively agreed with the Debtors that Gateway could not require marshaling as it is defined in state law. The Court in the Sale Order noted that Gateway was aware of the Settlement Agreement and that there was no requirement the Debtors proceed in any particular order to sell the collateral. The Court also noted that a failure of the Debtors collectively to meet the milestone payment deadlines could result in all Debtors losing all property which in the end hurts Gateway and all other creditors and equity security holders.

After considering the additional arguments and evidence at the hearing, the Court has not changed its mind as to the applicability of marshaling in the pure sense of the term. Marshaling was not required under the Settlement Agreement. Since the properties have now been sold, the Court cannot technically require marshaling. Finally, as noted in connection with the substantive consolidation analysis, the evidence does not support the argument that the five Debtor entities are alter-egos of each other and should be treated as one for marshaling or other purposes. Thus, Gateway's request for marshaling is denied.

*Adequate Protection*

Gateway also asks for adequate protection of the lien it lost by virtue of the sale of the Bay Circle Property. Under 11 U.S.C. § 363(e), "at any time, on request of an entity that has an interest in property used, sold or leased … the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." Although the property on which Gateway's lien was placed has already been sold, Gateway objected to the sale at the time and effectively asked the Court for adequate protection of its interest. The Court reserved the right to consider Gateway's request after the sale and expressly addressed the issue with the Debtors' principal, Mr. Thakkar, and Debtors' counsel. Both

acknowledged the Court could take the issue up at a later time.  Therefore, the fact the property

has already been sold does not bar Gateway's request.

Adequate protection under the Bankruptcy Code is a flexible concept.  Martin v. U.S. (In

re Martin), 761 F.2d 472, 476 (8th Cir. 1985).  It is provided for in 11 U.S.C. § 361 which sets

out examples of adequate protection such as requiring the trustee to make a cash payment or

providing a replacement lien to the party seeking adequate protection.  But Section 361 also

states that adequate protection includes "granting such other relief, other than entitling such

entity to compensation allowable under section 503(b)(1) of this title as an administrative

expense, as will result in the realization by such entity of the indubitable equivalent of such

entity's interest in such property."  Courts have concluded that a proposal of adequate protection

"should as nearly as possible under the circumstances of the case provide the creditor with the

value of his bargained for rights."  Martin, 761 F.2d at 476 (cites omitted).  The phrase

"indubitable equivalent" originated in the context of a plan cramdown.  Courts have used the

plain meaning of "indubitable equivalent" in applying it to determine confirmation standards

under Section 1129, and the definition is relevant here.  "Indubitable means 'not open to question

or doubt', Webster's Third New Int'l Dictionary 1154 (1971), while equivalent means one that is

'equal in force or amount' or 'equal in value', id. at 769. … Thus the 'indubitable equivalent'

under [Section 1129(b)(2)(A)(iii)] is the unquestionable value of a lender's secured interest in

the collateral."  In re Philadelphia Newpapers, LLC, 599 F.3d 298, 310 (3rd Cir. 2010); Richfield

81 Partners II, LLC v. SunTrust Bank (In re Richfield 81 Partners II, LLC), 447 B.R. 653, 657

(Bankr. N.D. Ga. 2011).  As Gateway noted, bankruptcy courts have "broad discretion to

determine what constitutes adequate protection in a given case".  Lend Lease v. Briggs

Transportation Company (In re Briggs Transportation Company), 780 F.2d 1339, 1347 (8th Cir.

1985).

Before addressing the primary issues raised with respect to Gateway's adequate protection claim, the Court, though, must address an argument raised by Gateway in its supplemental brief [Docket No. 791]. Therein, Gateway argued the sale of the Bay Circle Property was unfair or made in bad faith, thus justifying adequate protection. Gateway states in its supplemental brief that the Bay Circle sale was proposed in order to avoid Gateway's lien. These allegations have no basis in fact and are directly contrary to the Court's Order Authorizing the Sale of the Bay Circle Property [Docket No. 590]. The Order Authorizing the Sale of the Bay Circle Property is final and these issues will not be addressed further. Moreover, adequate protection is a concept based on the value of a property right and not on the good or bad faith of the actors.

The Debtors argue first that Gateway's lien has no value and therefore it is not entitled to adequate protection. The Debtors correctly point to this Court's findings in the Sale Order that the Gateway lien had no value based on the facts known at the time and the sale that was to be consummated at that time. The lack of apparent value was based on the fact that Bay Point was owed over $15 million, which lien had priority over the Gateway lien. No one disputed that the Bay Circle Property was not worth anything close to $15 million. What was unknown at the time, though, was whether the remaining Debtors, all of whom were co-guarantors on the same debt, would be able to sell or refinance their remaining properties. Even if they were, it was unknown at what price and therefore was unknown whether Bay Point would be paid in full and whether any value would remain for anyone after Bay Point was satisfied. This was the argument raised by Gateway at the time and the argument which the Court reserved the right to decide at a later time.

The purpose of adequate protection under 11 U.S.C. §§ 363 and 361 is to protect whatever interest a party such as Gateway had in property that was sold. It is still not

mathematically certain what value Gateway's lien may have or have had for which adequate protection is required because all of the collateral secures "Indemnity Obligations" of the Debtors. The Debtors' principal, Mr. Thakkar, is presently engaged in litigation with Bay Point which, depending on the outcome of that litigation could generate further Indemnity Obligations to be satisfied by the remaining collateral. Nevertheless, the lack of mathematical certainty does not bar the Court from considering Gateway's request to provide it the indubitable equivalent of Gateway's rights.

The Debtors most vehemently object to any grant of adequate protection which results in a claim by Gateway in one of the Debtors' cases other than Bay Circle or a lien on property of a Debtor other than Bay Circle. The Debtors point out correctly that Gateway has no claim against any of the other Debtors and the Court has already disallowed Gateway's asserted claims against the other Debtors. The Court notes, however, that adequate protection is a flexible concept. It also notes that corporate structures commonly place related co-guarantors or co-obligor debtors into separate entities. Under admittedly different facts, the court in In re Residential Capital, LLC, 505 B.R. 549 (Bankr. S.D. N.Y. 2013) acknowledged that, when all of a secured lender's obligors are in bankruptcy, the value of the lender's collateral held by all of those debtors could be aggregated in order to determine whether the lender was oversecured. In that limited circumstance, the court deemed it appropriate to cross corporate lines to reach the correct result, although the court did not substantively consolidate the debtors or make any finding that the debtors were alter-egos of each other. Like this case, the issue was collateral owned by multiple debtors all securing the same debt. The court noted that aggregating the collateral across all debtors "more accurately reflects the reality of this case. It also reflects the workings of the business world at large." Id. at 601.

At the same time, the Court recognizes the importance of maintaining corporate distinctions even among affiliated entities.  For example, in <u>Central Trust Co. N.A. v. Burchett</u> <u>(In the Matter of Willson Dairy Co.)</u>, 30 B.R. 67 (Bankr. S.D. Ohio 1983), the court addressed the question of whether a junior creditor could require a senior creditor to look to a guarantor before the principal in order to effectuate a form of marshaling.  The court denied the relief, finding that "a junior creditor may not resort to the doctrine [of marshaling] in order to require a senior lienholder to resort first to the property of the common debtor's surety … This holding is in accord with virtually every court in the United States which has expressly addressed the issue."  <u>Id.</u> at 71.  The court noted the potentially prejudicial effect of such an action on the creditors of the surety.  The court also noted that the surety had a right of subrogation and that to force a marshaling-type remedy could impair the rights of that surety.  The Court notes in this case, though, there are minimal other creditors at issue.  Instead, the only real beneficiary of denying adequate protection to Gateway is Mr. Thakkar and his family as they are the ultimate holders of the equity in all the Debtors.  Mr. Thakkar is the person against whom Gateway has a judgment and a lien; Mr. Thakkar is a borrower on certain of the Bay Point debt and a guarantor on other portions of the debt.  It is not inherently unfair or prejudicial to refuse to allow him to benefit by virtue of the elimination of Gateway's lien.

The Court need not address that issue directly, though, because state law provides the answer here.  Each of the Debtors is a guarantor of the Bay Point debt.  Under Georgia law, which governs the Settlement Agreement as well as the original notes and loan agreement, Bay Circle is entitled to contribution from the other Debtors to the extent it has paid more than its fair share of the debt.  "Where several are sureties for the same principal for the same sum of money, either by one or by distinct instruments, and one pays more than an equal share of the sum, he may compel contribution from his cosureties."  O.C.G.A. § 10-7-50.  The Georgia Court of

14

Appeals has recognized this right as well. "The right of contribution arises not when the joint obligation is made but when one obligor pays more than his share of the liability." Steele v. Grot, 232 Ga. App. 847, 848 (1998). Bankruptcy courts have enforced Georgia's law of contribution. See Off. Comm. of Unsec. Cred. V. Liberty Sav. Bank (In re Toy King Distributors, Inc.), 256 B.R. 1, 181 (Bankr. M.D. Fla. 2000). (Debtor paid off a loan it had guaranteed. The court recognized the debtor had a claim of contribution against its co-guarantors for the payments it made.)

Moreover, a surety who has paid the debt of his principal is entitled to subrogation. See O.C.G.A. §§ 10-7-56 and 10-7-57. The bankruptcy court in Toy King stated, "There are few doctrines better established than that a surety who pays the debt of another is entitled to all rights of the person he paid to enforce his right to be reimbursed." 256 B.R. at 183. In this case, under the facts as now known, one of the Debtors, NRCT, has paid nothing toward the Bay Point debt. Thus, Bay Circle has a claim for contribution against NRCT, as well as against other co-guarantors and the principals. Bay Circle is subrogated to the rights of Bay Point against any collateral remaining which secures its debt, including the NRCT real property. This property interest of Bay Circle (both the claim for contribution and the subrogated right to Bay Point's lien) is an asset available to the creditors of Bay Circle and may be used to provide adequate protection to Gateway. This is not a situation as argued by the Debtors of granting Gateway a claim against an unrelated debtor or providing Gateway a lien on property for which there is no liability. NRCT was equally liable with Bay Circle to satisfy the Bay Point debt. The mere fact that its property was the last property to be liquidated and therefore was not fully necessary to satisfy Bay Point's debt does not mean that Bay Circle is not entitled to be reimbursed to the extent it paid more than its share of the debt owed to Bay Point.

15

By virtue of the sale of the Bay Circle Property, the parties and the Court know the maximum amount of Gateway's lien on the Bay Circle Property was $2,675,000. What is unknown at this point is the amount of Bay Circle's claim against NRCT. First, Bay Point may not be fully satisfied until the Indemnity Obligations are satisfied. Once that issue is resolved, NRCT and Bay Circle can determine to what extent Bay Circle paid more than its fair share of the guaranteed debt and therefore the amount of the contribution claim, secured by Bay Point's lien, NRCT must pay to Bay Circle.

As adequate protection, the Court provides Gateway a replacement lien on Bay Circle's claims for contribution and subrogation. To be clear, Bay Circle's contribution claim may be subrogated to Bay Point's lien on the NRCT property, once Bay Point is paid in full. Although the exact value of the replacement lien is not known at this time, the Court finds it is the maximum that Gateway lost by virtue of the removal of its lien. Gateway's lien was always subordinate to the satisfaction of Wells Fargo's claim. So, the Court concludes that the replacement lien on the claims of Bay Circle, both for contribution and for a subrogated lien, provides Gateway with the indubitable equivalent of its interest in the Bay Circle Property.

Finally, Simba objected to the request for adequate protection to the extent it resulted in any lien on the Sugarloaf property. Any request by Gateway for a replacement lien on the Sugarloaf property is denied. Bay Point's lien on the Sugarloaf property has already been removed by Simba's refinancing. Gateway actively participated in the motion by Sugarloaf to refinance the property as well as subsequent hearings on the refinancing at which the Court found that Simba was a good-faith lender. Gateway raised no objections to the refinancing or the granting of the lien to Simba. Therefore, it would be inappropriate to grant any kind of replacement lien to Gateway on the Sugarloaf property. It is therefore

ORDERED that Gateway shall hold a replacement lien on Bay Circle's claims for

contribution and subrogation including without limitation its claim against the property owned

by NRCT, but excluding specifically any claim for a lien on the property owned by Sugarloaf.

The actual amount of such claim or subrogation will be determined at a future date when the

Court determines the obligations to Bay Point are fully satisfied.

### END OF ORDER ###

## DISTRIBUTION LIST

John A. Christy
J. Carole Thompson Hord
Jonathan A. Akins
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, Suite 800
Atlanta, GA 30309-4516

Thomas Wayne Dworschak
Office of the U. S. Trustee
75 Spring Street SW, Room 362
Atlanta, GA 30303

John F. Isbell
Garrett A. Nail
Thompson Hine LLP
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA  30326

Walter E. Jones
Balch & Bingham LLP
Suite 700
30 Ivan Allen Jr. Boulevard, NW
Atlanta, GA  30308

Michael D. Robl
Robl Law Group LLC
3754 Lavista Road, Suite 250
Tucker, GA 30084