**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CHAPTER 11** |
| **BAY CIRCLE PROPERTIES, LLC et al.[1].,** | ) | |
| | ) | **CASE NO.  15-58440-wlh** |
|     **Debtors.** | ) | |

---

**DISCLOSURE STATEMENT FOR**
**PLAN OF REORGANIZATION**
**FOR BAY CIRCLE PROPERTIES, LLC et al.,**

**Dated this 2nd day of July, 2018**

---

Filed by:

Bay Circle Properties, LLC et al.,

Proposed Attorney for Debtors and Debtors in Possession,
M. Denise Dotson
M. Denise Dotson, LLC
PO Box 435
Avondale Estates, GA 30002
(404) 210-0166 Telephone
denise@mddotsonlaw.com

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are Bay Circle Properties, LLC (1578), DCT Systems Group, LLC (6978), Sugarloaf Centre, LLC (2467), Nilhan Developers, LLC (6335), and NRCT, LLC (1649).

**Disclaimer**

All Creditors and Holders of Interests are advised and encouraged to read this Disclosure Statement and the Plan in their entirety. Plan summaries and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan, any exhibits, and the Disclosure Statement as a whole.

This Disclosure Statement has been prepared in accordance with § 1125 of the Bankruptcy Code and Rule 3016(c) of the Federal Rules of Bankruptcy Procedure and not in accordance with federal or state securities laws. This Disclosure Statement has neither been approved nor disapproved by the Securities and Exchange Commission ("SEC"), nor has the SEC passed on the accuracy or adequacy of the statements contained herein. This Disclosure Statement was prepared to provide holders of Claims and Interests in the Debtors with "adequate information" (as defined in the Bankruptcy Code) so that they can make an informed judgment about the Plan.

As to contested matters, adversary proceedings, and other actions or threatened actions, this Disclosure Statement shall not constitute nor be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations.

The information contained in this Disclosure Statement is included herein for the purpose of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to make a judgment with respect to, and how to vote on, the Plan.

This Disclosure Statement shall not be admissible in any nonbankruptcy proceeding involving the Debtors and any party, nor shall it be construed to be conclusive advice on the tax, securities, or other legal effects of the Plan as to Holders of Claims against, or Interests in, the Debtors; provided, however, that in the event the Debtors defaults under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the existence of such default.

**THE REPRESENTATIONS IN THIS DISCLOSURE STATEMENT ARE THOSE OF THE DEBTORS. NO REPRESENTATIONS CONCERNING THE DEBTORS ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THIS PLAN WHICH IS OTHER THAN AS CONTAINED IN THIS DOCUMENT SHOULD NOT BE RELIED UPON BY ANY PERSON. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. EVERY EFFORT, HOWEVER, HAS BEEN MADE TO PROVIDE ADEQUATE FINANCIAL INFORMATION IN THIS DISCLOSURE STATEMENT. THE REPRESENTATIONS BY THE DEBTORS ARE NOT WARRANTED OR REPRESENTED TO BE WITHOUT ANY INACCURACY, ALTHOUGH EVERY EFFORT HAS BEEN MADE TO BE ACCURATE. NEITHER THE PLAN NOR THIS DISCLOSURE STATEMENT HAS BEEN DESIGNED TO FORECAST CONSEQUENCES WHICH FOLLOW FROM A GENERAL REJECTION OF THIS PLAN, ALTHOUGH AN ATTEMPT IS MADE TO STATE THE CONSEQUENCES OF A LIQUIDATION OF THE DEBTORS.**

## I.    <u>Introduction and General Information</u>

This disclosure statement ("Disclosure Statement") is submitted by Bay Circle Properties, LLC, DCT Systems Group, LLC, Sugarloaf Centre, LLC, Nilhan Developers, LLC and NRCT, LLC (the "Debtors"), to provide information to parties in interest about each entities respective Chapter 11 Plan (the "Plan") filed by each of the Debtors.  This introductory section is qualified in its entirety by the detailed explanations which follow and the provisions of the Plan.

This Disclosure Statement sets forth certain information regarding the Debtors' prepetition history and events that have occurred during the Debtors's Chapter 11 case.  This Disclosure Statement also describes the Plan, alternatives to the Plan, effects of confirmation of the Plan, and the manner in which Distributions will be made under the Plan.  In addition, this Disclosure Statement discusses the confirmation process and voting procedures that holders of Claims in Impaired Classes must follow for their votes to be counted.

*This Disclosure Statement contains summaries of certain provisions of the Plan, statutory provisions, documents related to the Plan, events in the Debtors's Chapter 11 case, and financial information.  Although the Debtors believes that the Plan and related document summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents or statutory provisions.  Factual information contained in this Disclosure Statement has been provided by the Debtors's management, except where otherwise specifically noted.  The Debtors is unable to warrant or represent that the information contained herein, including the financial information, is without any inaccuracy or omission.  The financial data set forth herein, except as otherwise specifically noted, has not been subjected to an independent audit.*

*Nothing contained herein shall (1) constitute an admission of any fact or liability by any party, (2) be admissible in any nonbankruptcy proceeding involving the Debtors or any other party; provided, however, that in the event the Debtors default under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the existence of such default, or (3) be deemed conclusive advice on the tax or other legal effects of the Debtors's Plan as to holders of Claims or Interests.  You should consult your personal counsel or tax advisor on any questions or concerns regarding tax or other legal consequences of the Plan.*

*Except for historical information, all the statements, expectations, and assumptions, including expectations and assumptions contained in this Disclosure Statement, involve a number of risks and uncertainties.  Although the Debtors have used their best efforts to be accurate in making these statements, it is possible that the assumptions made by the Debtors may not materialize.  In addition, other important factors could affect the prospect of recovery to Creditors including, but not limited to, the inherent risks of litigation and the amount of Allowed Claims.*

Parties voting on the Plan should read both the Plan and this Disclosure Statement.

A.    <u>Definitions</u>

Unless otherwise defined, capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan.  In the event of an inconsistency between the Disclosure Statement and the Plan, the terms of the Plan shall govern and such inconsistency shall be resolved in favor of the Plan.

B.    <u>The Disclosure Statement</u>

The primary purpose of this Disclosure Statement is to provide parties entitled to vote on the Plan with adequate information so that they can make a reasonably informed decision prior to exercising their right to vote to accept or reject the Plan.

The Bankruptcy Court's approval of this Disclosure Statement constitutes neither a guarantee of the accuracy or completeness of the information contained herein, nor an endorsement of the Plan by the Bankruptcy Court.

When and if confirmed by the Bankruptcy Court, the Plan will bind the Debtors and all holders of Claims against and Interests in the Debtors, whether or not they are entitled to vote or did vote on the Plan and whether or not they receive or retain any Distributions or property under the Plan.  Thus, you are encouraged to read this Disclosure Statement carefully.  In particular, holders of Impaired Claims who are entitled to vote on the Plan are encouraged to read this Disclosure Statement, the Plan, and any exhibits to the Plan and Disclosure Statement, carefully and in their entirety before voting to accept or reject the Plan.  This Disclosure Statement contains important information about the Plan, the method and manner of distributions under the Plan, considerations pertinent to acceptance or rejection of the Plan, and developments concerning this case.

II.    <u>Voting on the Plan  and Confirmation Process</u>

A.    <u>Voting Instructions</u>

Accompanying this Disclosure Statement are copies of the following documents:  (1) the Plan; (2) a Notice to Voting Classes; and (3) a Ballot to be executed by Holders of Claims in Classes _____ (the "Voting Classes"); which classes are entitled to vote to accept or reject the Plan.  The Ballot contains voting instructions.  **Please read the instructions carefully to ensure that your vote will count.**

The Disclosure Statement, the form of Ballot, and the related materials delivered together herewith (collectively, the "Solicitation Package"), are being furnished to Holders of Claims in the Voting Classes for the purpose of soliciting votes on the Plan.

If you did not receive a Ballot in your Solicitation Package, and believe that you should have received a Ballot, please contact, the law offices of M. Denise Dotson, LLC, PO Box 435, Avondale Estates, GA 30002, (404) 210-0166 (Attn: M. Denise Dotson, Esq.), denise@mddotsonlaw.com.

IN ORDER FOR YOUR BALLOT TO COUNT IT MUST BE RECEIVED WITHIN THE TIME INDICATED ON THE BALLOT AND THE BALLOT MUST CLEARLY INDICATE YOUR CLAIM, THE CLASS OF YOUR CLAIM, AND THE AMOUNT OF YOUR CLAIM.

BY PROVINDING A BALLOT, THE DEBTORS ARE NOT ADMITTING THAT YOU ARE ENTITLED TO VOTE ON THE PLAN, IS NOT ADMITTING THAT YOUR CLAIM IS ALLOWED AS SET FORTH ON THE BALLOT, AND ARE NOT WAIVING ANY RIGHTS TO OBJECT TO YOUR VOTE OR YOUR CLAIM.

### B.    Who May Vote

Only a holder of an Allowed Claim classified in an Impaired Class is entitled to vote on the Plan.  As set forth in section 1124 of the Bankruptcy Code, a class is "Impaired" if legal, equitable, or contractual rights attaching to the claims or equity interests of that class are modified or altered.

Any class that is "unimpaired" is not entitled to vote to accept or reject a plan of reorganization and is conclusively presumed to have accepted the Plan.

A Claim must be "allowed" for purposes of voting in order for such creditor to have the right to vote.  Generally, for voting purposes a Claim is deemed "allowed" absent an objection to the Claim if (1) a proof of claim was timely filed, or (ii) if no proof of claim was filed, the Claim is identified in the Debtors's Schedules as other than "disputed," "contingent," or "unliquidated," and an amount of the Claim is specified in the Schedules, in which case the Claim will be deemed allowed for the specified amount.  In either case, when an objection to a Claim is filed, the creditor holding the Claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection, or allows the Claim for voting purposes.  Accordingly, if you did not receive a Ballot and believe that you are entitled to vote on the Plan, you must file a motion pursuant to Bankruptcy Rule 3018 with the Bankruptcy Court for the temporary allowance of your Claim for voting purposes.

THE DEBTORS IN ALL EVENTS RESERVES THE RIGHT THROUGH THE CLAIM RECONCILIATION PROCESS TO OBJECT TO OR SEEK TO DISALLOW ANY CLAIM FOR DISTRIBUTION PURPOSES UNDER THE PLAN.

### C.    Requirements of Confirmation

The Bankruptcy Court can confirm the Plan only if all the requirements of § 1129 of the Bankruptcy Code are met.  Those requirements include the following:

1. The Plan classifies Claims and Interests in a permissible manner;

2. The contents of the Plan comply with the technical requirements of the Bankruptcy Code;

3. The Plan has been proposed in good faith and not by any means forbidden by law;

4. The disclosures concerning the Plan are adequate and include information concerning all payments made or promised in connection with the Plan, as well as the identity, affiliations, and compensation to be paid to all officers, directors, and other insiders; and

5. The principal purpose of the Plan is not the avoidance of tax or the avoidance of the securities laws of the United States.

In addition to the confirmation requirements described above, the Plan must also be approved by all Impaired Classes of Claims entitled to vote.  If, however, the Plan has not been approved by all Impaired Classes of Claims, the Court may nevertheless "cram down" the Plan over the objections of a dissenting Class.  The Plan may be "crammed down" so long as it does not discriminate unfairly, is fair and equitable with respect to each dissenting Class of Claims, and at least one Impaired Class has voted in favor of the Plan without regard to any votes of insiders.  Debtors will seek to "cram down" the Plan if it is accepted by an Impaired Class over the objections of a dissenting class.

### D.    Acceptance or Rejection of the Plan and Cram Down

The Class containing your Claim will have accepted the Plan by the favorable vote of majority in number and two-third in amount of Allowed Claims actually voting.   In the event that any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if an Impaired Class accepts it and if, as to each Impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." If you hold an Allowed Secured Claim, the Plan is fair and equitable if you retain your lien and receive deferred cash payments totaling the allowed amount of your Claim as of the Effective Date of the Plan, the collateral is sold and your Lien attaches to the proceeds of the sale, or you are otherwise provided with the "indubitable equivalent" of your Allowed Secured Claim.  If you hold a Claim that is not an Allowed Secured Claim, and is not entitled to priority under § 507 of the Bankruptcy Code, the Plan is fair and equitable if you receive property of a value equal to the allowed amount of your Claim or if no junior Class receives or retains anything under the Plan.

E. **Confirmation Hearing**

The Bankruptcy Court has entered an order (the "Scheduling Order") that schedules a final hearing to approve the Disclosure Statement and to consider confirmation of the Plan ("Confirmation Hearing") at the time indicated in the Order Approving Disclosure Statement and Notice of Confirmation Hearing. The Confirmation Hearing may be adjourned from time to time without further notice except for announcement at the Confirmation Hearing or notice to those parties present at the Confirmation Hearing.

F. **Objections to Confirmation**

As will be set forth in the Scheduling Order, any objections to confirmation of the Plan must be in writing, set forth the objector's standing to assert any such objection, and must be filed with the Bankruptcy Court and served on counsel for the Debtors. The Scheduling Order contains all relevant procedures relating to the submission of objections to confirmation and should be reviewed in its entirety by any party who has an objection to confirmation.

G. **Whom to Contact for More Information**

If you have any questions about the procedure for voting your Claim or the packet of materials you received, please contact M. Denise Dotson at the address indicated below or by telephone at ((404) 210-0166. If you wish to obtain additional copies of the Plan, this Disclosure Statement, or the exhibits to those documents, at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d), please contact the law offices of M. Denise Dotson, LLC, PO Box 435, Avondale Estates, GA 30002, Attn: Denise Dotson or by electronic mail, at denise@mddotsonlaw.com.

III. **Historical Background**

A. **Description of the Debtors and Reason for Bankruptcy Filing.**

As of the Filing Date, Debtors owned thirteen (13) pieces of improved and unimproved real estate in the metro Atlanta area having a cumulative value of approximately $40 million dollars. Debtors developed real estate and commercial properties.

The properties were encumbered by a debt due and owing to Wells Fargo of approximately $21,300,000.00 as of the Filing Date. As of the Filing Date, Debtors asserted that the real properties subject to Wells Fargo security interest had a cummulative value of approximately $40,000,000.00. The obligations due and owing to Wells Fargo were evidenced by (i) amended and restated promissory note dated April 30, 2013 in the original principal amount of $19,750,000.00 executed by affiliates of the Debtors, Niloy Inc. and Nilhan Financial, LLC, (ii) amended and restated consolidated promissory note dated April 30, 2013 in the original principal amount of $12,910,000.00 executed by affiliates of the Debtors Chittranjan Thakkar and Saloni Thakkar, and (iii) ISDA Master Agreement and Schedules dates January 16, 2009, as

amended, executed by Niloy Inc and Nilhan Financial, LLC.  The obligations were secured by certain real property and substantially all of Debtors' personal property.  As of the Filing Date, Debtors had defaulted under the terms of a forbearance agreement with Wells Fargo.

Bay Circle also had two large judgments against it and held by SEG and Good Gateway, LLC in the amounts of $2,500,000.00 and $12,000,000.00.

**B.**     **Prepetition Assets, Liabilities, and Onwership Interest**

1.     Bay Circle Properties, LLC ("Bay Circle").

As of the Filing Date, Bay Circle's assets totaled approximately $12,719,663.93 and included the following:

(i)      office suites and warehouse located at 6600 Bay Circle, Gwinnett County, Georgia valued at $2,741,000.00;

(ii)     office suites and warehouse located at 6610 Bay Circle, Gwinnett County, Georgia valued at $2,745,000.00;

(iii)    checking account with a balance of $36,453.93;

(iv)     security deposit with Georgia Power totaling $325.00;

(v)      accounts receivable with a book value totaling $648,119.00;

(vi)     equipment with a book value totaling $29,080.00;

(vi)     loan due from Pinnacle Ivy Place, LLC totaling $250,000.00;

(vii)    payable due from Nilhan Financial, LLC totaling $6,245,276.00; and

(viii)   undeposited funds totaling $23,410.00

As of the Filing Date, Bay Circle's liabilities totaled $26,004,947.86 and included the following:

(i)      secured claim due and owing to Wells Fargo Bank, NA totaling approximately $21,300,000.00;

(ii)     unsecured claims due and owing to the following:

1.      AT&T in the amount of $217.18;

2.      Georgia Power in the amount of $1,713.81;

3.      Nilhan Financial, LLC in the amount of $4,475,000.00;

4.      Gwinnett County Water Resources in the amount of $353.87;

5.      Nilhan Financial, LLC in the amount of $52,693.00;

6.      Nilhan Financial, LLC in the amount of $174,350.00; and

6.      Russell Landscape, LLC in the amount of $620.00.

The loan due and owing to Wells Fargo as of the Filing Date was secured by Bay Circle's office suites and warehouses located at 6600 and 6610 Bay Circle, Gwinnett County, Georgia. The Wells Fargo loan was also guaranteed by Nilroy, Inc., Nilhan financial, LLC, Chuck Thakkar and Saloni C. Thakkar.

Bay Circle members are Chittranjan and Saloni Thakkur and each are 50% members.

2.    DCT Systems Group, LLC ("DCT")

As of the Filing Date, DCT's assets totaled approximately $9,628,448.00 and included the following:

(i)    office suites/warehouse located at 5100 Peachtree Industrial Blvd. valued at $6,407,631.00;
(ii)    office suites/warehouse located at 5150 Peachtree Industrial Blvd. valued at $3,072,000.00;
(iii)    checking account with funds on hand totaling $99,533.00;
(iv)    Georgia Power security deposit totaling $165.00; and
(v)    accounts receivable valued at $49,119.00.

As of the Filing Date, DCT's liabilities totaled approximately $24,114,858.00 and included the following:

(i)    secured claim due and owing to Wells Fargo totaling approximately $21,300,000.00;
(ii)    unsecured claims totaling approximately $2,814,858.00 including the following:
1.    a disputed and unliquidated claim to Creditors Adjustment Bureau in the amount of $100,000.00;
2.    Georgia Power in the amount of $434.00;
3.    Gwinnett Water Resources in the amount of $70.00;
4.    a disputed and unliquidated claim to LIT Industrial Texas, LP in the amount of $15,000.00;
5.    Nilhan Financial, LLC in the amount of $86,168.00;
6.    Nilhan Financial, LLC in the amount of $12,426.00;
7.    Nilhan Financial, LLC in the amount of $2,600,000.00; and
8.    Russell Landscape, LLC in the amount of $760.00.

The loan due and owing to Wells Fargo as of the Filing Date was secured by DCT's office suites/warehouses located at 5100 and 5150 Peachtree Industrial Blvd. The Wells Fargo loan was also guaranteed by Nilroy, Inc., Nilhan financial, LLC, Chuck Thakkar and Saloni C. Thakkar.

DCT members are Nilroy Thakkur and Rohan Thakkur each with a 50% membership interest.

9

     3.      Sugarloaf Centre, LLC ("Sugarloaf")

As of the Filing Date, Sugarloaf's assets totaled approximately $4,087,352.88 and included the following:

      (i)      land located at 1930 Satellite Boulevard valued at $932,790.00;
      (ii)      retail shopping center located at 1950 Satellite Boulevard valued at $1,530,000.00;
      (iii)      single story building valued at $1,362,000.00;
      (iv)      checking account with available funds in the amount of $59,783.32;
      (iv)      Georgia Power security deposit totaling $2,723.56; and
      (v)      accounts receivable valued at $200,056.00.

As of the Filing Date, Sugarloaf's liabilities totaled approximately $21,448,755.08 and included the following:

      (i)      secured claim due and owing to Wells Fargo totaling approximately $21,300,000.00;
      (ii)      unsecured claims totaling approximately $148,755.08 including the following:
            1.      AT&T in the amount of $122.98;
            2.      Georgia Power in the amount of $461.53;
            3.      Gwinnett Water Resources in the amount of $1,643.57;
            4.      a disputed and unliquidated claim to LIT Industrial Texas, LP in the amount of $15,000.00;
            5.      Nilhan Financial, LLC in the amount of $146,367.00; and
            6.      Russell Landscape, LLC in the amount of $160.00.

The loan due and owing to Wells Fargo as of the Filing Date was secured by Sugarloaf's real property. The Wells Fargo loan was also guaranteed by Nilroy, Inc., Nilhan financial, LLC, Chuck Thakkar and Saloni C. Thakkar.

Sugarloaf is 100% owned by Sugarloaf Centre Partners, LLC

     4.      Nilhan Developers, LLC ("Nilhan")

As of the Filing Date, Nilhan's assets totaled approximately $13,519,398.31 and included the following:

      (i)      2.535 acres of land located in Aiken, SC valued at $150,973.00;
      (ii)      office suited located at 2810-2816 Spring Road, SE Atlanta, Georgia valued at $10,111,400;
      (iii)      retail shopping center located at 2800 Spring Road, SE Atlanta, Ga valued at $3,020,268.00;

(iv)    checking accounts with available funds in the amount of $77,144,.93 and $301.83;

(v)     Georgia Power security deposit totaling $25,777.55;

(vi)    accounts receivable valued at $103,350.00; and

(vii)   furniture and equipment valued at $30,183.00

As of the Filing Date, Nilhan's liabilities totaled approximately $30,929,347.24 and included the following:

(i)     secured claim due and owing to Wells Fargo totaling approximately $21,300,000.00;

(ii)    unsecured claims totaling approximately $9,629,347.24 including the following:

1.      City of Smyrna Utilities in the amount of $751.00;

2.      Cobb County Water System in the amount of $1,707.27;

3.      Gwinnett Water Resources in the amount of $1,643.57;

4.      Georgia Power Company in the amount of $21,605.90;

5.      Nilhan Financial, LLC in the amounts of $9,500,000.00, 83,672.00, and $16,434.07;

6.      Russell Landscape, LLC in an unknown amount;

7.      Service Master in the amount of $4,997.00; and

8.      Taylor Law Offices in the amount of $1,180.00

The loan due and owing to Wells Fargo as of the Filing Date was secured by Nilhan's real property located at 2810-2816 Spring Road, SE and the retail shopping center located at 2800 Spring Road, SE.  The Wells Fargo loan was also guaranteed by Nilroy, Inc., Nilhan financial, LLC, Chuck Thakkar and Saloni C. Thakkar.

Nilan is owned by Nilroy Thakkur and Rohan Thakkur and each own 50%.

5.      NRCT, LLC ("NRCT")

As of the Filing Date, NRCT's assets totaled approximately $10,653,022.27 and included the following:

(i)     10 acres of real property located on Tench Road, Gwinnett County, Georgia valued at $2,512,588.00;

(ii)    36 acres of real property located on Peachtree Industrial, Gwinnett County, Georgia valued at $5,450,960.00;

(iii)   46.7 acres of real property located on Block Knob, Pickens County, South Carolina valued at $316,532.00;

(iv)    residential lot near Lake Greenwood, South Carolina valued at $364,825.00;

(v)     checking account with available funds in the amount of $1,703.27;

(v)     100% ownership of Shops at New Hope, LLC and 50% ownership of Sugarloaf Centre Partners, LLC with unknown values;

(vi)     investment in DB Asia fund valued at $1,320,835.00; and

(vii)    investment in DB Energy Select valued at $685,609.00

As of the Filing Date, NRCT's liabilities totaled approximately $35,345,300.00 and included the following:

(i)     secured claim due and owing to Wells Fargo totaling approximately $21,300,000.00;

(ii)    unsecured claims due and owing to Nilhan totaling approximately $14,045,300.00

The loan due and owing to Wells Fargo as of the Filing Date was secured by NRCT's real property located on Tench Road and Peachtree Industrial in Gwinnett County, Georgia  The Wells Fargo loan was also guaranteed by Nilroy, Inc., Nilhan financial, LLC, Chuck Thakkar and Saloni C. Thakkar.

NRCT is owned by Nilroy Thakkur and Rohan Thakkur and each own a 50% membership interest.

## IV.    The Chapter 11 Case

### A.    Reasons for Filing Chapter 11

This case was filed to stop a foreclosure on the Real Property.   This is Debtors' first bankruptcy case.  The Real Property is subject to a mortgage due and owing to Allison Mortgage and Loan Servicing Corporation ("Allison"), Capital South Financial Services, Inc. ("Capital") and Capital Mortgage Corporation ("Capital Mortgage") (Collectively, Allison, Capital and Capital Mortgage are referred to herein as "Lenders").  The Real Property was initially owned by three individuals and the Real Property was subsequently transferred to the Debtors via quit claim deed recorded with the Henry County Superior Court Clerk's Office in 2014.  It also appears that the deed to secure debt was executed by the three individuals was subsequently assigned to Allison.  The Forbearance Agreement expired in December of 2016.

### B.    Professionals

On May 21, 2015, Debtors filed applications seeking to retain the law firm of Schreeder, Wheeler & flint, LLP as bankruptcy counsel for the Debtors.  On or about May 29, 2015, the Corut entered orders in each of the Debtors' respective cases authorizing the retention of Schreeder, Wheeler & Flint, LP as Debtors' bankruptcy counsel.  On June 18, 2018, a stipulation permitting the withdrawal of Schreeder, Wheeler & Flint, LP as bankruptcy counsel was filed. (Docket No. 846).  On June 12, 2018, Debtors filed their application seeking to retain the law firm of M. Denise Dotson, LLC as bankruptcy counsel.  (Docket No. 845).  A hearing on the application to retain the firm of M. Denise Dotson, LLC as bankruptcy counsel is scheduled for July 26, 2018.

On June 29, 2015, Debtors filed motions to employ Taylor Law Offices, LLC as special real estate counsel. (Docket Nos. 39-43). On June 16, 2015, the Court entered orders authorizing the employment of Taylor Law Offices as special real estate counsel for the Debtors. (Docket Nos. 61-65).

On June 17, 2015, Debtors filed an application to employ Robbins Ross Alloy Belinfante Littlefield, LLC ("Robbins") as special litigation counsel, as amended. (Docket Nos. 66 and 67). The Court entered an order approving Robbins on June 23, 2015. (Docket No. 75).

On July 2, 2015, Sugarloaf filed an application seeking to employ The Shopping Center Group, LLC as real estate broker. (Docket Nos. 104 and 108). On Julyn21, 2015, the Court entered an order approving the application to employ The Shopping Center Group, LLC as real estate broker. (Docket Nos. 148 and 159).

On August 25, 2015, Bay Circle filed an application to employ Outsource Accounting & Tax, LLC as accountants. (Docket No. 173). An objection was filed on behalf of the Examiner. (Docket No. 174). The Court entered an order authorizing the employment of Outsource Accounting & Tax, LLC on September 1, 2015. (Docket No. 178).

On October 28, 2016, NRCT, DCT and Bay Circle filed applications to employ RG Real Estates as real estate broker. (Docket Nos. 451-453). After hearing and notice, the Court entered orders authorizing the employment of RG Real Estate Inc. (Docket Nos. 469-471).

On June 21, 2017, NRCT and Nilhan filed applications to employ John Speros as real estate broker. (Docket Nos. 703 and 704). The Court entered orders authorizing the employment of John Speros as real estate agent on June 28, 2017. (Docket Nos. 708 and 709).

### C.    Schedules and Joint Administration

Debtors each filed their schedules and statement of financial affairs, as amended. A copy of the schedules and statement of financial affairs can be reviewed at the Office of the Bankruptcy Clerk, 1340 Richard B. Russell Federal Building, 75 Ted Turner Drive, Atlanta, Georgia, during normal business hours or online at http://ecf.ganb.uscourts.gov (registered users) or at http://pacer.psc.uscourts.gov (unregistered users).

On May 13, 2015,Wells Fargo Bank filed a motion requesting that each of the Debtors' cases be jointly administered. (Docket No. 11). On May 20, 2015, the Court entered an order and notice establishing an objection deadline and scheduling a hearing on the motion for joint administration on July 2, 2015. (Docket No. 15). On June 8, 2015, the Court entered an order directing the joint administration of each of the Debtors' cases for procedural purposes only. (Docket No. 38).

### D.    Claims Bar Date

On October 9, 2015, Debtors filed their motion to establish a bar date. In the motion, Debtors requested entry of an order establishing a bar date and requesting that each claim be

filed under the original case number assigned to each Debtors and that if a creditor has claims against multiple Debtors that the creditor be directed to file separate claims against each Debtors under each Debtors' respective case number. (Docket No. 214).

On October 16, 2015, the Court entered an order establishing November 25, 2015, as the deadline for creditors to file proofs of claim against each Debtors and in each respective case. (Docket No.

A break down of the claims and status of each claim for (i) Bay Circle is attached hereto as Exhibit A; (ii) DCT is attached hereto as Exhibit B; (iii) Sugarloaf is attached hereto as Exhibit C; (iv) Nilhan is attached hereto as Exhibit D; and NRCT is attached hereto as Exhibit E.

### E.    Treatment of Claims Filed by SEG Gateway, LLC and Good Gateway, LLC

SEG Gateway, LLC ("SEG") and Good Gateway, LLC ("Good") (collectively, SEG and Good are referred to herein as "Gateway") filed proofs of claim in each of the Debtors respective case. The claims are set forth on each respective Exhibit.

On September 15, 2017, the following claim objections were filed:

> (i) DCT objected to proof of claim number 3 filed by or on behalf of Good Gateway (See Bankr. Ct. Docket No. 189);
> (ii) DCT objected to proof of claim number 4 filed by or on behalf of SEG (See Bankr. Ct. Docket No. 190);
> (iii) Nilhan objected to proof of claim number 1 filed by or on behalf of Good Gateway (See Bankr. Ct. Docket No. 191);
> (iv) Nilhan objected to proof of claim number 2 filed by or on behalf of SEG (See Bankr. Ct. Docket No. 192);
> (v) NRCT objected to proof of claim number 1 filed by or on behalf of Good Gateway (See Bankr. Ct. Docket No. 193);
> (vi) NRCT objected to proof of claim number 2 filed by or on behalf of SEG (See Bankr. Ct. Docket. No. 194);
> (vii) Sugarloaf objected to proof of claim number 2 filed by or on behalf of Good Gateway (See Bankr. Ct. Docket No. 195); and
> (viii) Sugarloaf objected to proof of claim number 3 filed by or on behalf of SEG (See Bankr. Ct. Docket No. 196).

Gateway's claims were filed in each of the above-referenced Debtors' cases in the amount of $2,500,000.00 and $15,376,435.58 respectively and included a copy of the fifa against Thakkar and other non-Debtors obtained as a result of the judgment in the Good Gateway Case. (See Bankr. Docket Nos. 189-196). DCT, Nilhan, NRCT and Sugarloaf objected to and sought disallowance of each of the claims because the claims lacked any legal or factual basis. (Id.) The Bankruptcy Court conducted a hearing on the objections on February 9, 2017 and on February 10, 2017, the Bankruptcy Court entered orders sustaining DCT, Nilhan, NRCT and Sugarloaf's objections to proofs of claim filed by SEG and Good Gateway. (See Bankr. Docket

Nos. 574-581).  Gateway does not have any claims against DCT, Nilhan, NRCT, or Sugarloaf. (Id.).

    **F.**    **Motions Related to Wells Fargo**

        **1.**    **Motion to Appoint Trustee**

On May 15, 2015, Wells Fargo Bank, NA ("Wells Fargo") filed a motion requesting the appointment of a trustee pursuant to Sections 1104(a)(1) and 1104(a)(2) of the Bankruptcy Code and Rules 2017.1(a) and 9014 of the Federal Rules of Civil Procedure. (Docket No. 12).  Wells Fargo filed a supplemental brief in support of the motion seeking appointment of a chapter 11 trustee on June 30, 2015.  (Docket No. 98).  Debtors filed a response in opposition to the motion for appointment of a chapter 11 trustee on July 1, 2015.  (Docket No. 101).

A hearing on the motion requesting the appointment of a chapter 11 trustee and responses in opposition thereto was held on July 2, 2015 and the motion was denied.

        **2.**    **Cash Collateral Motion**

On May 29, 2015, Bay Circle filed a motion requesting entry of an order authorizing the interim and final use of cash collateral and requesting an expedited hearing in connection therewith as amended on June 3, 2015.  (Docket Nos. 27 and 33).  In the motion, Bay Circle requested entry of an order authorizing the use of cash collateral on an interim basis and scheduling a final hearing on the continued use of cash collateral.  As set forth in the motion, Bay Circle's rents were subject to Wells Fargo's (i) deed to secure debt, assignment of rents and security agreement recorded with the Superior Court Clerk of Gwinnett County book 50101, page 2; (ii) deed to secure debt, assignment of rents and security agreement dated August 15, 2007 and recorded with the Superior Court clerk of Gwinnett county book 79032, page 737.

A hearing on the motion to use cash collateral was scheduled for June 4, 2015.

On June 2, 2015. Wells Fargo filed an objection to the motion to use cash collateral.  (Docket No. 30).  On June 10, 2015, an order allowing the interim use of cash collateral was entered and the order continued the cash collateral hearing until July 2, 2015.  (Docket No. 44).  At the hearing on July 2, 2015, the Court continued the use of cash collateral through and including July 14, 2015.  A second order authorizing the interim use of cash collateral was entered on July 16, 2015 and the hearing on continued cash collateral use was continued until August 13, 2015.  (Docket No. 138).  A third order allowing the interim use us cash collateral was entered on August 14, 2015 and a continued hearing on cash collateral usage was scheduled for October 14, 2015.  (Docket No. 155).  On October 15, 2015, a stipulation authorizing the limited use of cash collateral was entered and a final order authorizing the use of cash collateral was entered on October 21, 2015.  (Docket Nos. 230 and 242).  On February 1, 2015, Debtors and Wells Fargo submitted a joint stipulation permitting the continued use of cash collateral.  (Docket No. 315).

On July 6, 2016, Debtors filed a motion seeking entry of an order authorizing the continued use of cash collateral and requesting the scheduling of an expedited hearing. (Docket Nos. 398 and 399). The court entered an order scheduling an expedited hearing on Debtors' motion to continue use of cash collateral on July 6, 2016 and a hearing on continued cash collateral use was scheduled for July 11, 2016. (Docket No. 400).

A consent order amending the final cash collateral order was entered on July 15, 2016 and a continued hearing on cash collateral usage was scheduled for August 2, 2016. An order amending the final cash collateral order was entered on August 9, 2016. (Docket no. 421).

On December 12, 2016, Debtors filed a motion requesting the continued use of cash collateral. (Docket Nos. 516 and 517). A hearing on the motion authorizing the continued use of cash collateral was scheduled for January 5, 2017. (Docket No. 518). A joint stipulation regarding continued use of cash collateral with respect to Sugarloaf was entered on December 20, 2016. (docket No. 532). An objection to the stipulation was filed by Bay Point Capital partners, LLP ("Bay Point"). On January 5, 2017, a response with respect to the cash collateral motions was filed on behalf of the examiner. (Docket No. 541). On January 9, 2017, amended stipulations with respect to Sugarloaf's continued use of cash collateral were entered and consent orders regarding the use of cash collateral by NRCT and Bay Circle were also entered. (Docket Nos. 543, 544, 545 and 546). Lastly, a stipulation authorizing the continued use of cash collateral was filed on behalf of NRCT and Bay Circle Properties on February 10, 2017 and February 15, 2017 respectively. (Docket Nos. 548 and 592).

### 3. Motion for Examiner

On July 13, 2015, Wells Fargo filed a memorandum in support of the appointment of an examiner. (Docket No. 132). By order entered on July 15, 2015, the court authorized the appointment of an examiner. (Docket No. 134). On July 15, 2015, the Office of the United States Trustee filed a motion of appointment of examiner and application for approval of an examiner. (Docket Nos. 135 and 136). The Court entered an order approving the appointment of an examiner on July 16, 2015. (Docket No. 136). On July 20, 2015, the Office of the United States Trustee filed a notice of acceptance of appointment of Jessica Talley-Peterson of HDH Advisors, LLC as examiner in these cases. (Docket No. 143).

### 4. Motion for Relief From Stay

On June 23, 2015, Wells Fargo filed a motion requesting relief from the automatic stay requesting that the stay be lifted to permit lender to take actions necessary to file and prosecute to judgment certain counterclaims against the Debtors in litigation pending in the United States District Court for the Northern District of Georgia, Atlanta Division, case number 1:15-cv-01495-RWS, styled *Nilroy Inc., et al. vs. Wells Fargo Bank, National Association* ("District Court Litigation"). (Docket No. 73). A hearing on the motion was scheduled for July 2, 2015. An order granting Wells Fargo's motion for relief from stay was entered on July 10, 2015. (Docket No. 129).

5.    **Settlement Motion and Related Pleadings**

On November 30, 2015, Debtors filed a motion requesting entry of an order approving a settlement agreement by and between Debtors and Wells Fargo as amended on January 12, 2016.  (Docket Nos. 277 and 301).  As set forth in the motion, the most pertinent terms are set forth below:

(i)    The Debtors shall continue to (i) timely file their United States Trustee operating reports, (ii) provide monthly rent rolls to Wells Fargo on or before the twenty-fifth day of each month, and (iii) provide such other reports regarding the status of the Parcels, the cash collateral, and results of operations (including a comparison of actual results to those forecast in the budget under the Cash Collateral Order) as Wells Fargo may request from time to time.

(ii)    The Debtors shall continue to make the required Monthly Adequate Protection Payments to Wells Fargo each month, on the twenty-fifth day of each month, and shall not use any cash collateral except as authorized by a Cash Collateral Order then in effect or to pay to Wells Fargo amounts required to be paid pursuant to this Agreement.

(iii)    On the Effective Date of the Settlement Agreement, Obligors shall pay to Wells Fargo 50% of the pre-petition attorney's fees and cost incurred by Wells Fargo (which total $100,486.77) and the balance on the thirtieth day following the Effective Date.

(iv)    Obligors shall be obligated to reimburse Wells Fargo for all fees and expenses incurred by Wells Fargo from and after the Petition Date, subject to and in accordance with the following procedures: 'Wells Fargo shall submit to the U.S. Trustee and counsel for the Debtors a copy of each invoice for any such fees and expenses (which may be redacted, to the extent necessary to protect the attorney-client privilege); the Debtors and the U.S. Trustee shall have ten days after receipt of each invoice to register any objection to the reasonableness of any such fees or expenses described in such invoice identifying in any such objection the specific fees or expenses as to which an objection is made and the amount thereof, and the basis for such objection); if no objection is timely made in a writing sent to counsel for Wells Fargo, such invoiced fees and expenses shall deemed allowed and shall be paid to Wells Fargo; and if any objection is timely made, the amount of fees and expenses that are subject to such objection shall not be paid until further order of the Bankruptcy Court.

(v)    To the extent they have sufficient funds available, Obligors shall pay to Wells Fargo all Indemnity Obligations on each presentation by Wells

17

Fargo of an invoice therefor detailing the nature and amount of such Indemnity Obligations.

(vi)     On May 3I, 2016, Obligors shall pay all of the Obligations, including all of Wells Fargo's then outstanding reasonable attorneys' fees and expenses incurred by Wells Fargo on and after the Petition Date as determined in accordance with the Settlement Agreement.

(vii)    Provided that no Event of Default occurs and the Obligations are paid in full in accordance with this Agreement, Obligors shall earn a discount equal to $300,000 of all unpaid Default Interest accrued through the Effective Date (the "Default Interest Discount"). The Default Interest Discount, if earned, shall be applied to reduce the final payment due under the Agreement.

(viii)   Commencing on the Effective Date and continuing during the settlement term for so long as no Event of Default occurs or exists, interest shall accrue on the outstanding principal balances of the Notes at the non-default rate specified in the Notes, provided that if an Event of Default shall occur after the Effective Date, then Default Interest shall forthwith begin to accrue on the outstanding principal balances of the Notes until the Obligations are paid in full.

(ix)     Wells Fargo will release its Lien on a Parcel upon Wells Fargo's receipt of all of the proceeds from an Approved Sale of such Parcel, provided that such proceeds are in a Net Cash Amount at least equal to the Minimum Release Amount for each Parcel (or such lesser amount as 'Wells Fargo, in writing, may agree in its discretion).

(x)      Obligors shall diligently and in good faith seek to sell each Parcel for an amount in excess of the applicable Minimum Release Amount and shall remit all proceeds from each sale of any Parcel for immediate application to the Obligations.

(xi)     Upon Obligors' payment in full of all of the Obligations, and provided that there is no pending or threatened claim against Wells Fargo as to which any Obligor has agreed to indemnify Wells Fargo, Wells Fargo Fargo shall release its Liens on any Parcel remaining subject to Wells Fargo's Liens.

(xii)    Obligors shall be required to make periodic Minimum Cash Payments to Wells Fargo over the course of the settlement term.

(xiii)   Wells Fargo or any Person to whom Wells Fargo assigns all or any part of the Obligations may, at any time prior to entry of a Sale Approval Order with respect to any Parcel, submit a Credit Bid for such Parcel, provided that the Net Cash Amount of such Credit Bid may not exceed the

Minimum Release Amount for such Parcel unless the highest bid for such Parcel is made by a Person who is an Affiliate.

(xiv)   Upon or after the occurrence of any Event of Default, Wells Fargo may direct each Debtors to file one or more motions seeking authority to sell to Wells Fargo, pursuant to Section 363 of the Bankruptcy Code, any Parcel owned by such Debtors. At any such sale, Wells Fargo shall submit a Credit Bid for the Parcel being sold up to an amount equal to the Minimum Release Amount for such Parcel, but in each case subject to higher and better bids.

(xv)    Upon the occurrence of an Event of Default, the automatic stay imposed pursuant to Section 362 of the Bankruptcy Code shall be automatically lifted, and Wells Fargo shall be entitled to immediate entry of orders by the Bankruptcy Court in each Bankruptcy Case confirming such relief from the automatic stay to exercise foreclosure and other rights and remedies, including obtaining a sale pursuant to a power of sale contained in any Security Document, and confirmation of any foreclosure sale in Wells Fargo's discretion, and to exercise (in its discretion) any and all rights and remedies it has under the loan documents, at law, or in equity.

(xvi)   Promptly after entry of the Order approving the settlement, Obligors shall execute deeds sufficient to transfer, upon recordation thereof, each Parcel of the Encumbered Property to Wells Fargo (or an affiliate of Wells Fargo designated by Wells Fargo) (the "Deeds in Lieu") and shall deliver to Wells Fargo such Deeds in Lieu. Wells Fargo shall not be authorized to record any Deed in Lieu unless and until an Event of Default occurs. Upon or after the occurrence of an Event of Default, Wells Fargo may at any time and in its discretion, without further notice to any Obligor or any other Person, record one or more of the Deeds in Lieu to  effectuate a transfer of title to one or more Parcels of the Encumbered Property to Wells Fargo or its designated affiliate.

(xvii)  The Debtors are providing a complete release to Wells Fargo of any claims related to the Company Loan Note, Individual Loan Note, Swap Agreement or related documents or transactions.

(xviii) The Debtors stipulate to the amount of the Wells Fargo' claim as of August 3l , 2015, in the sum of (i) $ 11,405,801.13 in principal, together with $530,891.76 in accrued but unpaid interest, on the Company Loan, and (ii) $8,896,250.05 in principal, together with 5376,237.23 in accrued but unpaid interest, on the Individual Loan, and (iii) along with any other Qualified Guarantors, the balance of the Early Termination Fee of $1,015,127.99, plus $8,648.37 in accrued but unpaid interest. Through July 3I,2015, Obligors also jointly and severally owe Wells Fargo $329,010.61 in costs and fees, including reasonable attorneys' fees, in

accordance with and under the Company Loan Documents and the
Individual Loan Documents

On January 5, 2016, Gateway filed a limited objection to the proposed settlement
agreement.  (Docket No. 294).  On January 13, 2016, the Court entered an order approving the
Settlement Agreement.  (Docket No. 302).

On May 23, 2016, Wells Fargo filed its transfer of claim in accordance with Rule
3001(e) of the Federal Rules of Bankruptcy Procedure transferring its claim to Bay Point Capital
Partners, P ("Bay Point").

On July 6, 2016, Bay Point filed its notice of default with respect to settlement
agreement asserting that Debtors failed to timely remit an adequate protection payment.
("Docket No. 402).   A hearing on the default notice was scheduled for July 11, 2016.  On July 8,
206, the examiner filed a response in opposition to the notice of default.  (Docket No. 403).
Debtors filed a response to the notice of default on July 10, 2016.  (Docket No. 406).  The
hearing on the default notice filed by Bay Point was continued to August 2, 2016.  On August 1,
2016, the examiner filed a supplemental report regarding adequate protection payments and Bay
Point filed a response in support of its notice of default.  (Docket Nos. 414 and 416).  On August
4, 2016, the Court entered an order denying Bay Point's notice of default regarding the
settlement agreement.  (Docket No. 417).

On April 20, 2017, Debtors filed a motion requesting clarification regarding the
payment date for Bay Point's claim.  (Docket No. 658).  On April 27, 2017, the Court entered an
order clarifying and establishing that the final payment due to Bay Point under the settlement
agreement, as amended, was due on May 1, 2017.  (Docket No. 676).

### G.    Motions to Sell

On July 1, 2015, Sugarloaf filed its motion requesting entry of an order authorizing the
sale of real property located at 1950 Satellite Boulevard, Duluth, Georgia free and clear of liens,
claims and encumbrances for a purchase price of $3,075,000.00 to Walks at Johns Creek
Partners, LLC, as amended. (Docket Nos. 102 and 146).  An order approving the motion was not
entered.

On July 2, 2015, Nilhan filed its motion requesting entry order approving the sale of its
three office suite buildings located at 2800, 2810, 2812 and 2814 Spring Road, SE Atlanta,
("Spring Property) for a purchase price of $6,000,000.00 to Westplan Investors Partners, LP
("Spring Buyer") free and clear of liens, claims, and encumbrances., as amended (Docket No.
105 and 147).  An order approving the motion was not entered.

On January 11, 2016, Debtors filed a motion to establish bidding procedures for the sale
of certain real property encumbered by the lien of Wells Fargo as amended on February 1, 2016.
(Docket Nos. 299 and 316).  The property subject to this motion included the following:

(i)     1930 Satellite Blvd, 1950 Satellite Blvd, and 1970 Satellite Blvd owned by Sugarloaf;

(ii)    5100 and 5150 Peachtree Ind Blvd owned by DCT;

(iii)   6600 and 6610 Bay Circle owned by Bay Circle;

(iv)    2800, 2810, 2812, and 2814 Spring Road owned by Nilhan; and

(v)     10 acres located on Tench Road and 26 acres located on Peachtree Ind Blvd owned by NRCT.

An order granting the motion and establishing bidding procedures was entered on February 5, 2016. (Docket No. 317). No subsequent orders authorizing the sale of the above-listed property in accordance with the bidding procedures was entered.

On January 30, 2017, Debtors filed a motion to sell certain real property located at 6600 and 6610 Bay Circle to TG Bay Circle, LLC free and clear of liens, claims and encumbrances for a purchase price of $5,000,000.00. (Docket No. 567). Bay Point objected to the motion to sell the real property on January 30, 2017. (Docket No. 571). On February 14, 2017, the Court entered orders approving the sale of the real property located at 6600 and 6610 Bay Circle to Bay Point for a credit bid of $5,350,000.00. (Docket Nos. 590 and 591).

On March 28, 2017, Debtors file a motion to sell certain real property located at 5150 Peachtree Industrial, Norcross, Georgia owned by DCT to BEB Real Estate Service, LLC free and clear of liens, claims and encumbrances for a purchase price of $2,419,242.00. (Docket No. 628). A limited objection to the motion was filed by Bay Point. Gateway also objected to the proposed sale. An order approving the motion was not entered.

On April 11, 2017, Debtors filed a motion to sell certain real property located at 2800 and 2810 Spring Road Smyrna, Georgia owned by Nilhan to Westplan Investors for $7,000,000.00 free and clear of liens, claims and encumbrances. A limited objection to the motion was filed by Bay Point. Discovery occurred by and between the Debtors and Bay Point. After hearing and notice, the Court entered an order approving the sale of the property to West Plan Investors for $7.2 million and as a condition of the sale, Chuck Thakkar was required to pay $100,000.00 at closing and all net proceeds remitted to Bay Point. (Docket No. 679).

**H.    Post-Petition Financing**

On October 15, 2016, Sugarloaf filed a motion pursuant to Section 364 of the Bankruptcy Code to obtain post-petition financing from SIMBA Global in the amount of $7,500,000.00 with a maturity date of December 31, 2019 with interest accruing at the rate of 7% per annum. (Docket No. 434). SIMBA Global received a first priority security interest in commercial real property located at 1950 and 1970 Satellite Boulevard, Duluth Georgia. A hearing on the motion was scheduled for October 20, 2016. Bay Point objected to Sugarloaf's motion to obtain post-

petition financing.  (Docket No. 446).  On October 28, 2016, the Court entered an order granting the motion to obtain post-petition financing.  (Docket No. 454).  Bay Point was directed to release its lien and return any deed in lieu of foreclosure upon receipt of $7,500,000.00. Additional conditions were required in order for post-petition financing to be obtained including the filing of documentation regarding the construction of commercial space which was provided and an order authorizing the use of property was entered on November 7, 2016.  (Docket No. 467).

On January 12, 2017, Nilhan filed a motion pursuant to Section 364 of the Bankruptcy Code to obtain post-petition financing from SIMBA Global PTY Ltd. in the amount of $5,500,000.00 with a maturity date of December 31, 2019 with interest accruing at the rate of 7% per annum and received a security interest inland Lots 880 and 881 of the 17th District, 2nd Section, Cobb County, Georgia.  (See docket No. 550).  On January 25, 2017, the Court entered an order approving the motion to obtain post-petition financing and Bay Point was directed to release its liens upon receipt of $5,500,000.00.  (Docket No. 557).  The post-petition financing did not close.

On April 21, 2017, NRCT,  DCT, Nilhan and Sugarloaf filed a motion pursuant to Section 364 of the Bankruptcy Code to obtain post-petition financing in the amount of $13,000,000.00 from SIMBA Global.  (Docket No. 659).  As collateral, SIMBA Global was to receive a first priority security interest in the following (i) 46 acres of land along Peachtree Industrial and Tench Road owned by NRCT, (ii) 2800 and 2810 Spring Road owned by Nilhan, and (iii) 5100 and 5150 Peachtree Industrial Blvd owned by DCT.  Objections were filed by Bay Point and Gateway.   On April 28, 2017, the Court entered an order authorizing the NRCT, Nilhan and Sugarloaf to obtain post-petition financing and to remit the proceeds of the financing to Bay Point and upon receipt of the proceeds Bay Point was authorized and directed to release its liens and encumbrances. (Docket No. 680).  The post-petition financing did not close.

On May 2, 2017, Bay Point filed a motion of default representing that Debtors failed to remit the balance due and owing in the amount of $9,934,445.58 on May 1, 2017 and Bay Point intended to record its deed-in-lieu related to 5100 and 5150 Peachtree Industrial Boulevard. (Docket No. 685).  On May 5, 2017, DCT filed its motion to compel Bay Point to accept payoff, as amended.  (Docket No. 687 and 690).  As stated in the motion to compel, after selling the real property owned by Nilhan for $7,300,000.00 the balance due and owing to Bay Point as of May 1, 2017, totaled $2,636,089.18 and SIMBA was willing to provide the funds to satisfy the indebtedness.  On May 8, 2017, the Court entered an order lifting the stay "for cause" for all purposes with respect to the real property located at 5100 and 5150 Peachtree Industrial Boulevard, Norcross, Georgia.  (Docket No. 692).

## I.     Matters on Appeal

Three matters were appealed during the pendency of the case and the appeals are summarized below:

1.     On October 28, 2016, Bay Point Capital Partners, LP filed appealed to the United States District Court Northern District of Georgia, Atlanta Division ("District Court")

case number 16-cv-4077, the Court's order granting post-petition financing which permitted Sugarloaf to obtain post-petition financing from SIMBA in the amount of $7,500,000.00. (Docket No. 457).  On or about February 14, 2017, the District Court granted the motion to dismiss.

   2. On February 27, 2017, Good Gateway, LLC and SEG Gateway, LLC appealed to the District Court, the Court's order granting Debtors' motion to sell free and clear of liens the real property owned by Bay Circle located at 6600 and 6610 Bay Circle.  (Docket No. 599).  On June 6, 2017, the District Court entered an order dismissing the appeal.

   3. On November 21, 2017, Debtors appealed to District Court, the Court's order granting Gateway a replacement lien for contribution and subrogation claims.  (Docket No. 800).  The matter has been fully briefed and parties are awaiting an order.

  **J.**  **SEG and Good Gateway Related Pleadings**

  On March 24, 2017, Gateway filed their Motion for Relief Under 11 U.S.C. § 363 and The Doctrine of Marshaling" ("Original Motion") wherein, SEG and Good Gateway sought a replacement lien because either (i) the liquidation of the Property free and clear of liens extinguished SEG and Good Gateway's lien which compromised its lien; or (ii) on the basis of an alter ego theory.  (See Bankr. Docket No. 624).  Alternatively, SEG and Good Gateway requested that the court marshal remaining property in order to satisfy the claims of SEG, Good Gateway and other creditors.   Debtors filed their "Objection to Motion for Relief Under 11 U.S.C. §363 and The Doctrine of Marshaling" ("Objection") on April 24, 2017.  (Docket No. 672).

  As set forth in the Objection, Debtors argued that SEG and Good Gateway were not entitled to adequate protection because the Property was fully encumbered by the first priority fully perfected security lien of Bay Property and the transaction did not result in any decrease or diminishment in value or harm to the junior judgment lien held by SEG and Good Gateway. (Docket No. 672).  Debtors further argued that SEG and Good Gateway were prohibited from asserting that marshaling was appropriate due to res judicata, and the law of case doctrine. Lastly, Debtors asserted that marshaling was also barred because a senior lien holder cannot be forced to exhaust security, which a senior lien holder has and which a junior lien holder does not have access to.  Specifically, Gateway does not hold any claims against DCT, Nilhan, NRCT or Sugarloaf.

  Gateway filed its "Amended and Restated Motion for Relief Under 11 U.S.C. §363 and Substantive Consolidation" ("Amended Motion") wherein, SEG and Good Gateway sought allowance of a replacement lien as a result of the extinguishments of its judgment lien from the free and clear sale of the Property.  Alternatively, SEG and Good Gateway requested that the cases be substantively consolidated.  (Docket No. 740).  Debtors filed their objection to the Amended Motion on October 6, 2017.  (Docket No. 781).  Debtors once again argued that adequate protection was not appropriate because SEG and Good Gateway did not suffer any harm and their interest was not compromised or diminished by the sale which extinguished its unsecured junior lien.  With respect to the request to substantively consolidate the Debtors'

estates, Debtors argued that the request was not timely, barred by res judicata on based on the Court's prior ruling dismissing the alter ego claims, and due to disallowance of SEG and Good Gateway's claims against the non Bay Circle Debtors, SEG and Good Gateway failed to establish any cause or basis for their request.

The Court entered its "Order on Amended and Restated Motion for Relief Under 11 U.S.C. § 363 and Substantive Consolidation" ("Order") on November 7, 2017, wherein, the Court denied Gateway's request for marshaling, substantive consolidation, and alter ego claims. (Docket No. 797). With respect to the value of the judgment lien asserted by SEG and Good Gateway, the Bankruptcy Court concluded that the

> "…lack of apparent value was based on the fact that Bay Point was owed over $15 million, which lien had priority over the Gateway lien. No one disputed that the Bay Circle Property was not worth anything close to $15 million." (See Bankr. Ct. Docket No. 797 p. 12).

The Bankruptcy Court concluded that each of the debtors as guarantors of the debt due and owing to Bay Point were and are entitled to contribution in accordance with O.C.G.A. 10-7-50 and may seek contribution to the extent that it paid more than an equal share and as a Bay Circle, as a surety having paid the debt of his principal is entitled to subrogation in accordance with O.C.G.A. §§ 10-7-56 and 10-7-57. (Docket No. 797 p. 15). Therefore, after application of state court law, the Bankruptcy Court granted as adequate protection to SEG and Good Gateway

> …a replacement lien on Bay Circle's claims for contribution and subrogation including without limitation its claims against the property owned by NRCT, but excluding specifically any claim for a lien on the property owned by Sugarloaf." (Docket No. 797).

The Bankruptcy Court concluded that the "…replacement lien on the claims of Bay Circle, both for contribution and for a subrogated lien, provides Gateway with the indubitable equivalent of its interest in the Bay Circle Property." (Docket No. 797 p. 16). This order is currently on appeal.

## V.      Summary of the Plan

**The following summary of the Plan provides only a brief description of its provisions. The summary is qualified in its entirety by the more detailed descriptions of the Plan in the Disclosure Statement and by the terms of the Plan itself.**

The Plan provides for an equitable distribution to Debtors' creditors and preserves the Debtors' ongoing business operations. The Debtors believe that any alternative to confirmation of the Plan, such as liquidation or attempts by other parties in interest to file a competing plan, would result in significant delays and/or impaired recoveries. Moreover, the Debtors believes that the creditors will receive greater and earlier recoveries under the Plan than those that would be achieved in liquidation or under an alternative plan. FOR THESE REASONS, THE DEBTORS URGES YOU TO RETURN YOUR BALLOT ACCEPTING THE PLAN.

The Plan contemplates the reorganization the Debtors and the resolution of the outstanding Claims against and Interests in the Debtors pursuant to sections 1129(b) and 1123 of the Bankruptcy Code.  The Plan classifies all Claims against and Interests in the Debtors into separate Classes.

## VI.    Description of the Plan

### A.    Retention of Property by the Debtors

Upon confirmation, the Reorganized Debtors will retain all of the property of the estate free and clear of liens, claims, and encumbrances not expressly retained by Creditors.  The Reorganized Debtors will have the rights and powers to assert any and all Causes of Action (defined as all causes of action, choses in action, claims, rights, suits, accounts or remedies belonging to or enforceable by the Debtors, including Avoidance Actions, whether or not matured or unmatured, liquidated or unliquidated, contingent or noncontingent, known or unknown, or whether in law or in equity, and whether or not specifically identified in the Debtors's Schedules).

### B.    Parties Responsible for Implementation of the Plan

Upon confirmation, the Reorganized Debtors will be charged with administration of their Case.  The Reorganized Debtors will be authorized and empowered take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. The Reorganized Debtors will file all post-confirmation reports required by the United States Trustee's office.  The Reorganized Debtors will also file the necessary final reports and will apply for an order of discharge as soon as possible after substantial consummation, the completion of the claims analysis and objection process, and following entry of Final Orders in all Bankruptcy Court litigation.

### C.    Liabilities of the Reorganized Debtors

The Reorganized Debtors will not have any liabilities except those expressly assumed under the Plan.  The Reorganized Debtors will be responsible for all expenses  incurred by the Debtors after the Filing Date and will pay such claims in accordance with normal terms.

### D.    Funding of the Plan

The Debtors shall pay all claims from the Debtors's postpetition operational income.

The Plan provides that the Debtors shall act as the Disbursing Agent to make payments under the Plan unless the Debtors appoints some other entity to do so.  The Debtors may maintain bank accounts under the confirmed Plan in the ordinary course of business.  The

Debtors may also pay ordinary and necessary expenses of administration of the Plan in due course.

Copies of Debtors's tax returns are available upon request. Any creditor can request copies of the tax returns by contacting Debtors's counsel M. Denise Dotson at M. Denise Dotson, LLC, PO Box 435 Avondale Estates, Georgia 30002 or vie electronic transmission at denise@mddotsonlaw.com.

### E.    Provisions Regarding Executory Contracts

Debtors are not a party to any executory contracts or unexpired leases.

Nothing herein constitutes nor should it be construed as an admission or waiver of Debtors' rights to seek to challenge the agreements and request a legal determination that such agreements constitute financing agreements. Debtors asserts that all obligations due and owing under the executory contracts and unexpired leases to be assumed hereunder are current. Any party that asserts a cure claim shall file a request for determination of cure claim on or before sixty (60) days after mailing of notice of the Confirmation Order. Any requests for determination of cure claim not filed on or before sixty (60) days after mailing of notice of the Confirmation Order will be waived and forever barred and the amounts determined to be due and owing by the Debtors shall become binding upon the parties and their successors, assigns, or heirs. Any allowed cure amounts will be paid in six (6) equal monthly installments beginning the first month after the Effective Date of the Plan.

Any unexpired leases or executory contracts which are not assumed or are the subject of a pending motion to assume shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date. A proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after mailing of notice of the Confirmation Order. Any claims which are not timely filed will be disallowed and discharged.

### F.    Avoidance Actions and Retained Rights

The Plan provides that the Debtors shall retain all rights of action against others. The Plan also provides that the Debtors shall retain "Avoidance Actions" under chapter 5 of the Bankruptcy Code.

The Debtors may also have Claims against others which are retained. Notwithstanding the foregoing, the Debtors is reviewing records and believes there are potential preference claims. Further, the Debtors is not aware of any fraudulent conveyance claims.

G.    **Treatment of Claims and Interests**

A summary of the treatment of claims for Bay Circle, DCT, Sugarloaf, Nilhan and NRCT are attached hereto as Exhibits F, G, H, I and J respectively.

**VII.    Administrative Expenses**

Treatment of administrative expense claims is set forth in Article 5 of the Plan and summarized below.

7.1    Summary.    Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against the Debtors are not classified for purposes of voting on, or receiving Distributions under this Plan. Holders of such Claims are not entitled to vote on this Plan.  All such Claims are instead treated separately in accordance with this Article V and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

7.2    Administrative Expense Claims.

7.2.1    Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by the Debtors in the ordinary course of business, or otherwise assumed by the Debtors on the Effective Date pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by the Reorganized Debtors when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

7.2.2    Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by the Debtors of its business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Reorganized Debtors provide notice by mail or by publication, in a form and manner approved by the Court, of the occurrence of the Effective Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for the Reorganized Debtors.  Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by the Debtors, the Estate, or the Reorganized Debtors.

7.2.3  Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty (60) days after the Effective Date or by such other deadline as may be fixed by the Bankruptcy Court.

The Debtors' attorney fees during the remaining pendency of the case shall be paid as the same may be approved by the Bankruptcy Court.   The Plan provides that the Debtors may pay professional fees incurred after confirmation of the Plan without Court approval.   The Debtors shall pay all pre-confirmation fees of professionals as payment of the same is approved by the Court.

The following chart illustrates Debtors's estimated administrative expenses and proposed treatment under the Plan:

| Type | Estimated Amount Owed | Treatment |
|------|----------------------|-----------|
| Ordinary Course of Business Expenses | None anticipated | Paid in accordance with credit terms of each vendor.<br><br>Will be paid in full the later of (i) the Effective Date; (ii) as soon as practicable after such claim becomes an Allowed Administrative Expense Claim; (iii) upon such other terms as may be agreed upon by the parties; or (iv) pursuant to Court order. |
| Professional Fees | Fees have not exceeded retainer as of the date of filing | Paid in accordance with credit terms of each vendor.<br><br>Will be paid in full the later of (i) the Effective Date; (ii) as soon as practicable after such claim becomes an Allowed Administrative Expense Claim; (iii) upon such other terms as may be agreed upon by the parties; or (iv) pursuant to Court order. |
| Other Administrative Expenses | None anticipated | Paid in accordance with credit terms of each vendor.<br><br>Will be paid in full the later of (i) the Effective Date; (ii) as soon as practicable after such claim becomes an Allowed Administrative Expense Claim; (iii) upon such other terms as may be agreed upon by the parties; or (iv) pursuant to Court order |

28

| | | |
|---|---|---|
| U.S. Trustee Fees | None outstanding | Paid in full on the Effective Date of the Plan |

## VIII.  Tax Consequences

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class.  Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes.  Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only.  No specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted.  Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation.

THE PROPONENT ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN OF A CLAIM OR INTEREST. HOLDERS OF CLAIMS OR INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION.

The receipt by a Creditor or Interest of cash or property in full or partial payment of its Claim or Interest may be a taxable event.  To the extent that a portion of the cash or the fair market value of any property received is attributable to accrued and unpaid interest on a Claim being paid, a Creditor may recognize interest income.  A Creditor or Interest Holder may also recognize gain or loss equal to the difference between the sum of the amount of cash received and the adjusted basis in the Claim or Interest for which they  receive amounts under the Plan.  Such gain or loss may be treated as ordinary or capital depending upon whether the Claim or Interest is a capital asset.

Under the backup withholding rules of the Tax Code, a  Holder of a Claim may be subject to backup withholding at the rate of thirty-one percent (31%) with respect to Distributions made pursuant to the Plan unless such Holder (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that it is not subject to backup withholding due to a failure to report all dividends and interest.  Any amount so withheld will be credited against the Holder's federal income tax liability.

**IX.    Debtors' Operations After the Filing Date**

Debtors have continued to conduct his affairs as Debtors in possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code since the Petition Date.

**X.    Liquidation Analysis**

The Debtors' Plan provides funding for the Plan from ongoing business operations and pay Holders of Allowed Claims in full.

In the event the Debtors' estate is liquidated, the unsecured creditors and Holders of Interests would receive an amount less than that proposed in the Plan. Conversion and liquidation under Chapter 7 of the Bankruptcy Code would result in the liquidation of non-exempt assets. Assets disposed of by "liquidation" or "fire" sale generally generate less proceeds than assets that are marketed and sold as a going concern.

In the event the Lenders' foreclose, the value of the Real Property will not be sufficient to satisfy the obligations due and owing the Lenders.  Debtors' operations will cease and there will be no funds to pay creditors.

**XI.    Procedures for Treating and Resolving Disputed Claims**

**A.    Objection To Claims**

The Plan provides that the Reorganized Debtors shall be entitled to object to Claims, provided, however, that the Debtors and Reorganized Debtors shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date or (ii) that are Allowed by the express terms of the Plan.  Any objections to Claims must be filed by the Claims Objection Deadline.  The Plan defines the Claims Objection Deadline to be the later of the first Business Day which is (i) thirty (30) days after the Effective Date, or (ii) such other time as may be ordered by the Bankruptcy Court, as such dates may be from time to time extended by the Bankruptcy Court without further notice to parties in interest.

**B.    No Distributions Pending Allowance**

Except as otherwise provided in the Plan, no Distributions will be made with respect to any portion of a Claim unless and until (i) the Claims Objection Deadline has passed and no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

**C.    Estimation of Claims**

The Debtors or the Reorganized Debtors, as the case may be, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the

Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.   In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors (and after the Effective Date, the Reorganized Debtors) may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

### D.    Resolution of Claims Objections

On and after the Effective Date, the Reorganized Debtors shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## XII.    Conditions Precedent to the Effective Date

### A.    Conditions to Confirmation

The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Article 11.3 of the Plan:  (a) the Bankruptcy Court shall have approved a Disclosure Statement with respect to the Plan; and (b) the Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Court.

### B.    Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.2 of the Plan.

> (a)    The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed.

> (b)    All documents and agreements to be executed on the Effective Date or otherwise necessary to implement the Plan shall be in form and substance that is acceptable to the Debtors, in its reasonable discretion.

> (c)    The Debtors shall have received any authorization, consent, regulatory approval.

Under the Plan, each of the conditions set forth above may be waived, in whole or in part, by the Debtors without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtors in their sole discretion regardless of the

circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors in their sole discretion).  The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## XIII.    Certain Effects of Confirmation

### A.      Vesting of the Debtors' Assets

Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in  the Debtors that owned such property or interest in property as of the Filing Date, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan.  As of the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

### B.      Discharge of the Debtors

Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors, the Reorganized Debtors or its Estate that arose prior to the Effective Date.

### C.      Release by Debtors of Certain Parties

Except as otherwise specifically provided in the Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, as of the Effective Date, the Debtors, in their individual capacity and as a Debtors in possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtors and any Released Party, the restructuring of Claims or Interests prior to or in the bankruptcy case, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring or the bankruptcy cases.   The Reorganized Debtors, and other potential

representatives of the Estate shall be bound, to the same extent the Debtors are bound, by all of the releases set forth above.

The Released Parties include (i) all officers, directors, employees, consultants, agents, financial advisors, attorneys and other representatives of the Debtors who served in such capacity on or subsequent to the Filing Date, in each case in their capacity as such.

### D.    Release by Holders of Claims and Interests

The Plan contains the following language regarding releases of claims by Holders of Claims and Interests:

**EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, ON THE EFFECTIVE DATE, (a) EACH PERSON THAT VOTES TO ACCEPT THE PLAN OR IS PRESUMED TO HAVE VOTED FOR THE PLAN PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE; AND (b) TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTERPRETED SUBSEQUENT TO THE EFFECTIVE DATE, EACH ENTITY (OTHER THAN A DEBTORS), THAT HAS HELD, HOLDS, OR MAY HOLD A CLAIM OR INTEREST (EACH, A "RELEASE OBLIGOR"), IN CONSIDERATION FOR THE OBLIGATIONS OF THE DEBTORS AND THE REORGANIZED DEBTORS UNDER THE PLAN AND THE CASH, NEW COMMON STOCK, AND OTHER CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS OR DOCUMENTS TO BE DELIVERED IN CONNECTION WITH THE PLAN, SHALL HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED EACH RELEASED PARTY FROM ANY CLAIM OR CAUSE OF ACTION EXISTING AS OF THE EFFECTIVE DATE ARISING FROM, BASED ON OR RELATING TO, IN WHOLE OR IN PART, THE SUBJECT MATTER OF, OR THE TRANSACTION OR EVENT GIVING RISE TO, THE CLAIM OF SUCH RELEASE OBLIGOR, AND ANY ACT, OMISSION, OCCURRENCE OR EVENT IN ANY MANNER RELATED TO SUCH SUBJECT MATTER, TRANSACTION OR OBLIGATION; PROVIDED, HOWEVER, THAT THIS ARTICLE 10.4 SHALL NOT RELEASE ANY RELEASED PARTY FROM ANY CAUSE OF ACTION HELD BY A GOVERNMENTAL ENTITY EXISTING AS OF THE EFFECTIVE DATE, BASED ON (i) THE INTERNAL REVENUE CODE OR OTHER DOMESTIC STATE, CITY OR MUNICIPAL TAX CODE, (ii) THE ENVIRONMENTAL LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY OR MUNICIPALITY, (iii) ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY OR MUNICIPALITY, (iv) THE EXCHANGE ACT, THE SECURITIES ACT, OR OTHER SECURITIES LAWS OF THE UNITED STATES OR ANY DOMESTIC STATE, CITY, OR MUNICIPALITY, OR (v) SECTIONS 1104-1109 AND 1342(d) OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED.**

E.    Setoffs

The Debtors may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have against such entity, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such entity.

F.    Exculpation and Limitation of Liability

Under the Plan, the Debtors, the Reorganized Debtors and any of such parties' respective current and/or post-Filing Date and pre-Effective Date members, officers, directors, employees advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Cases, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  No  Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan.

G.    Injunction

The satisfaction, release, and discharge pursuant to Article X of the Plan shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

H.    Miscellaneous Plan Provisions

1.    Modification of Plan

The Debtors shall be allowed to modify the Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits.  Subject to the limitations contained in the Plan, pursuant to Article 13.1 of the Plan, the Debtors may modify the Plan, before or after

confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes.  The Debtors reserves the right in accordance with section 1127 of the Bankruptcy Code to modify the Plan at any time before the Confirmation Date.

## 2.   **Retention of Jurisdiction**

The Plan provides that subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

(a)    to adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established in the Plan;

(b)    To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated claim, to establish the amount of any reserve required to be withheld from any distribution under the Plan on account of any disputed, contingent or unliquidated claim;

(c)    To resolve all matters related to the rejection, assumption and/or assignment of any Executory Contract or Unexpired Lease of the Debtors;

(d)    To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by the Debtors and/or the Reorganized Debtors;

(e)    To hear and rule upon all applications for Professional Compensation;

(f)    To remedy any defect or omission or reconcile any inconsistency in the Plan, as may be necessary to carry out the intent and purpose of the Plan;

(g)    To construe or interpret any provisions in the Plan and to issue such orders as may be necessary for the implementation, execution and consummation of the Plan, to the extent authorized by the Bankruptcy Code;

(h)    To adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

(i)     To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of the Plan, including the Distribution of funds from the Estate and the payment of claims;

(j)     To determine any suit or proceeding brought by the Debtors and/or the Reorganized Debtors to recover property under any provisions of the Bankruptcy Code;

(k)     To hear and determine any tax disputes concerning the Debtors and to determine and declare any tax effects under the Plan;

(l)     To determine such other matters as may be provided for in the Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(m)     To determine any controversies, actions or disputes that may arise under the provisions of the Plan, or the rights, duties or obligations of any Person under the provisions of the Plan;

(n)     To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtors sold any of its assets during the Bankruptcy Cases; and

(o)     To enter a final decree.


**XIV.   Confirmation and Consummation Procedure**

   **A.     General Information**

All creditors whose Claims are Impaired by the Plan may cast their votes for or against the Plan. As a condition to confirmation of the Plan, the Bankruptcy Code requires that one Class of Impaired Claims votes to accept the Plan. Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of Impaired Claims as acceptance by Holders of at least two-thirds of the dollar amount of the class and by more than one-half in number of Claims. Holders of Claims who fail to vote are not counted as either accepting or rejecting a plan. Voting is accomplished by completing, dating, signing and returning the ballot form (the "Ballot") by the Voting Deadline. Ballots will be distributed to all creditors entitled to vote on the Plan and is part of the Solicitation Package accompanying the Disclosure Statement. The Ballot indicates (i) where the Ballot is to be filed and (ii) the deadline by which creditors must return their Ballots.

**B.**      **Solicitation of Acceptances**

This Disclosure Statement has been approved by the Court as containing "adequate information" to permit creditors and equity interest holders to make an informed decision whether to accept or reject the Plan.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to, or concurrently with, such solicitation.

**C.**      **Acceptances Necessary to Confirm the Plan**

At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by the Debtors' creditors.  The Voting Classes will be deemed to accept the Plan if at least two-third in amount and more than one-half in number of the Claims in each class vote to accept the Plan.  Furthermore, unless there is unanimous acceptance of the Plan by the Voting Classes, the Court must also determine that any non-accepting Class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such Class member would receive or retain if the Debtors were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

**D.**      **Confirmation of Plan Pursuant to Section 1129(b)**

The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all Impaired classes.  To confirm the Plan without the requisite number of acceptances of each Impaired Class, the Court must find that at least one Impaired Class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to any Impaired Class that does not accept the Plan.  Class 5 is deemed to reject the Plan.  Accordingly, if any Impaired Class votes to accept the Plan, the Debtors will seek to confirm the Plan under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

**E.**      **Considerations Relevant to Acceptance of the Plan**

The Debtors' recommend that all Creditors should vote to accept the Plan is premised upon the Debtors' view that the Plan is preferable to other alternatives for liquidation of the Debtors' estate.  It appears unlikely to the Debtors that an alternate plan of reorganization or liquidation can be proposed that would provide for payments in an amount equal or greater than the amounts proposed under the Plan.  If the Plan is not accepted, it is likely that the interests of all creditors will be further diminished.

Respectfully submitted this 2nd day of July, 2018.

By: _____/s_____
Authorized Representative Bay Circle
Properties, LLC, DCT Systems Group,
LLC (6978), Sugarloaf Centre, LLC
(2467), Nilhan Developers, LLC (6335),
and NRCT, LLC (1649).

Debtors and Debtors in Possession

**M. DENISE DOTSON, LLC**

*/s/ M. Denise Dotson*_____
M. Denise Dotson
Georgia Bar No. 227230
PO Box 435
Avondale Estates, GA 30002
(404) 210-0166 Telephone
ddotsonlaw@me.com
Proposed Counsel

CERTIFICATE OF SERVICE

I certify that on the date specified herein below I cause to be served a copy of the foregoing documents via first class United States mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery upon the parties listed below:

Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Ted Turner Drive
Atlanta, Georgia 30303

This 2nd day of July, 2018.

**M. DENISE DOTSON, LLC**

*/s/ M. Denise Dotson*
M. Denise Dotson
Georgia Bar No. 227230
PO Box 435
Avondale Estates, GA 30002
(404) 210-0166 Telephone
ddotsonlaw@me.com
Proposed Counsel

# EXHIBIT A

Bay Circle Claims Analysis

| Claim Number | Date Filed | Creditor | Claim Classification | Amount | ClaimStatus |
|---|---|---|---|---|---|
| 1 | 6/5/2015 | IRS | Nothing due and owing | $0.00 | Claim filed on June 5, 2015 in the amount of $5,000.00 and amended on June 19, 2015 reducing claim to $100.00 and amended on September 9, 2015, reducing the amount to $0.00 |
| 2 | 7/29/2015 and amended on 11/25/2015 | Good Gateway | | $2,500,000.00 | |
| 3 | 7/29/2018 and amended on 11/29/2015 | SEG Gateway, LLC | | $12,000,000.00 | |
| 4 | 7/30/2015 and amended on 11/25/2015 | Good Gatgeway, LLC | | $1,364,138.87 | |

| | | | | | |
|---|---|---|---|---|---|
| 5 | 7/30/2015 and amended on 11/25/2015 | SEG Gateway, LLC | | $1,364,138.87 | |
| 6 | 11/18/2015 | Bay Point Capital Partners, LP | Secured | $2,207,544.85 | Satisfied |
| 7 | 11/24/2015 | Russell Landscape, LLC | | $620.00 | |
| 8 | 11/24/2015 | Peachtree Holdings, LLC | | $3,194.95 | |
| 9 | 3/25/2016 | Rent Recovery, LLC | | $3,194.95 | |
| 10 | 9/7/2016 | Stephen Been | Claim filed incorrectly. No claim against Bay Circle - claim should have been filed in case number 17-56804-pwb per all documentation. | Unknown | Claim was filed in incorrect case. Appropriate case number 17-56804. The claim was asserted against John Muenchen Jr. and Patricia Muenchen. |

# EXHIBIT B

DCT Claims Analysis

| Claim Number | Date Filed | Creditor | Claim Classification | Amount | ClaimStatus |
|---|---|---|---|---|---|
| 1 | 6/5/2015 and amended on 6/19/2015 | IRS | Nothing due and owing | $0.00 | |
| 2 | 6/8/2015 | HCL America, Inc. | | $58,598.36 | |
| 3 | 7/30/2015 and amended on 8/25/2015 and 11/25/2015 | Good Gateway, LLC | | $2,500,000.00 | Disallowed |
| 4 | 7/30/2015 and amended on 8/25/2015 amd 11/25/2015 | SEG Gateway, LLC | | $15,376,435.58 | Disallowed |
| 5 | 9/14/2015 | LIT Industrial Texas LP | | $26,216.55 | |
| 6 | 11/18/2015 | Wells Fargo Bank | Secured | $22,075,444.85 | Transferred to Bay Point Capital Partners and Satisfied |

| 7 | 11/24/2015 | Russell Landscape, LLC | $760.00 |
| 8 | 11/24/2015 | Peachtree Holdings, LLC | $2,035,366.00 |
| 9 | 11/25/2015 | Sugarloaf Centre Commercial OA | $4,631.35 |

# EXHIBIT C

Sugarloaf Claims Analysis

| Claim Number | Date Filed | Creditor | Claim Classification | Amount | ClaimStatus |
|---|---|---|---|---|---|
| 1 | 3/13/2015 and amended on 6/19/2015 | IRS | Nothing due and owing | $0.00 | |
| 2 | 7/30/2015 and amended on 8/25/2015 and 11/25/2015 | Good Gateway, LLC | | $2,500,000.00 | Disallowed |
| 3 | 7/30/2015 and amended on 8/25/2015 and 11/25/2015 | SEG Gateway, LLC | | $15,376,435.58 | Disallowed |
| 4 | 8/25/2015 | BellSouth | | $362.26 | Presumed Valid |
| 5 | 11/18/2015 | Wells Fargo Bank | Secured | $22,075,444.85 | Transferred to Bay Point Capital Partners and Satisfied |
| 6 | 11/24/2015 | Russell Landscape, LLC | | $160.00 | Presumed Valid |
| 7 | 11/24/2015 | Peachtree Holdings, LLC | | $2,035,366.00 | Presumed Valid |
| 8 | 11/25/2015 | Sugarloaf Centre Commercial OA | | $4,631.35 | Presumed Valid |

# EXHIBIT D

Nilhan ClaimsAnalysis

| Claim Number | Date Filed | Creditor | Claim Classification | Amount | ClaimStatus |
|---|---|---|---|---|---|
| 1 | 7/30/2015 and amended on 8/25/2015 and 11/25/2015 | Good Gateway, LLC | | $2,500,000.00 | Disallowed |
| 2 | 7/30/2015 and amended on 8/25/2015 and 11/25/2015 | SEG Gateway, LLC | | $15,376,435.58 | Disallowed |
| 3 | 11/18/2015 | Wells Fargo Bank | Secured | $22,075,444.85 | Transferred to Bay Point Capital Partners and Satisfied |
| 4 | 11/24/2015 | Russell Landscape, LLC | | $705.00 | |
| 5 | 11/24/2015 | Peachtree Holdings, LLC | | $2,035,366.00 | |

# EXHIBIT E

NRCT Claims Analysis

| Claim Number | Date Filed | Creditor | Claim Classification | Amount | ClaimStatus |
|---|---|---|---|---|---|
| 1 | 7/30/2015 and amended on 8/25/2015 and 11/25/2015 | Good Gateway, LLC | | $2,500,000.00 | Disallowed |
| 2 | 7/30/2015 and amended on 8/25/2015 and 11/25/2015 | SEG Gateway, LLC | | $15,376,435.58 | Disallowed |
| 3 | 11/18/2015 | Wells Fargo Bank | Secured | $22,075,444.85 | Transferred to Bay Point Capital Partners and Satisfied |
| 4 | 11/24/2015 | Peachtree Holdings, LLC | | $2,035,366.00 | |

EXHIBIT F

Treatment of Bay Circle Claims

4.1    Tax Claims.    Class 1: Priority Tax Claims.    Class 1 consists of Priority Tax Claims.  Each Holder of an Allowed Tax Claim due and payable on or prior to the Effective Date will receive sixty (60) deferred equal monthly Cash payments over a five (5) year period plus simple interest on any outstanding balance from the Effective Date calculated at a fixed rate of 3% per annum from the Effective Date or such lesser rate agreed to by a particular taxing authority or paid upon the sale of property to which the lien attaches. The amount of any Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the right of the Holder of such Claim, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.

A failure by the Reorganized Debtor to make a payment to each Holder of an Allowed Tax Claim pursuant to the terms of the Plan shall be an event of default.  If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days notice of default by the Holder of an Allowed Tax Claim to the Debtor and Debtor's counsel, then the Holder of an Allowed Tax Claim may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

There are no Tax Claims.

4.2    Class 2.  Class 2 Consists of Holders of Allowed Unsecured Claims.  Holders of Allowed Unsecured Claims will be paid in full on the Effective Date or within fourteen (14) days after entry of a final non-appealable order resolving any objection to claim.  Members of this Class include (i) Russell Landscape with a claim in the amount of $620.00; (ii) Peachtree Holdings, LLC with a claim in the amount of $3,194.95; and (iii) Rent Recovery, LLC in the amount of $3.194.95.

The Holder of the Allowed Class 2 Claim is Impaired and is entitled to vote to accept or reject the Plan.

4.3    Class 3.    Class 3 consists of the Claims of SEG Gateway, LLC and Good Gateway, LLC.  SEG filed proof of claim number 3 in the amount of $12,000,000.00 and proof of claim number 5 in the amount of $1,364,138.17.  Good Gateway filed proof of claim 3 in the amount of $12,000,000.00 and proof of claim number 4 in the amount of $1,364,138.87.

SEG and Good Gateway have received payments from bankruptcy estates of affiliates with cases pending in Florida.  Funds received by SEG and Good Gateway from the bankruptcy

estates of affiliated entities with cases pending in Florida shall be the only funds received and no distributions shall be made under this Plan to SEG and Good Gateway.

4.4     <u>Class 4</u>.   Class 4 consists of Interest Claims.   Interest Holders shall maintain their interests and upon payment of the Class 2 Allowed Claim the Debtor shall file appropriate paperwork for dissolution.

The claim of Wells Fargo that was assigned to Bay Point has been satisfied and nothing is due and owing.

EXHIBIT G

Treatment of DCT Claims

4.1     Tax Claims.    Class 1: Priority Tax Claims.   Class 1 consists of Priority Tax Claims.  Each Holder of an Allowed Tax Claim due and payable on or prior to the Effective Date will receive sixty (60) deferred equal monthly Cash payments over a five (5) year period plus simple interest on any outstanding balance from the Effective Date calculated at a fixed rate of 3% per annum from the Effective Date or such lesser rate agreed to by a particular taxing authority or paid upon the sale of property to which the lien attaches. The amount of any Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the right of the Holder of such Claim, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.

A failure by the Reorganized Debtor to make a payment to each Holder of an Allowed Tax Claim pursuant to the terms of the Plan shall be an event of default.  If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days notice of default by the Holder of an Allowed Tax Claim to the Debtor and Debtor's counsel, then the Holder of an Allowed Tax Claim may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

There are no Tax Claims.

4.2     Class 2.   Class 2 Consists of Holders of Allowed Unsecured Claims Less than $1,000.00.  Debtor believes that the Class 2 Claims were paid in the ordinary course of business, If the Holders of Allowed Unsecured Claims will be paid in full on the Effective Date or within fourteen (14) days after entry of a final non-appealable order resolving any objection to claim. Members of this Class Russell Landscape, LLC with a claim in the amount of $760.00.

The Holder of the Allowed Class 2 Claim is Impaired and is entitled to vote to accept or reject the Plan.

4.3     Class 3.   Class 3 consists of the Claims of Unsecured Trade Claim.  LIT Industrial Texas, LP is a  member of the Class 3 with a proof of claim filed in the amount of $26,216.55. Sugarloaf Centre Commercial OA is a member of Class 3 with a proof of claim filed in the amount of $4,631.35.

Based upon review of record, DCT believes that the Claims of LIT Industrial Texas LP and Sugarloaf Centre Commercial OA have been satisfied and no distribution will be made under the Plan.

The Holder of the Allowed Class 3 Claim is Impaired and is entitled to vote to accept or reject the Plan.

4.4    Class 4.  Class 4 consists of Interest Claims.  Interest Holders shall maintain their interests.

4.5    Class 5.  Class 5 consists of Disputed Litigation Claims.  The Holder of the Class 5 Claim is Peachtree Holdings, LLC.  Debtor believes that the Holder of the Class 5 Claim was satisfied as part of the settlement agreement by and between Debtors and Wells Fargo and nothing will be paid under the Plan.

The claim of Wells Fargo that was assigned to Bay Point has been satisfied and nothing is due and owing.

EXHIBIT H

Sugarloaf Claim Analysis

4.1    Tax Claims.    <u>Class 1: Priority Tax Claims</u>.  Class 1 consists of Priority Tax Claims.  Each Holder of an Allowed Tax Claim due and payable on or prior to the Effective Date will receive sixty (60) deferred equal monthly Cash payments over a five (5) year period plus simple interest on any outstanding balance from the Effective Date calculated at a fixed rate of 3% per annum from the Effective Date or such lesser rate agreed to by a particular taxing authority or paid upon the sale of property to which the lien attaches. The amount of any Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the right of the Holder of such Claim, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.

A failure by the Reorganized Debtor to make a payment to each Holder of an Allowed Tax Claim pursuant to the terms of the Plan shall be an event of default.  If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days notice of default by the Holder of an Allowed Tax Claim to the Debtor and Debtor's counsel, then the Holder of an Allowed Tax Claim may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

There are no Tax Claims.

4.2    <u>Class 2</u>.  Class 2 Consists of Holders of Allowed Unsecured Claims Less than $1,000.00.  Debtor believes that BellSouth and Russell Landscape, LLC claims were satisfied in the ordinary course of business.  If the Claims have not been paid, Holders of Allowed Unsecured Claims will be paid in full on the Effective Date or within fourteen (14) days after entry of a final non-appealable order resolving any objection to claim.  Members of this Class Russell Landscape, LLC with a claim in the amount of $760.00 and BellSouth with a claim in the amount of $362.26.

The Holder of the Allowed Class 2 Claim is Impaired and is entitled to vote to accept or reject the Plan.

4.3    <u>Class 3</u>.  Class 3 consists of the Claims of Unsecured Trade Claim.  Debtor believes that the Class 3 Claim Holders were paid in the ordinary course of business.  If the Class 3 Claims have not been paid, the Holders of Allowed Unsecured Trade Claims will receive a one

time lump sum distribution equivalent to 10% of their allowed claim on the Effective Date or within fourteen (14) days after entry of a final non-appealable order resolving any pending objection to claim.

Sugarloaf Centre Commercial OA is a member of Class 3 with a proof of claim filed in the amount of $4,631.35.

The Holder of the Allowed Class 3 Claim is Impaired and is entitled to vote to accept or reject the Plan.

4.4     Class 4.  Class 4 consists of Interest Claims.  Interest Holders shall maintain their membership interests.

4.5     Class 5.  Class 5 consists of Disputed Litigation Claims.  The Holder of the Class 5 Claim is Peachtree Holdings, LLC.  Debtor believes that the Holder of the Class 5 Claim was satisfied as part of the settlement agreement by and between Debtors and Wells Fargo and nothing will be paid under the Plan.

The Holder of the Allowed Class 5 Claim is not Impaired and is not entitled to vote to accept or reject the Plan.

The claim of Wells Fargo that was assigned to Bay Point has been satisfied and nothing is due and owing.

Debtor will continue remitting payments to SIMBA in accordance with the terms and conditions of the post-petition financing documents.

EXHIBIT I

Nilhan Treatment of Claims

4.1     Tax Claims.     Class 1: Priority Tax Claims.   Class 1 consists of Priority Tax Claims.  Each Holder of an Allowed Tax Claim due and payable on or prior to the Effective Date will receive sixty (60) deferred equal monthly Cash payments over a five (5) year period plus simple interest on any outstanding balance from the Effective Date calculated at a fixed rate of 3% per annum from the Effective Date or such lesser rate agreed to by a particular taxing authority or paid upon the sale of property to which the lien attaches. The amount of any Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the right of the Holder of such Claim, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.

A failure by the Reorganized Debtor to make a payment to each Holder of an Allowed Tax Claim pursuant to the terms of the Plan shall be an event of default.  If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days notice of default by the Holder of an Allowed Tax Claim to the Debtor and Debtor's counsel, then the Holder of an Allowed Tax Claim may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

There are no Tax Claims.

4.2     Class 2.   Class 2 Consists of Holders of Allowed Unsecured Claims Less than $1,000.00.  Debtor believes that the Class 2 Claims have been paid in the ordinary course of business.  If the Class 2 Claims have not been paid, Holders of Allowed Unsecured Claims will be paid in full on the Effective Date or within fourteen (14) days after entry of a final non-appealable order resolving any objection to claim.  Members of this Class Russell Landscape, LLC with a claim in the amount of $705.00.

The Holder of the Allowed Class 2 Claim is Impaired and is entitled to vote to accept or reject the Plan.

4.3     Class 3.   Class 3 consists of Interest Claims.  Interest Holders shall maintain their membership interests.

      4.4     <u>Class 4.</u>  Class 4 consists of Disputed Litigation Claims.  The Holder of the Class 4 Claim is Peachtree Holdings, LLC.  Debtor believes that the Holder of the Class 5 Claim was satisfied as part of the settlement agreement by and between Debtors and Wells Fargo and nothing will be paid under the Plan.

      The Holder of the Allowed Class 4 Claim is not Impaired and is not entitled to vote to accept or reject the Plan.

      The claim of Wells Fargo that was assigned to Bay Point has been satisfied and nothing is due and owing.

EXHIBIT J

Treatment of NRCT Claims

4.1     Tax Claims.    Class 1: Priority Tax Claims.    Class 1 consists of Priority Tax Claims.  Each Holder of an Allowed Tax Claim due and payable on or prior to the Effective Date will receive sixty (60) deferred equal monthly Cash payments over a five (5) year period plus simple interest on any outstanding balance from the Effective Date calculated at a fixed rate of 3% per annum from the Effective Date or such lesser rate agreed to by a particular taxing authority or paid upon the sale of property to which the lien attaches. The amount of any Tax Claim that is not an Allowed Claim or that is not otherwise due and payable on or prior to the Effective Date, and the right of the Holder of such Claim, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code.

A failure by the Reorganized Debtor to make a payment to each Holder of an Allowed Tax Claim pursuant to the terms of the Plan shall be an event of default.  If the Reorganized Debtor fails to cure an event of default as to tax payments within ten (10) days notice of default by the Holder of an Allowed Tax Claim to the Debtor and Debtor's counsel, then the Holder of an Allowed Tax Claim may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have under applicable state law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

There are no Tax Claims.

4.2     Class 2.    Class 2 Consists of Holders of Allowed Unsecured Claims Less than $1,000.00.  Debtor believes that the Class 2 Claims have been paid in the ordinary course of business.  If the Claims have not been paid, the Holders of Allowed Unsecured Claims will be paid in full on the Effective Date or within fourteen (14) days after entry of a final non-appealable order resolving any objection to claim.  Members of this Class Russell Landscape, LLC with a claim in the amount of $760.00 and BellSouth with a claim in the amount of $362.26.

The Holder of the Allowed Class 2 Claim is Impaired and is entitled to vote to accept or reject the Plan.

4.3     Class 3    Class 3 consists of Interest Claims.  Interest Holders shall maintain their membership interests.

4.4     Class 4.    Class 4 consists of Disputed Litigation Claims.  The Holder of the Class 4 Claim is Peachtree Holdings, LLC.  Debtor believes that the Holder of the Class 4 Claim was

satisfied as part of the settlement agreement by and between Debtors and Wells Fargo and nothing will be paid under the Plan.

The Holder of the Allowed Class 4 Claim is not Impaired and is not entitled to vote to accept or reject the Plan.

The claim of Wells Fargo that was assigned to Bay Point has been satisfied and nothing is due and owing.