IN THE UNITED STATES BNAKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| BAY CIRCLE PROPERTIES, LLC, et al.,[1] | : | Case No. 15-58440-wlh |
| | : | (Jointly Administered) |
| Debtors. | : | |
| _____ | : | |

MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND
CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

COMES NOW NRCT, LLC ("NRCT"), by and through undersigned counsel, and hereby files this "Motion for Order Authorizing Sale of Property Free and Clear of Liens, Claims and Encumbrances" ("Motion"). NRCT moves this Court for entry of an order pursuant to Sections 105(a) and 363 of Title 11 , of the Untied States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the sale of approximately 18.9 acres of real property located in Gwinnett County, Georgia ("Property") to Century Communities of Georgia, LLC ("Purchaser") free and clear of all liens, claims and encumbrances for a purchase price of $2,490,000.00, subject to adjustment in the event eighty-three (83) lots are not approved, pursuant to the Agreement for Purchase and Sale ("Contract") attached hereto and incorporated herein by reference as Exhibit "A."

In support of the Motion, NRCT shows the Court as follows:

1.      This Court has jurisdiction over this Motion pursuant to 28 USC §§ 157 and 1334. This matter is a core proceeding pursuant to 28 USC §157(b). Venue is proper before this Court pursuant to 28 USC §§ 1408 and 1409.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are Bay Circle Properties, LLC (1578), DCT Systems Group, LLC (6978), Sugarloaf Center, LLC (2467), Nilhan Developers, LLC (6335), and NRCT, LLC (1649).

2.     On May 4, 2015 (the "Petition Date"), NRCT filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Clerk of this Court.  NRCT continues its business as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.     The Property is raw land.

4.     NRCT does not believe that the Property is subject to any liens, claims or encumbrances.

5.     NRCT seeks authority to sell the Property to Purchaser pursuant to the Contract for the price of $2,490,000.00, subject to adjustment of $30,000.00 price reduction for each lot less than eighty-three (83).

6.     NRCT seeks authority to pay, among other things transfer taxes and costs as set forth in the Contract.

7.     The Debtor proposes to enter into a Contract with provides for the sale of the Property to the Purchaser.

8.     The pertinent terms of the Contract and the resulting transaction are:

Property:      18.9 acres of land in Gwinnett County, Georgia

Purchaser:    Century Communities of Georgia, LLC

Price:           $2,490,000.00, subject to any creditors, prorations or adjustments provided in the Contayct.  In the event the Land Disturbance Permit yields less than 83 lots, the purchase price shall be reduced by an amount equal to $30,000.00 times the difference equal to 83 lots minus the total number of lots allowed under the Land Disturbance Permit

Contingent:   Contract is contingent upon various items including, without limitation, rezoning

9.     Pursuant to Bankruptcy Rule 2002(a)(2) and (c), NRCT is required to notify, inter alia, creditors of a proposed sale of the assets outside the ordinary course of business.  This Motion

and an accompany Notice of Hearing will be served upon all creditors on or before December 7, 2018.

10.     Courts afford a debtor substantial deference in formulating procedures for selling assets. See, e.g., Official Committee of Subordinated Bondholders v Integrated Resources Inc. *In re Integrated Resources, Inc ).* 147 B.R. 650,656-57 (S.D.N.Y. 1992); *In re 995 Fifth Ave. Assoc." L.P.,* 96 8.R.24,28 (Bankr S.D.N.Y. 1989).

11.     The paramount goal for any proposed sale of the property of a bankruptcy estate is to maximize the proceeds received by the estate. *See, e.g., Four B. Com. v. Food Barn Stores, Inc. (In re Food Barn Stores- Inc.)* 107 B.R. 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the Debtors' duty with respect to such sales is to obtain the highest price or overall greatest benefit possible for the estate.") (*quoting In re Atlanta P E Prods., Inc.* 99 B.R. 124,131 (Bankr. N.D. Ga. 1988)).

12.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." A debtor in possession is given these rights by Section 1107(a) of the Bankruptcy Code. Moreover, Section 105(a) of the Bankruptcy Code provides that the bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code]."

13.     The proposed use, sale, or lease of property of the estate may be approved under Bankruptcy Code Section 363(b) if it is supported by sound business justification. *See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2d Cir.

1983); *accord Stephens Indus. V. McClung,*789F.2d386,389-90 (6th Cir. 1986). Moreover, pursuant to Section 105 of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree which is in the interests of preserving or protecting the value of a debtor's assets, see, e.g., *In re Chinichian*, 784 F. 2d 1440, 1443 (9th Cir. 1986), such as structuring an orderly sale process.

14.    As set forth in this Motion, the Debtor believes that good cause exists to authorize the sale of the Property on the terms prayed for in this Motion.

15.    Pursuant to the Bankruptcy Rule 6004 and Section 363(f), the sale of the Property to the Buyer will be free and clear of all liens, claims, interests and encumbrances. The purchase price of no less than $2,490,000.00 represents the fair market value of the Property. to make the proposed disbursements set forth in this Motion.

16.    The Debtor does not require the Property in order to successfully reorganize in bankruptcy.

NOTICE

17. Notice of this Motion will be given in accordance with Bankr. R.2002.

WHEREFORE, the Debtor requests that the Court enter an Order approving the sale of the Property to Century Communities of Georgia, LLC, or its assignee pursuant to a contract substantially in the form attached hereto as Exhibit "A' , free and clear of liens, claims and encumbrances, granting the Debtor authority to execute and deliver any and all closing documents, deeds, affidavits, closing statements, resolutions as may be necessary to consummate the sale of the Property and to the Purchaser of any assignee

Submitted this the 4th day of December, 2018.

M. DENISE DOTSON, LLC

\_/s/_____

`

M. Denise Dotson
Georgia Bar No. 227230
PO Box 435
Avondale Estates, GA 30002
(404) 210-0166
denise@mddotsonlaw.com

EXHIBIT "A" FOLLOWS

**AGREEMENT FOR PURCHASE AND SALE**

**(Townes at Sugar Hill – Land)**

| SUMMARY OF DEAL TERMS | |
|---|---|
| Neighborhood | Townes at Sugar Hill, Gwinnett County, Georgia |
| Seller | NRCT, LLC<br>3985 Steve Reynolds Blvd.<br>Building L101<br>Norcross, GA 30093<br>Attention: Chittranjan Thakkar<br>Phone: (678) 488-6987<br>Email: cthakkar@dctsystems.net |
| Seller counsel | Taylor English Duma LLP<br>1600 Parkwood Circle, Suite 200<br>Atlanta, GA 30339<br>Attention: John Taylor<br>Phone: (678) 426-4615<br>Email: jtaylor@taylorenglish.com |
| Buyer | Century Communities of Georgia, LLC<br>3091 Governors Lake Drive<br>Suite 200<br>Norcross, Georgia 30071<br>Attention: Keith Hurand, Angie Yeremian, Christina Schenck, Geoffrey Reid & Scott Butler<br>Phone: (678) 533-1160<br>Email: keith.hurand@centurycommunities.com<br>ayeremian@centurycommunities.com<br>cschenck@centurycommunities.com<br>greid@centurycommunities.com<br>sbutler@centurycommunities.com |
| Escrow Agent | McMichael & Gray, P.C.<br>2055 North Brown Road<br>Suite 250<br>Lawrenceville, Georgia 30043<br>Attention: Randall C. McMichael<br>Phone: (678) 373-0549<br>Fax: (678) 373-0522<br>Email: randy@mcmichaelandgray.com |
| Property | Approximately 18.9 acres of land in Gwinnett County, Georgia, as more particularly described and depicted on Exhibit "A" |
| Purchase Price | $2,490,000.00, except as may be provided otherwise pursuant to Section 2 of the Agreement |

| | |
|---|---|
| **Contingency Period** | Seventy-Five (75) days from and after the date of the Bankruptcy Court Order (defined in Section 7(d)) |
| **Closing** | To occur on or before the date that is fifteen (15) days after Buyer's receipt of the Approvals in satisfaction of the Contingency set forth in Section 7(c) but in no case later than November 1, 2019. |
| **Deposit** | $15,000.00 on or before the date that is five (5) business days from and after the Bankruptcy Court Order; $70,000.00 on or before the date that is five (5) business days from and after the earlier of (a) Buyer's delivery of the Notice of Continuation or (b) expiration of the Contingency Period. |
| **Effective Date** | November 15, 2018 |

This cover page and the summary of terms described herein are set forth above for illustrative purposes only. To the extent any term described above conflicts with the terms of the Agreement for Purchase and Sale attached to this cover page, the terms of the Agreement for Purchase and Sale shall control.

[Remainder of Page Intentionally Left Blank]

**AGREEMENT FOR PURCHASE AND SALE**
**(Townes at Sugar Hill – Land)**

      **THIS AGREEMENT FOR PURCHASE AND SALE** (this "<u>Agreement</u>") is made and entered into as of the 15 day of November, 2018 (the "<u>Effective Date</u>"), by and between **NRCT, LLC**, a Georgia limited liability company ("<u>Seller</u>"), and **CENTURY COMMUNITIES OF GEORGIA, LLC**, a Colorado limited liability company ("<u>Buyer</u>").

<u>W I T N E S S E T H   T H A T</u>:

      **WHEREAS**, Buyer wishes to purchase from Seller, and Seller wishes to sell to Buyer, the Property (as defined below), upon the terms and conditions hereinafter set forth.

      **NOW, THEREFORE**, in consideration of Ten and No/100 Dollars ($10.00), the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, do hereby agree as follows:

<u>**TERMS OF AGREEMENT**</u>

1.    **Property**.  Subject to the terms of this Agreement, Seller hereby agrees to sell, and Buyer hereby agrees to purchase approximately 18.9 acres of real property lying and being in Gwinnett County, Georgia, having Tax Parcel Number(s) 7253 035, 7253 036 and 7253 037, as more particularly described on **Exhibit "A"** attached hereto, together with Seller's right, title and interest in and to all rights, privileges and easements, that are appurtenant to, and benefit, the real property, and all structures, fixtures, systems, improvements, topsoil, trees, timber, landscaping, other crops and plants and minerals located thereunder or thereon and any entitlements, development rights and, if and to the extent assignable, all Reports (as defined below) (collectively, the "<u>Property</u>").  Buyer and Seller agree that the description of the Property attached hereto as **Exhibit "A"** shall be sufficient to make this a legally valid and binding contract.  Buyer may obtain a Survey (defined in Section 6(a) below) of the Property and, at Closing (as defined in Section 8(a) below), at Buyer's request, Seller will execute and deliver to Buyer a quit-claim deed pursuant to the legal description derived from the Survey.

2.    **Purchase Price**. The purchase price (the "<u>Purchase Price</u>") for the Property to be paid by Buyer to the Seller at Closing (as defined below) shall be TWO MILLION FOUR HUNDRED NINETY THOUSAND and No/100 Dollars ($2,490,000.00), subject to any credits, prorations or adjustments as provided in this Agreement.  Notwithstanding anything stated to the contrary herein, in the event the Land Disturbance Permit (as defined below) yields less than eighty-three (83) lots, the Purchase Price paid by Buyer to Seller shall be reduced by an amount equal to THIRTY THOUSAND and No/100 Dollars ($30,000.00) <u>times</u> the difference equal to eighty three (83) lots <u>minus</u> the total number of lots allowed under the Land Disturbance Permit. Should Buyer's Land Disturbance Permit yield less than 75 lots, Seller shall have the right to adjust the Purchase Price further as described above or terminate this Agreement whereupon Escrow Agent (as defined below) shall immediately return the Deposit (as defined below) to Buyer, and the parties shall have no further rights or obligations hereunder, except as to any provisions that

specifically survive termination hereunder. [For sake of clarity and by way of example, if the Land Disturbance Permit yields 79 lots, the Purchase Price would be reduced by ONE HUNDRED TWENTY THOUSAND and No/100 Dollars ($120,000.00)]. However, in no event shall the Purchase Price be less than TWO MILLION TWO HUNDRED FIFTY THOUSAND AND No/100 Dollars ($2,250,000.00). The Purchase Price shall be deposited with Escrow Agent (as defined below) in cash. The Purchase Price shall be deposited with Escrow Agent (as defined below) in cash or other immediately available funds on or before the Closing.

3.      **Escrow Agent; Deposit.** On or before the date that is five (5) business days from and after the date of the Bankruptcy Court Order (as defined below), Buyer shall deposit in escrow with McMichael & Gray, P.C., 2055 North Brown Road, Suite 250, Lawrenceville, Georgia 30043, Attn: Randall C. McMichael (the "Escrow Agent") the amount of FIFTEEN THOUSAND and No/100 Dollars ($15,000.00) (the "Initial Deposit"). Provided Buyer delivers to Seller the Notice of Continuation (as defined below) as contemplated in this Agreement, Buyer shall deposit in escrow with Escrow Agent an additional sum of SEVENTY THOUSAND and No/100 DOLLARS ($70,000.00) (the "Additional Deposit") within five (5) business days following the expiration of the Contingency Period. The Initial Deposit, Additional Deposit (once deposited), and any other funds deposited with Escrow Agent pursuant to this Agreement and any interest thereon, shall be collectively referred to as, the "Deposit". The Deposit shall be held in escrow to be applied for Buyer's benefit against the Purchase Price at the Closing (as defined below) or as otherwise provided for by this Agreement. The Escrow Agent shall release the Deposit in accordance with this Agreement. Upon Buyer's delivering the Notice of Continuation, the Initial Deposit, and the Additional Deposit once deposited, will be nonrefundable except as expressly set forth in this Agreement.

4.      **Inspection; Contingency Period.**

        (a)     Buyer shall have a period of SEVENTY-FIVE (75) days from and after the date of the Bankruptcy Court Order (the "Contingency Period") to enter upon the Property for the purpose of inspecting the same, conducting boundary, wetland and topographical surveys, feasibility studies, soil tests, borings, test pits, asbestos and percolation tests and other tests needed to examine surface, subsurface and environmental and topographic conditions of the Property (including any and all improvements located thereon), to determine the feasibility of Buyer's intended development of the Property. Such inspection may require the clearing of trees and other vegetation to provide access to the borings and test pits, which shall require Seller's prior authorization (which authorization Seller will not unreasonably withhold, condition or delay) and which shall be subject to applicable laws, ordinances, codes, and regulations (collectively, "Laws"). If Buyer determines that the Property is satisfactory for its intended development, Buyer shall deliver written notice to Seller of its intent to continue the Agreement on or, prior to the expiration of the Contingency Period (the "Notice of Continuation"). If Buyer does not deliver the Notice of Continuation on or before the expiration of the Contingency Period as provided herein, then this Agreement shall automatically terminate, whereby Escrow Agent shall immediately return the Deposit to Buyer, and the parties shall have no further rights or obligations hereunder, except as to any provisions that specifically survive termination hereunder.

4

(b)     After the Buyer conducts its investigation of the Property as provided in this Section 4, Buyer shall back fill boring and test pit holes and stabilize the disturbed areas by seeding and strawing. Tree debris and stumps will be left and stacked in place. In no event shall Buyer be responsible for the replanting of any trees, but Buyer will exert commercially reasonable efforts to avoid damage to remaining trees. All work performed shall be performed without cost or expense to Seller and in accordance with Laws. Buyer agrees to defend, indemnify and hold harmless Seller from and against any liability, claims, costs and loss as a result of said entry. Notwithstanding the foregoing, such indemnification and hold harmless obligation shall not extend to the discovery or disturbance of pre-existing hazardous substances, if any, except for any intentional or negligent exacerbation thereof caused by Buyer. This Section 4(b) will survive the Closing or earlier termination of this Agreement.

(c)     Any amendments to this Agreement that are entered into after the Notice of Continuation has been delivered as described herein, must be ratified by one of the following individuals before the amendment is effective and enforceable against Buyer: Dale Francescon, Robert Francescon, Dave Messenger, W. Allen Bennett or Brian Fogarty.

5.     **Reports.** Seller shall provide to Buyer within three (3) business days of the Effective Date of this Agreement copies of any tests, plats or surveys, maps, site plans, construction drawings, permits, title insurance policies and related title exception documents concerning the Property, governmental, quasi-governmental or utility approvals or permits, development guidelines and studies, and all other writings or information pertaining to the Property or the development thereof which are in Seller's possession or control (collectively, the "Reports"). If Seller does not deliver the Reports to Buyer by the third (3rd) business day following the Effective Date, the Contingency Period shall be extended automatically by one (1) day for each calendar day that Seller is late in delivering the Reports to Buyer. Copies of any Reports not in Seller's possession or control at the time required to be delivered to Buyer hereunder, but which are obtained or come into Seller's possession or control prior to the Closing, shall be delivered to Buyer within three (3) days of Seller's receipt of the same, but in no event later than five (5) days prior to the Closing. If Seller does not possess an item referenced above, Seller shall cooperate, at no expense or liability to Seller, with Buyer to obtain such information. In the event this Agreement is terminated by Buyer during the Contingency Period, Buyer shall return the Reports to Seller. The Reports are provided by Seller to Buyer without representation or warranty of any kind as to the truthfulness, accuracy and/or completeness. Buyer's election to rely on any information contained in the Reports is done at Buyer's sole risk. For purposes of this Agreement, the Reports shall not include any confidential and/or proprietary information of Seller or any of its affiliated entities related to the Property including, but not limited to, any financial modeling and market analysis, whether prepared internally or through third parties engaged by Seller or any of its affiliated entities. The obligations of the parties under this Section 5 shall survive the Closing and any early termination of this Agreement and shall not be merged with the Deed.

6.     **Title and Survey Review.**

(a)     Buyer shall use good faith and reasonable efforts to obtain a title commitment and legible copies of all of Schedule B items referenced therein and all other recorded items pertaining to the Property (collectively, the "Title Commitment") from a title company selected

5

by Buyer (the "Title Company"). After the Effective Date of this Agreement, Buyer, at Buyer's expense, may also obtain a survey of the Property (the "Survey").

(b)    Buyer may object to any matters disclosed by the Title Commitment or the Survey (the "Objections") by delivering written notice of the Objections (the "Objection Notice") to Seller prior to the expiration of the Contingency Period (the "Title Objection Period"). If any amendment to the Title Commitment is subsequently issued showing any additional exception to title or if the Survey is amended and discloses any additional exception or other matter not disclosed by the original Survey, Buyer shall be entitled to object to any such additional matter by delivering an Objection Notice to Seller as contemplated herein. If Buyer fails to deliver an Objection Notice objecting to any matter set forth in the Title Commitment or Survey or any subsequent amendment to the Title Commitment or Survey prior to the expiration of the Title Objection Period, Buyer shall be deemed to have approved such matters reflected therein. Notwithstanding the foregoing, if Buyer fails to deliver an Objection Notice objecting to any Required Removal Exceptions (as defined below), Buyer shall not be deemed to have approved or waived such matters.

(c)    If Buyer timely delivers any Objection Notice pursuant to Section 6(b) of this Agreement, Seller shall then have the right but not obligation until the Closing Date within which to reasonably cure or satisfy the Objections; provided, however, that Seller shall, on or before the Closing Date and at Seller's sole cost and expense, satisfy any mortgages, deeds of trust, deeds to secure debt, liens, or other monetary encumbrances (including, without limitation, mechanics' liens caused by Seller, judgment liens against Seller, delinquent taxes, water or sewer charges, unpaid assessments or any other monetary liens caused or created by Seller), or dismiss any lawsuits affecting the Property (and all of Seller's obligations under or relating to each of the foregoing shall be paid and performed as and when due prior to the Closing) (collectively, the "Required Removal Exceptions"). To the extent that any Objections contained within the Objection Notice do not constitute Required Removal Exceptions, Seller shall deliver a written notice (the "Response") to Buyer and to Escrow Agent within ten (10) days after receiving the Objection Notice, which Response shall state whether Seller will cure the Objections (and the failure to provide such notice within ten (10) days after the date of receipt of the Objection Notice shall be deemed to constitute an election of Seller to effect no cure). Unless Seller elects to remove the Objections, then, within thirty (30) days after the deadline for the Response, Buyer may elect in writing to either (i) terminate this Agreement, in which event the Deposit shall be returned to Buyer, and the parties shall have no further rights or obligations hereunder, except for those which expressly survive any such termination, or (ii) waive such title objections and proceed with the transaction pursuant to the remaining terms and conditions of this Agreement. Failure of Buyer to respond in writing within such period shall be deemed an election by Buyer to waive such title objections and proceed to Closing. In the event that Buyer waives an objection, such exception shall be part of the Permitted Exceptions (as defined below). From the Effective Date of this Agreement, Seller shall not cause or permit by act or omission, any new matter affecting title to the Property to appear of record, or enter into any new lease, agreement of sale, option or any other agreement or contract affecting the Property.

(d)    As used in this Agreement, the term "Permitted Exceptions" shall collectively mean: (i) the exceptions to title reflected in the Title Commitment which are approved (or deemed approved) by Buyer pursuant to this Section 6; (ii) any matters created by or arising

6

from the act, omission or acquiescence of Buyer; and (iii) any other matters approved by Buyer under or in connection with this Agreement.

7.      **Conditions and Contingencies to Closing.**

(a)      Except as otherwise provided in this Agreement, Buyer's obligation to close this transaction is subject to the satisfaction of the following conditions on or as of the date of Closing, unless an earlier date is specified in this Agreement: (i) Seller's representations and warranties set forth in this Agreement are materially true, complete and correct; (ii) Seller has materially performed all of its obligations to be performed by Seller hereunder; (iii) Title Company shall be unconditionally committed as of Closing to issue to Buyer an owner's policy of title insurance, with coverage in the amount of the Purchase Price, insuring good and marketable fee simple title to the Property being conveyed at Closing free and clear of all matters except the Permitted Exceptions (the "Title Policy");  (iv) the Final Rezoning for the Property has been obtained in accordance with the requirements of Section 7(b) below; (v) all Approvals have been obtained in accordance with the requirements of Section 7(c) below; and (vi) the Bankruptcy Court (as defined below) has approved this Agreement in accordance with the requirements of Section 7(d) below.  Subject to any applicable notice and cure rights of Seller provided for herein, if any of the foregoing conditions are not fulfilled on or before the date by which such condition is to have been satisfied, Buyer may, in addition to any other right or remedy available to Buyer under this Agreement, waive any such unsatisfied condition(s) and proceed with Closing, or terminate this Agreement, whereupon Escrow Agent shall return the Deposit to Buyer and the parties shall have no further rights or obligations pertaining to the purchase or sale of the Property, except for those which expressly survive any such termination.

(b)      Buyer's obligation to purchase the Property is contingent upon Buyer's annexation of a portion of the Property currently in the City of Suwanee being Tax Parcel No. 7253 036, into the City of Sugar Hill, and rezoning of the Property to the RM classification that allows development of townhouses, with any and all conditions thereto being satisfactory to Buyer, as determined in Buyer's sole and absolute discretion (the "Rezoning").  Buyer shall apply to rezone the Property (the "Rezoning Application") no later than the City of Sugar Hill's first submittal deadline after the expiration of the Contingency Period. Seller hereby authorizes Buyer to file, at Buyer's sole cost and expense, all necessary applications, petitions and documents in connection with obtaining the Rezoning.  Seller shall use good faith efforts to cooperate with Buyer's efforts to obtain the Rezoning, including executing any agreements, applications, authorizations, or submissions requiring the consent or joinder of the record owner of the Property, or any other documents as may Buyer may reasonably request in connection with Buyer's efforts to obtain the Rezoning.  If, prior to the Closing Date, Buyer is unable to obtain the Final Rezoning (as defined below), or if at any earlier time following the filing of the Rezoning Application, Buyer determines, in its reasonable discretion, that the Final Rezoning is not feasible or possible to obtain within the time frames authorized under this Agreement, Buyer may, by written notice to Seller, terminate this Agreement, whereupon at Seller's request, Buyer shall promptly, at Buyer's sole expense, withdraw the Rezoning Application.

The Rezoning shall become "Final Rezoning" upon a final decision of the applicable governmental authorities of City of Sugar Hill in favor of the Rezoning, subject only to such conditions as are acceptable to Buyer in Buyer's sole and absolute discretion, and all appeal periods

7

have lapsed with no appeal having been made, or in the event of an appeal, said appeal has been rejected or terminated conclusively in favor of the Rezoning of the Property. In the event that this Agreement is terminated pursuant to this section, Escrow Agent shall promptly return the Deposit to Buyer and thereafter the parties shall have no further rights, duties or obligations except for those which by their express terms are to survive termination. Seller acknowledges and agrees that obtaining Final Rezoning is a condition precedent to Buyer's obligation to consummate Closing and such condition is for Buyer's sole benefit. Within Buyer's discretion, Buyer may waive such condition in writing and proceed to Closing in the event Final Rezoning is not obtained by the Closing Date. If Buyer does not obtain the Final Rezoning by November 1, 2019, Seller may terminate this Agreement any time thereafter prior to Buyer's obtaining the Final Rezoning.

(c)     Buyer's obligations hereunder are contingent upon and subject to Buyer, on or before the Closing, obtaining a land disturbance permit (the "Land Disturbance Permit") and any easements necessary for Buyer's intended development of the Property as a residential subdivision to allow a minimum of seventy-five (75) residential lots and otherwise permit Buyer to conduct construction-related, land-disturbing activities upon the Property, with any and all conditions thereto being satisfactory to Buyer, as determined in Buyer's sole and absolute discretion (collectively, with the Land Disturbance Permit, the "Approvals"). Seller hereby authorizes Buyer to file at Buyer's sole cost and expense necessary applications, petitions and documents in connection with obtaining the Approvals, and Buyer agrees to submit its application for the Land Disturbance Permit within forty-five (45) days from Final Rezoning and to diligently pursue the Approvals. Seller shall at all times after the Effective Date provide reasonable support (at no cost to Seller) of Buyer's efforts to obtain the Approvals, cooperate with Buyer in obtaining the Approvals, and execute and deliver to Buyer such authorizations, powers of attorneys and other documents and letters as Buyer may reasonably request in connection with Buyer's efforts to obtain the Approvals. If Buyer is unable to obtain the Approvals prior to the Closing, Buyer may, by written notice to Seller, terminate this Agreement, whereupon the Deposit shall be returned to Buyer and thereafter the parties shall have no further rights or obligations except for those which expressly survive termination. If Buyer does not obtain the Approvals by November 1, 2019, Seller may terminate this Agreement any time thereafter prior to Buyer's obtaining the Approvals.

(d)     Buyer acknowledges that Seller is in bankruptcy in the Northern District of Georgia, United States Bankruptcy Court (the "Bankruptcy Court"), under case NRCT, LLC – 1-15-bk-58443. Buyer's and Seller's obligations hereunder are contingent on Seller obtaining approval from the Bankruptcy Court to consummate the transaction contemplated by the terms of this Agreement, which approval shall be delivered in a written order entered in the Bankruptcy Court, with any and all conditions thereto being satisfactory to Buyer, as determined in Buyer's sole and absolute discretion (the "Bankruptcy Court Order"). Seller shall submit this Agreement for approval to the Bankruptcy Court on or before five (5) days from and after the Effective Date. If Seller has not obtained the Bankruptcy Court Order on or before sixty (60) days from and after the Effective Date, Buyer may, by written notice to Seller, terminate this Agreement, whereupon the Deposit shall be returned to Buyer and thereafter the parties shall have no further rights or obligations except for those which expressly survive termination.

8.    **Closing; Costs and Expenses.**

8

(a)     Seller shall sell to Buyer and Buyer shall purchase from Seller the Property in a SINGLE closing (the "Closing") to occur on or before the date that is fifteen (15) days after Buyer's receipt of the Approvals in satisfaction of the Contingency set forth in Section 7(c), but not later than November 1, 2019 (the "Closing Date").

(b)     The Closing shall occur at the office of Escrow Agent or at such other place as Seller and Buyer may otherwise agree.  The parties acknowledge and agree that Seller and Buyer may elect to conduct the Closing by means of Federal Express or another national overnight courier service with recognized reliability, rather than conduct the Closing in person. The Closing shall be deemed to have occurred when the Purchase Price has been disbursed to Seller and the Deed (as defined below) has been released to Escrow Agent by Seller for recording. Seller shall convey the Property to Buyer by limited warranty deed (subject only to the Permitted Exceptions) incorporating the legal description derived from public records (the "Deed") and, upon request by Buyer, a quitclaim deed conveying the Property incorporation the legal description derived from the Survey.  Seller shall deliver to Buyer at Closing: (i) the Deed, (ii) an affidavit as required by Section 1445(b)(2) of the Internal Revenue Code, setting forth Seller's taxpayer identification number, Seller's address and stating that it is not a foreign person for the purposes of that section, (iii) an IRS Form 1099-S, (iv) evidence of authority to consummate the sale, all in form and substance acceptable to the Escrow Agent or Title Company (as appropriate), (v) a transfer tax form if required in the jurisdiction in which the Property is located, (vi) an affidavit in the form attached hereto as **Exhibit "B"**; (vii) an assignment of all of Seller's right, title and interest in any licenses, permits, bonds, NPDES applications, government and third party approvals and authorizations, plats, engineering plans, environmental and geotechnical studies or other intangibles relating to the Property (including, the Reports), if and to the extent assignable, (viii) an executed closing statement reflecting all financial aspects of the transaction; (ix) any other documents required by Escrow Agent or Title Company; (x) upon Buyer's request, a quit-claim deed; and (xi) a certificate that Seller is not a nonresident of Georgia.  Buyer shall deliver at Closing the Purchase Price, an executed closing statement as provided herein, and any other documents required by Escrow Agent or Title Company (as appropriate).

(c)     Buyer shall pay the costs and expenses associated with the following: (i) all costs of Buyer's due diligence, including fees due its consultants and attorneys; (ii) all premiums and charges for the Title Commitment and the Title Policy (including endorsements); (iii) the cost of the Survey and (iv) one half of all escrow or closing charges.  Seller shall pay the following costs and expenses associated with the transaction: (i) all fees due to its attorneys; (ii) all costs incurred in connection with causing the Title Company to remove any title matters to the extent Seller specifically agrees in writing or as otherwise required herein, at or prior to Closing, to cause removal (or dismissal, if appropriate) of such (including, all recording and filing charges in connection with the instruments necessary to satisfy the Required Removal Exceptions); (iii) all recording and filing charges in connection with the instruments by which Seller conveys the Property; (iv) one half of all escrow or closing charges, not to exceed $500.00; and (v) all transfer taxes, sales taxes, documentary stamp taxes and similar charges, if any, applicable to the transfer of the Property to Buyer, (but not with respect to any financing to be obtained by Buyer).  The obligations of the parties under this Section 8(c) shall survive the Closing and any early termination of this Agreement and shall not be merged with the Deed.

(d)    All real property ad valorem taxes shall be prorated (employing a 365-day year) between Buyer and Seller as of the Closing Date based upon the current property assessment. If the Property is taxed as a portion of a larger parcel and such taxes are not due and payable prior to the Closing, Seller shall pay to Buyer or provide Buyer with a credit against the Purchase Price for Seller's share of such real property ad valorem taxes and such taxes shall be paid by Buyer when due. Seller's pro-rata share of such taxes shall be based on the ratio of (i) the acreage contained in the Property divided by (ii) the acreage of the entire area taxed. If such assessment is not available for the year in question, said proration will be based upon the most recently available tax information and valuation with respect to the Property. Buyer and Seller shall make adjustments between themselves for up to twelve (12) months post-Closing, if necessary, based on the actual tax bills for the Property, to correct the proration of taxes at Closing. All assessments levied against the Property and due and payable as of the Closing Date shall be paid in full by Seller on or before Closing. If the parties make any errors or omissions in the closing prorations or if they subsequently determine any dollar amount prorated to be incorrect, each agrees, upon notice from the other after the Closing, to make any adjustment necessary to correct the error, including payment of any amount to the other then determined to be owing. The provisions of this Section 8(d) shall survive the Closing.

9.    **Brokers**. Buyer and Seller each represent and warrant to the other that neither party has dealt with any broker, agent or finder in connection with this transaction other than Ackerman & Co – Pioneer Land Group (the "Broker"). If the Closing occurs, Seller shall be obligated to pay the Broker at Closing a real estate commission pursuant to a separate agreement. Seller's obligation to pay such commission is conditioned upon the Broker's execution of a standard commercial broker's lien waiver. With the exception of the Broker, Buyer and Seller hereby represent and warrant to each other that they have not retained or dealt with any other broker with respect to this transaction. Buyer and Seller each agree to indemnify, protect, defend and hold the other harmless for, from and against any expense initiated by any other broker, commission agent or other person which such party has engaged or retained in connection with the transaction contemplated by this Agreement. The terms of this Section 9 shall survive the Closing or earlier termination of this Agreement.

10.    **Representations, Warranties and Covenants**.

(a)    Seller represents, warrants and covenants to Buyer as follows:

(i)    Seller is the owner in fee simple of the Property. Seller has the full power and authority to execute this Agreement and to consummate the transaction contemplated herein and all necessary action has been taken to duly authorize the execution and delivery of this Agreement and all documents and instruments contemplated by this Agreement, and the performance by Seller of the covenants and obligations to be performed and carried out by it hereunder.

(ii)    Subject to obtaining the Bankruptcy Court Order, Seller is not prohibited from consummating the transaction contemplated by this Agreement by any law, rule, regulation, instrument, agreement, order or judgment.

(iii)    There are no leases, tenancies, options, rights of first refusal, licenses, or other agreements applicable to or affecting the Property; subject to matters of public record, no third party has any right to utilize or possess the Property; to Seller's knowledge there are no adverse parties in possession of any portion of the Property; and, to Seller's knowledge there are no encroachments by Seller on the property of others or others on the Property.

(iv)    Except for the proceeding in the Bankruptcy Court, neither Seller nor Seller's fee simple interest in the Property is subject to any proceeding or litigation of any kind, pending or outstanding, including condemnation proceedings or, to the knowledge of Seller, threatened or instituted which would in any way be binding upon Buyer or its successors or assigns or affect or limit Buyer or its successors or assigns full use and enjoyment of the Property or which would limit or restrict in any way Seller's right or ability to enter into this Agreement and consummate the sale and purchase described in this Agreement.

(v)    There are no taxes, charges or assessments of any nature or description arising out of the conduct of Seller's ownership of the Property, which would constitute a lien against the Property, that will be unpaid at the Closing, except for the lien of the current year's and future years ad valorem property taxes which are not yet due and payable.

(vi)    Seller is not a "foreign person" which would subject Buyer to the withholding tax provisions of Section 1445 of the Internal Revenue Code of 1986, as amended.

(vii)    The Property is not subject to any conservation use assessment.

(viii)    Seller has not received any written notice from any governmental authority and otherwise has no knowledge of a violation of any governmental requirements (including Environmental Laws) on the Property, which has not been remedied.

(ix)    With respect to the Property, except as disclosed in any environmental reports delivered by Seller to Buyer or obtained by Buyer, Seller has no knowledge of and has not received any written summons, citation, directive, notice or complaint issued by the United States Environmental Protection Agency or other federal or local government authority or any other third party concerning any alleged violations of any Environmental Laws and regulations or any investigation or request for information relating to the handling, packaging, transportation, treatment, storage or disposal of Hazardous Substances on-site or when transported off-site.

(b)    The foregoing representations and warranties from the date hereof to the Closing, shall be true and correct and in full force and effect, as the case may be, and deemed to have been reaffirmed and restated by Seller as of the date and time of the Closing, and shall survive the Closing for a period of one (1) year and shall not be merged upon delivery of the Deed, and shall inure to the benefit of and be enforceable by Buyer, its successors and assigns.  In the event Seller becomes aware that any representation or warranty is untrue, inaccurate or incorrect or that any covenant of Seller has been breached, Seller shall deliver written notice to Buyer thereof within forty-eight (48) hours of obtaining such knowledge (but, in any event, prior to the Closing).

(c)     For purposes of this Agreement, the term: (1) "Hazardous Substances" has the meaning set forth in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. § 9601 et seq.), and all regulations thereunder, and shall also include radon, petroleum and petroleum products and asbestos and asbestos products; and (2) "Environmental Law" means any legal requirement in effect at the Closing Date pertaining to (a) the protection of health, safety, and the indoor or outdoor environment, (b) the conservation, management, protection or use of natural resources and wildlife, (c) the protection or use of source water and groundwater, (d) the management, manufacture, possession, presence, use, generation, transportation, treatment, storage, disposal, release, threatened release, abatement, removal, remediation or handling of, or exposure to, any Hazardous Material or (e) pollution (including any release to air, land, surface water, and groundwater); and includes, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 USC §§9601 et seq., Solid Waste Disposal Act, as amended by the Resource Conservation Act of 1976 and Hazardous and Solid Waste Amendments of 1984, 42 USC §§6901 et seq., Federal Water Pollution Control Act, as amended by the Clean Water Act of 1977, 33 USC §§1251 et seq., Clean Air Act of 1966, as amended, 42 USC §§7401 et seq., Toxic Substances Control Act of 1976, 15 USC §§2601 et seq., Hazardous Materials Transportation Act, 49 USC App. §§1801, Occupational Safety and Health Act of 1970, as amended, 29 USC §§651 et seq., Oil Pollution Act of 1990, 33 USC §§2701 et seq., Emergency Planning and Community Right-to-Know Act of 1986, 42 USC App. §§11001 et seq., National Environmental Policy Act of 1969, 42 USC §§4321 et seq., Safe Drinking Water Act of 1974, as amended by 42 USC §§300(f) et seq., and any similar, implementing or successor law, any amendment, rule, regulation, order or directive, issued thereunder.

(d)     References to "Seller's knowledge", "knowledge", "known", "awareness" or words of similar meaning shall mean and be limited to the present, actual knowledge of Chittranjan Thakkar, without independent investigation or inquiry.

(e)     Except as otherwise specifically warranted or represented herein or in any of the documents to be signed at Closing, it is expressly understood and agreed that Seller has not made, and shall not be deemed to have made, any warranties or representations, expressed or implied, or have any liability to Buyer with respect to any aspect of any Property or its condition. Further, it is expressly understood and agreed that, with the exception of the Seller warranties and representations contained herein or in any of the documents to be signed at Closing, Buyer will accept the Property in an "AS IS, WHERE IS" condition.

11.     **Declaration.**  During the term of this Agreement, Seller shall not record (or cause to be recorded) a Declaration for the Property, without the Buyer's prior written consent.

12.     **Notices.**  Any notice, request, demand, consent, approval and other communications under this Agreement shall be in writing. All such notices shall be deemed duly given or delivered: (a) if sent by email, on the business day such email was sent; (b) if sent by personal delivery or courier, upon personal delivery to the party to whom the notice is directed; (c) if sent by nationally recognized commercial overnight carrier, with request for next business day delivery, on the next business day after sending; or (d) if sent by United States mail, registered or certified, return receipt requested, post prepaid upon signed receipt (with refusal to accept

delivery constituting receipt).  All notices shall be sent to the address for each party set forth
below:

|  |  |
|---|---|
| If to Seller: | NRCT, LLC<br>3985 Steve Reynolds Blvd.<br>Building L101<br>Norcross, GA 30093<br>Attention:  Chittranjan Thakkar<br>Phone: 678) 488-6987<br>Email: cthakkar@dctsystems.net |
| With a copy to: | Taylor English Duma LLP<br>1600 Parkwood Circle<br>Suite 200<br>Atlanta, GA 30339<br>Attention: John E. Taylor<br>Phone: (678) 426-4618<br>Email: jtaylor@taylorenglish.com |
| If to Buyer: | Century Communities of Georgia, LLC<br>3091 Governors Lake Drive<br>Suite 200<br>Norcross, Georgia 30071<br>Attention:  Keith Hurand,  Angie  Yeremian,  Christina  Schenck<br>Geoffrey Reid & Scott Butler<br>Phone: (678) 533-1160<br>Email: keith.hurand@centurycommunites.com<br>ayeremian@centurycommunites.com<br>cschenck@centurycommunites.com<br>greid@centurycommunities.com<br>sbutler@centurycommunities.com |
| If to Escrow Agent: | McMichael & Gray, P.C.<br>2055 North Brown Road<br>Suite 250<br>Lawrenceville, Georgia 30043<br>Attention: Randall M. McMichael<br>Phone: (678) 373-0549<br>Fax: (678) 373-0522<br>Email: randy@mcmichaelandgray.com |

13.    **Condemnation**.  In the event, at any time between the making of this Agreement and
Closing, all or any portion of the Property is condemned, or any improvements located on the
Property are damaged or destroyed by whatever cause by any legally constituted authority for
any public use or purpose, then Buyer may elect to either: (i) terminate this Agreement, in which
event the Deposit shall be immediately refunded to Buyer, and the parties shall have no further
rights or obligations hereunder, except for those which expressly survive any such termination;

or (ii) collect all proceeds (or take an assignment from Seller of such proceeds) from any condemnation and have the terms of this Agreement remain in full force and effect and binding on the parties hereto and without any reduction in the Purchase Price. In the event of a condemnation in which Buyer does not elect to terminate this Agreement pursuant to the foregoing terms, then the term "Property" (as applicable) as used herein shall thereafter refer to the Property less and except any portion thereof taken by such condemnation.

14.     **Default by Buyer**.  If Buyer defaults hereunder (except for a default resulting from Seller's breach or default hereunder), which default is not cured within ten (10) days after Seller's delivery of written notice to Buyer specifying the nature of the default, Seller shall, as its sole remedy, obtain or retain the Deposit as liquidated damages for such breach, it being hereby agreed that Seller's damages in the event of a default by Buyer hereunder are uncertain and difficult to ascertain, and that the Deposit held by Escrow Agent at the time of said default constitutes a reasonable estimation of the amount of liquidated damages for such breach under the circumstances existing at the time this Agreement is entered into and is intended not as a penalty, but as full liquidated damages.  Upon Escrow Agent's delivery to Seller of the Deposit as contemplated herein, this Agreement shall be deemed terminated, and the parties shall have no further rights or obligations hereunder, except for those which expressly survive any such termination.  Without limiting the foregoing, Buyer shall have no other liability in the event Buyer defaults or fails to perform hereunder and any and all other legal or equitable rights or remedies which Seller may have against Buyer as a result of Buyer's default being hereby waived. The obligations of the parties under this <u>Section 14</u> shall survive the Closing and any early termination of this Agreement and shall not be merged with the Deed.  The foregoing provisions of this Section 14 do not apply to liability of Buyer under either of Sections 4(b) or 9, which Sections 4(b) and 9 explicitly survive as provided therein.

15.     **Default by Seller**. In the event that Seller shall fail to fully and timely perform any of its obligations hereunder for any reason except as a result of Buyer's breach or default hereunder or a valid termination of this Agreement, which default is not cured within ten (10) days after Buyer's delivery of written notice to Seller specifying the nature of the default, then at Buyer's option: (i) Buyer may terminate this Agreement by giving written notice of the same to Seller and Escrow Agent, whereupon the Deposit shall be immediately returned to Buyer, and the parties shall have no further rights or obligations hereunder, except for those which expressly survive any such termination, and Buyer may sue Seller to recover Buyer's documented out of pocket expenses in regard to this Agreement and/or the Property, in an amount not to exceed $150,000.00; or (ii) Buyer may pursue an action for specific performance against Seller. In the event the remedy of specific performance is unavailable because of any act or omission of Seller causing any new matter affecting title to the Property to appear of record, or Seller's entering into any new lease, agreement of sale, option or any other agreement or contract affecting the Property, then Buyer may pursue any other rights or remedies available or allowed by law or in equity. The obligations of the parties under this <u>Section 15</u> shall survive the Closing and any early termination of this Agreement and shall not be merged with the Deed. The foregoing provisions of this Section 15 do not apply to liability of Buyer under either of Section 9, which Section 9 explicitly survives as provided therein.

16.     **General**. Time is of the essence hereof. This Agreement represents the entire agreement of the parties, and may only be amended in writing. This Agreement shall be binding upon and

inure to the benefit of the parties hereto and their respective successors and assigns. This Agreement shall be construed as a whole and in accordance with its fair meaning and without regard to any presumption or other rule requiring construction against the party drafting this Agreement. Each party has reviewed this Agreement and has had the opportunity to have it reviewed by legal counsel. Buyer does not assume or agree to pay or indemnify Seller or any other party against any liability, obligation or expense of Seller except as expressly set forth herein. The waiver of any default by Seller or Buyer shall not be construed as a continuing waiver, or a waiver or any subsequent default of the same or any other provision of this Agreement. The terms of this Agreement shall be governed under Georgia law. Possession of the Property shall pass at Closing. In the event of any action to enforce the terms of this Agreement, the prevailing party shall be entitled to costs and attorneys' fees from the other party. This Agreement may be executed in counterparts. Emailed signatures and signatures in PDF format transmitted via email are acceptable as original signatures. If the date for performance of any obligation hereunder or the last day of any time period provided herein shall fall on a Friday, Saturday, Sunday or legal holiday, then said date for performance or time period shall expire on the first day thereafter which is not a Friday, Saturday, Sunday or legal holiday. This Agreement constitutes the entire contract and agreement between the parties. All terms and provisions and any other writing or oral communications between the parties are superceded.

17.    **Assignment**. Seller shall not be permitted to assign its rights or obligations hereunder without the prior written consent of Buyer. Buyer may freely assign its rights and/or obligations in this Agreement without the prior written consent of Seller, but no assignment will release Buyer from any of its obligations under this Agreement.

18.    **Severability**. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be valid under applicable law, but if any provision shall be invalid or prohibited thereunder, such provision shall be ineffective to the extent of such prohibition or invalidation but shall not invalidate the remainder of such provision or the remaining provisions. If any of the terms, covenants, conditions, obligations, or options created by this Agreement shall be unlawful or void for violation of the rule against perpetuities or any analogous statutory provision, or any other statutory or common law rules imposing like or similar time limits, then such provision shall continue only for the period of the life or lives of the current Chief Executive Officers of Buyer, plus twenty-one years.

19.    **Survival**. Except as otherwise provided herein, all covenants, agreements, representations and warranties set forth in this Agreement or in any certificate or instrument executed or delivered pursuant to this Agreement shall not survive Closing but shall merge into any deed, assignment or other instrument executed or delivered pursuant hereto.

20.    **Cooperation**. Buyer and Seller agree to execute and/or deliver to each other or to Escrow Agent, as appropriate, such other instruments and documents as may be reasonably necessary to fulfill the covenants and obligations to be performed by such party pursuant to this Agreement.

21.    **Risk of Loss.** The risk of loss for damage to any portion of the Property and all liability to third persons until Closing thereon shall, except as otherwise expressly provided herein, be borne by Seller.

22.    **Seller Consideration.**  Upon any termination of this Agreement and return of the Deposit to Buyer, Escrow Agent shall pay ONE HUNDRED DOLLARS ($100) of the Deposit to Seller as consideration for this Agreement.


[SIGNATURES CONTAINED ON FOLLOWING PAGES]

IN WITNESS WHEREOF, Buyer and Seller have executed this Agreement as of the date first set forth above.

**SELLER:**

**NRCT, LLC,**
a Georgia limited liability company

By: _CK Thakkar_
Name: _Chittranjan Thakkar_
Title: _Manager_

[SIGNATURES CONTINUE ON FOLLOWING PAGES]

**BUYER:**

**CENTURY COMMUNITIES OF GEORGIA, LLC,**
a Colorado limited liability company

By: _____
Name: Keith Hurand
Title: Authorized Signatory


[SIGNATURES CONTINUE ON FOLLOWING PAGES]

Escrow Agent hereby: (i) agrees to be bound by the provisions and perform the obligations hereof applicable to Escrow Agent, and (ii) agrees to act as "the person responsible for closing" the transaction which is the subject of this Agreement and otherwise comply with the terms of Section 6045(e) of the Internal Revenue Code, as amended.

**ESCROW AGENT**:

**MCMICHAEL & GRAY, P.C.,**
a Georgia professional corporation

By:_____
Name: _____
Title: _____

## EXHIBIT "A"

Description of Property

### DESCRIPTION OF THE LAND



**EXHIBIT "B"**

Form of Owner's Affidavit

[See attached]

STATE OF

COUNTY OF

## OWNER'S AFFIDAVIT

Personally appeared before me, the undersigned Chittranjan K. Thakkar ("Affiant"), who, being duly sworn according to law, deposes and states on oath as follows:

1.     That Affiant is Manager of NRCT, LLC, a Georgia limited liability company ("Owner"), and as such Affiant has personal knowledge of the facts sworn to in this affidavit and the authority to make the affidavit.

2.     That Owner is the owner in fee simple of real property more particularly described on Exhibit A attached hereto and incorporated herein by reference (the "Property"), and that Owner has full power to sell, convey, transfer and assign the Property.

3.     That during the period of Owner's possession of the Property, Owner has been in undisputed and peaceful possession of the Property, and that no other person or entity has the right of possession of the Property, subject to the matters (the "Permitted Exceptions") set forth in Exhibit B attached hereto and incorporated by reference.

4.     That Owner has not entered into any outstanding agreement of sale, options, lease, or other rights of third parties to acquire an interest in the Property or any portion thereof, except for the agreement of sale pursuant to which Owner executes this Affidavit.

5.     That Affiant has received no notice of disputes concerning the location of the lines and corners of the Property.

6.     That, to the best of the knowledge and belief of Affiant, no suits, judgments, bankruptcies or executions are pending against the Owner in any court whatsoever that could in any way affect the title to the Property, or constitute a lien thereon; and that there are no surety bonds, loan deeds, deeds to secure debt, mortgages, easements, liens or encumbrances of any nature whatsoever unsatisfied against the Property except for the matters to be satisfied in full at closing, and except for the Permitted Exceptions.

7.     That, to the best of the knowledge and belief of Affiant, no special assessments are assessed against or relate to the Property.

8.     That no indebtedness or unpaid bills of Owner are due and payable for equipment, appliances, or other fixtures attached to the Property, or for labor or materials used in making improvements or repairs to the Property.

9.     The undersigned further says on oath, that no improvements or repairs have been made on the Property at the instance of Owner during the ninety-five (95) days immediately preceding this date for which the agreed price or reasonable value has not been fully paid, and that there are no outstanding bills incurred for labor or materials for any work, improvements or repairs

on the Property performed at the request of Owner, or for services on any architect, engineer or surveyor in connection therewith.

10.     That no person or entity acting on behalf of Owner is or will be entitled to a commission or similar compensation in connection with the sale of the Property, other tyhan Ackerman & Co – Pioneer Land Group.

11.     That no property tax bills for the Property are under appeal.

12.     That this Affidavit may be relied upon by any purchaser to whom an interest in the Property is being conveyed and by any title insurance company insuring any interest in the Property.

Sworn to and subscribed before me on                    AFFIANT:
[Date] 11-15-2018

_____                    _____ (SEAL)
Notary Public                                        Chittranjan K. Thakkar, as Manager of NRCT, LLC

My Commission Expires: 1|25|2022

(NOTARY SEAL)

- 2 -

# EXHIBIT A

## Legal Description



## EXHIBIT B

Permitted Exceptions

1. Ad valorem taxes for 20 ____ and subsequent years, not yet due and payable.

01308567-2

CERTIFICATE OF SERVICE

I, M. Denise Dotson, certify that I caused a true and correct copy of the foregoing to be served upon the parties listed below via first class United States mail in a properly addressed envelope with sufficient postage affixed thereon.

Tom Dworschak
Office of United States Trustee
362 Russell Federal Building
75 Spring Street
Atlanta, GA 30303

This the 4th day of December, 2018.

M. DENISE DOTSON, LLC

_/s/_____
M. Denise Dotson
Georgia Bar No. 227230
PO Box 435
Avondale Estates, GA 30002
(404) 210-0166
denise@mddotsonlaw.com