**IT IS ORDERED as set forth below:**

**Date: March 21, 2020**



_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: ) | CASE NO. 15-58440-WLH |
| ) | (Jointly Administered) |
| BAY CIRCLE PROPERTIES, LLC *et al.*,[1] ) | |
| ) | CHAPTER 11 |
| Debtors. ) | |
| ) | JUDGE WENDY L. HAGENAU |

**ORDER ON OBJECTION TO SCHEDULED CLAIMS
OF NILHAN FINANCIAL, LLC IN EACH OF THE NILHAN DEVELOPERS, LLC
AND NRCT, LLC CHAPTER 11 CASES**

On December 6, 2019, Norcross Hospitality, LLC ("Norcross Hospitality") and Rohan and Niloy Thakkar (collectively with Norcross Hospitality, "Movants"), filed an Objection to Scheduled Claims of Nilhan Financial, LLC in each of the Nilhan Developers, LLC and NRCT, LLC Chapter 11 Cases [Docket No. 1269] ("Objection"). In the Objection, the Movants sought to disallow or reduce the scheduled claims of Nilhan Financial in the cases of NRCT and Nilhan Developers. Responses were filed by the Chapter 11 Trustee in these bankruptcy cases [Docket No. 1294], by SEG Gateway, LLC and Good Gateway, LLC (collectively, "Gateway") [Docket No. 1295], and by Douglas N. Menchise, as Chapter 7 Trustee for Nilhan Financial LLC [Docket

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Bay Circle Properties, LLC (1578), DCT Systems Group, LLC (6978), Sugarloaf Centre, LLC (2467), Nilhan Developers, LLC (6335), and NRCT, LLC (1649).

1

No. 1296]. The matter came before the Court for hearing on February 4, 2020. Henry Sewell appeared for the Movants, Frank DeBorde and Lisa Wolgast appeared for the Chapter 11 Trustee in these cases, Walt Jones appeared on behalf of Gateway, and Paul Marr and Lara Fernandez appeared on behalf of the Chapter 7 Trustee for Nilhan Financial. The Court received voluminous exhibits and heard the testimony of Chuck Thakkar and Mr. Menchise, the Chapter 7 Trustee for Nilhan Financial. The Court ruled at the conclusion of the hearing on several arguments and its oral ruling is incorporated herein. The Court also received and reviewed supplemental briefs on the issues of setoff and recoupment from the parties at Docket Nos 1330, 1332, 1333 and 1334. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. §157(b) (2) (B) as it involves the allowance of claims.

## FACTS

On May 4, 2015, each of the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code . On May 20, 2015, Nilhan Developers filed its Statement of Financial Affairs and Schedules [Case No. 15-58443, Docket Nos. 18 and 19], which were amended on May 21, 2015 [Case No. 15-58443, Docket No. 24]. Schedule F included debts owed to Nilhan Financial in the following amounts: a claim for a loan in the amount of $9,500,000, a claim for a reimbursement in the amount of $83,672, and a claim in the amount of $15,434.07. On May 20, 2015, NRCT filed its Statement of Financial Affairs and Schedules [Case No. 15-58444, Docket Nos. 18 and19], which were amended on May 21, 2015 [Case No. 15-58444, Docket No. 23]. Schedule F included debts owed to Nilhan Financial as follows: a claim in the amount of $13,953,776 and a claim in the amount of $91,524.

The precipitating event for the filing of the bankruptcy cases was a scheduled foreclosure by Wells Fargo Bank on the assets of the Debtors. Chuck Thakkar, who is the principal and/or

2

manager of these Debtors and of Nilhan Financial and Niloy Inc., has had a long-standing borrowing relationship with Wells Fargo Bank and its predecessors. The last pre-petition iteration was an Amended and Restated Promissory Note dated April 30, 2013 in the original principal amount of $19,750,000 from Niloy and Nilhan Financial, and an Amended and Restated and Consolidated Promissory Note dated April 30, 2013 in the original principal amount of $12,910,000 from Chuck and Saloni Thakkar. Each of the debtors in these cases are guarantors of the two notes. As of the petition date, the total amount owed on both notes, and guaranteed by these Debtors, exceeded $22 million. Substantially all of the Debtors' assets were pledged to Wells Fargo as collateral. During the course of these bankruptcy cases, the Wells Fargo claim was paid in full through the liquidation of assets of Nilhan Developers and other Debtors. The claim of Wells Fargo (which was subsequently assigned to Bay Point Capital Partners, LP) was finally resolved by a settlement agreement approved by the Court on June 10, 2019. Nilhan Developers paid approximately $7,200,000 of this obligation by virtue of the sale of its real property in April 2017.

On March 20, 2017, an involuntary Chapter 7 petition was filed against Nilhan Financial in the U.S Bankruptcy Court for the Middle District of Florida. In its Schedules, it identified that it owed its affiliates $61,539,000. The Nilhan Financial Schedules also reflected $72 million of notes receivable from the affiliates. The specific amounts owed by specific affiliates was not included. Ultimately, on December 15, 2017, the bankruptcy case of Nilhan Financial was converted to a case under Chapter 7 of the Bankruptcy Code and Douglas N. Menchise was appointed as Trustee (" Chapter 7 Trustee").

On December 11, 2018, the Bankruptcy Court in these cases appointed Ronald L Glass as the Chapter 11 Trustee of the Debtors ("Chapter 11 Trustee").

3

At the hearing on this matter, counsel for Movants stated that it only objected to the scheduled claim of Nilhan Financial in the Nilhan Developers case in the amount of $9,500,000. It did not object to the claim for reimbursement in the amount of $83,672 or the additional claim in the amount of $15,434.07. Similarly, Movants announced that, as to the NRCT Schedules, they only objected to the claim of Nilhan Financial in the amount of $13,953,776. They did not object to the claim of $91,524.

## OBJECTION TO CLAIMS

Movants objected to the $9,500,000 Nilhan Financial claim scheduled in the Nilhan Developers case in its entirety on several bases. First, they contend that the $9,500,000 claim listed on the Schedules was just an allocation of the Wells Fargo debt actually owed by Nilhan Financial to Wells Fargo and not debt owed by Nilhan Developers to Nilhan Financial. Movants contend further that, since all of Wells Fargo's claim has been satisfied in these bankruptcy cases, no further sums are due to Nilhan Financial. Secondly, Movants contend that the money Nilhan Developers received indirectly from the Wells Fargo loan did not come through Nilhan Financial, but instead came through Niloy, Inc. As such, they contend there is no consideration for an obligation by Nilhan Developers to Nilhan Financial. Finally, Movants contend that any claim of Nilhan Financial is subject to reduction through set-off or recoupment or counterclaim, particularly for the amount Nilhan Developers paid on the Wells Fargo debt owed by Nilhan Financial.

Movants objected to the $13,953,776 scheduled claim of Nilhan Financial in the NRCT case in its entirety on the basis that there was no evidence in NRCT's books and records that NRCT ever received any proceeds of the Wells Fargo loan from Nilhan Financial. They contend, therefore, there was no consideration for any obligation to Nilhan Financial. Moreover, to the extent the number reflected on the NRCT Schedules was an allocation of the Wells Fargo debt,

4

the Wells Fargo debt was satisfied. Movants contend therefore that NRCT would have no further obligation to Nilhan Financial.

## RESPONSES

The Chapter 11 Trustee, Chapter 7 Trustee, and Gateway ("Respondents") all oppose the claim objections on the same basic grounds. First, they contend the Debtors, and specifically Chuck Thakkar, are judicially estopped from objecting to the scheduled claims because the Schedules were filed under oath. The estoppel argument is also based on the Nilhan Financial Schedules and the 341 testimony of Chuck Thakkar in the Nilhan Financial case and in these bankruptcy cases. The Respondents also contend that the obligations from NRCT and Nilhan Developers are independent obligations to Nilhan Financial and not merely an "allocation" of the Wells Fargo debt. They contend that any claim of set-off, recoupment or contribution requires evidence which has not been presented or that Movants do not have standing to assert the claim for recoupment or contribution or that the claim is time barred in the Nilhan Financial case.

## LAW

A determination as to the allowance of a claim begins with 11 U.S.C. § 501(a), which permits a creditor to file a proof of claim. Under 11 U.S.C. § 1111(a), a proof of claim is deemed filed under Section 501 if it is listed in Schedule F and not identified as disputed, contingent or unliquidated. Since the claim of Nilhan Financial was not designated as being disputed, contingent or unliquidated, by operation of law, it is therefore deemed to have filed a proof of claim in each of the NRCT and Nilhan Developers cases. In re 3333 Main LLC, No. 13–51533, 2014 WL 2338273, at *3 (Bankr. D. Conn. May 29, 2014). A party in interest may object to a claim under 11 U.S.C. § 502(a). There is no serious dispute that the Movants here are parties in interest since they are the holders of the equity in the two Debtors at issue. A "party in interest" under 11 U.S.C. § 1109(b) is any person with a direct financial stake in the outcome, including any equity

participant. Once an objection to a claim is filed, the objecting party must " produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency . . . . The burden of persuasion under the bankruptcy claims procedure always lies with the claimant . . . ." Id. (cites omitted). This same procedure follows in the situation where the objection is to scheduled claims as opposed to a proof of claim. Id.

Here, the claimant, Nilhan Financial, relied primarily on judicial estoppel in support of its claim. The Chapter 7 Trustee's position is that, because the claims were scheduled in the Nilhan Developers' Schedules, the Schedules cannot be amended. He also relies on the Nilhan Financial Schedules. Neither provides a basis for estoppel on these facts.

The equitable doctrine of judicial estoppel is intended to protect courts against parties who seek to manipulate the judicial process by changing their legal positions to suit the exigencies of the moment. Slater v. U.S. Steel Corp., 871 F.3d 1174 (2017). In New Hampshire v. Maine, 532 U.S. 742 (2001) (in which the United States Supreme Court applied the doctrine to bar the State of New Hampshire from taking a different position from that taken by the state during prior litigation), the Court explained that "under the judicial estoppel doctrine, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Id. at 742-43. The Court further noted that the "purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. at 743.

6

The Eleventh Circuit employs a two-part test to consider whether: (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were "calculated to make a mockery of the judicial system." Barger v. City of Cartersville, 348 F.3d 1289, 1293-94 (11th Cir. 2003) (quoting Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1308 (11th Cir. 2001)); Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 1282, 1285 (11th Cir. 2002). The court must consider both the party's actions—whether he made inconsistent statements—and his motive— whether he intended to make a mockery of the judicial system. The Eleventh Circuit in Slater v. U.S. Steel Corp., 871 F.3d 1174 (2017), ruled that a court should consider all the relevant facts and circumstances of the case when determining whether a party intended to make a mockery of the judicial system. The court further explained that, as an equitable doctrine, judicial estoppel should apply only when the conduct is egregious and "demand[s] equitable intervention." Id. at 1187 (citations omitted).

First, with respect to the Nilhan Financial Schedules, the amounts due to and from affiliates is a single number and the creditor is just identified as "affiliates." Nowhere in the Nilhan Financial Schedules are Nilhan Developers or NRCT identified specifically. While NRCT and Nilhan Developers are affiliates of Nilhan Financial, Movants do not contest that NRCT and Nilhan Developers owe some amount to Nilhan Financial and nothing in the Nilhan Financial Schedules contains a representation as to the amount owed. Movants are not judicially estopped from contesting how much is owed. Moreover, the Nilhan Financial Schedules state on their face they are based on the books and records of Nilhan Financial that had to be reconciled. Chuck Thakkar testified at the Nilhan Financial 341 to the same effect. Since the representations were non-specific and heavily caveated, the Court does not find the present challenge to be a mockery of the judicial system.

7

Secondly, with respect to the Nilhan Developers and NRCT Schedules, Fed. R. Bankr. P. 1009 allows a debtor to amend the schedules at any time until the case is closed. As the Eleventh Circuit has noted, "[t]he duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend [her] financial statements if circumstances change." Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1274 (11th Cir. 2010) (citations omitted). With that broad right of amendment, it is difficult to say the Debtors are judicially estopped from amending their Schedules. In this case, though, judicial estoppel does not apply for a more obvious reason. Here, the question is not whether money was owed to Nilhan Financial at the time the case was filed, but whether subsequent events in this case, i.e. the payment of the Wells Fargo claim in full by Nilhan Developers and others, is a basis for reducing or eliminating the Nilhan Financial claim. Judicial estoppel does not bar an amendment based on a change in circumstances. See In re Hoffman, 605 B.R. 560, 563 (Bankr. N.D. Ga. 2019) (finding res judicata did not bar the debtor from amending his claimed exemptions).

After considering all of the evidence, the Court finds that Nilhan Developers did owe $9,500,000 to Nilhan Financial at the time the bankruptcy case was filed. The Court therefore rejects the contention that there was no consideration for the obligation or that the $9,500,000 claim was simply an "allocation" of the Wells Fargo debt. The $9,500,000 obligation is evidenced by a promissory note from Nilhan Developers to Nilhan Financial and is listed in every tax return and financial statement for the consolidated companies. However, the Court concludes that Nilhan Developers has paid a portion of this note by selling its assets in this bankruptcy case and making a payment of approximately $7,200,000 to Wells Fargo on behalf of Nilhan Financial.

The Chapter 7 Trustee argues that the claims bar date in the Nilhan Financial case has passed and that Nilhan Developers is barred from asserting a claim for contribution, subrogation

8

and the like. But any such deadline would not affect the right of the Chapter 11 Trustee in Nilhan Developers and/or NRCT to raise defenses to the claims. Miller v. New Penn Fin., LLC (In re Miller), No. 15-70981-WLH, 2019 WL 1112335, at *4 (Bankr. N.D. Ga. Mar. 8, 2019) ("The clear weight of authority permits parties to assert time-barred claims defensively.").

Moreover, 11 U.S.C. § 558 preserves defenses available to the debtor, and provides "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses." 11 U.S.C. § 558. Because Section 558 preserves to the Debtor the defenses it would have had prepetition, the Court must examine the transaction as though the bankruptcy had not been filed. Doing so eliminates the prepetition/post-petition distinction and, in essence, obliterates the requirement that mutual debts must be both prepetition obligations in a § 558 context." In re Papercraft Corp., 127 B.R. 346, 350 (Bankr. W.D. Pa. 1991)' see also In re PSA, Inc., 227 B.R. 51, 54 (Bankr. D. Del. 2002) (stating that "the prepetition/postpetition distinctions are irrelevant under § 558").

The Chapter 7 Trustee asserts only the Chapter 11 Trustee in these cases can seek contribution from Nilhan Financial. The Chapter 11 Trustee may assert the debtor's defenses under section 558, but the right is not exclusive. See 11 U.S.C. § 558 ("The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate"). Indeed, other parties in interest may raise defenses to the allowance of claims that the trustee refuses to interpose. See e.g., In re Braniff Airways, Inc., 12 C.B.C.2d 610, 614, 42 B.R. 443.447 (Bankr. N.D. Tex. 1984) (debtor has the right to assert setoff as defense). This may arise, for example, in the context of an objection to the allowance of a claim. See Trauner v. Huffman (In re Trusted Net Media Holdings, LLC), 334 B.R. 470, 475 (Bankr. N.D. Ga. 2005). Here, the Chapter 11

9

Trustee has not raised the defense, opening up the possibility for others to raise the defense to minimize recovery from the estate.

Since a party objecting to a proof of claim may assert defenses, 11 U.S.C. § 558, and setoff/recoupment is an affirmative defense, it may be used to reduce Nilhan Financial's claims in these cases, if otherwise appropriate. See In re Trans-Action Commer. Investors, Ltd., No. 97-46121, 2002 WL 32341923 (Bankr. N.D. Cal. June 28, 2002). The right to setoff must be established under state law in order for the debtor to assert setoff as a defense under Section 558. In re PSA, 277 B.R. at 54. Georgia law permits setoff. See O.C.G.A. § 13-7-1 ("Setoff does not operate as a denial of the plaintiff's claim; rather it allows the defendant to set off a debt owed him by the plaintiff against the claim of the plaintiff."), see also Super98, LLC v. Delta Air Lines, Inc., 309 F. Supp. 3d 1368, 1381 (N.D. Ga 2018) ("Under Georgia law, a set-off is a counter-demand which a defendant holds against plaintiff, arising out of a transaction extrinsic or independent of the plaintiff's cause of action.") (citations and emphasis omitted); O.C.G.A. § 23-2-76 (recognizing equitable setoff). Georgia law requires mutuality for setoff. O.C.G.A. § 13-7-5 ("Between the parties themselves, any mutual demands existing at the time of commencement of the suit may be set off.").

Under Georgia law, a guarantor who pays the debt owed by its principal obligor has two separate and distinct remedies against the principal obligor: recoupment and subrogation. O.C.G.A. § 10-7-41, the recoupment statute, provides that "[p]ayment by a surety or endorser of a debt past due shall entitle him to proceed immediately against his principal for the sum paid, with interest thereof, and all legal costs to which he may have been subjected by the default of his principal." A guarantor's right to recoupment under O.C.G.A. § 10-7-41 is limited to the amounts paid on behalf of the primary obligor. See Keys v. JRN, Inc., No. 1:07-CV-16(WLS), 2009 WL

10

10673438, at *6 (M.D. Ga. Mar. 30, 2009). The guarantor's payment of the debt of the principal obligor triggers the guarantor's right to "proceed immediately against the principal for the sum paid, with interest thereon, and all legal costs" incurred. U.S. Fidelity & Guar. Co. v Collins, 298 S.C. 165, 167 (Ct. App. 1989) (citing O.C.G.A. § 10-7-41). If the primary obligor does not voluntarily reimburse the guarantor for amounts paid upon default, O.C.G.A. § 10-7-41 provides the guarantor a cause of action. See Lahaina Acquisitions, Inc. v. GCA Strategic Inv. Fund Ltd., 261 Ga. App. 800 (2003).

Whether called setoff or recoupment, it is undisputed that Nilhan Developers paid approximately $7,200,000 to Wells Fargo to satisfy Nilhan Financial's primary obligation to Wells Fargo. It is undisputed that the $9,500,000 obligation of Nilhan Developers to Nilhan Financial arose when Nilhan Developers borrowed money which originated from Wells Fargo. No one challenged Chuck Thakkar's testimony that the original source of the money was Wells Fargo. No one disputes that Nilhan Developers paid Wells Fargo approximately $7,200,000 and that this payment occurred postpetition. It is not unusual that a creditor's prepetition claim would be satisfied or reduced by postpetition liquidation of assets – that is the purpose of bankruptcy. So under any theory, Nilhan Developers should get the benefit of the $7,200,000 it paid on the Wells Fargo debt reducing the claim of Nilhan Financial accordingly.

The evidence did not fix the exact amount of funds delivered to Wells Fargo. Nevertheless, the Court allows Nilhan Financial a claim in this case in the amount of $9,500,000 less the amount delivered to Wells Fargo on account of the sale of the property. The claims of Nilhan Financial in the amount of $83,672 and $15,434.07 to which no objections were made, are also allowed in the case of Nilhan Developers.

With respect to NRCT, the Court finds no basis for allowing a claim to Nilhan Financial in the amount of $13,953,776.  No note was alleged or established between NRCT and Nilhan Financial.  Nilhan Financial never reflected an obligation in this amount in any tax returns or financial statements and did not show an obligation in any amount from NRCT on its tax return or financial statements after 2009.  In fact, on the Nilhan Financial general ledger as of December 31, 2011, NRCT is listed as owing Nilhan Financial zero dollars.  The Chapter 7 Trustee acknowledged at the hearing that NRCT was referenced nowhere in the Nilhan Financial Schedules and was never mentioned at the 341 meeting.  Some documents from NRCT show miscellaneous amounts due to or from Nilhan Financial but never show the $13 million number set out in the Schedules.  The Chapter 7 Trustee has provided no evidence NRCT owes Nilhan Financial the claim of $13,953,776.  That claim is therefore disallowed.  No objection was stated to the claim of $91,524 and that claim of Nilhan Financial is allowed.

**IT IS THEREFORE HEREBY ORDERED** that Nilhan Financial holds a claim in the case of Nilhan Developers in the amount of $15,434.07, plus $83,672 plus approximately $2,100,000, with the precise amount to be reported to the Court based on the amount paid by the Debtor to Wells Fargo from the sale of the property;

**IT IS HEREBY ORDERED** further that Nilhan Financial holds a claim in the case of NRCT in the amount of $91,524.

**END OF DOCUMENT**

**Distribution List**

Ronald L. Glass
Glass Ratner Advisory & Capital Group
Suite 110 3391
Peachtree Road Atlanta, GA 30326

Lisa Wolgast
Frank W. DeBorde
Morris, Manning & Martin LLP
3343 Peachtree Rd., N.E., Suite 1600
Atlanta, Georgia 30326

Henry F. Sewell, Jr.
Law Offices of Henry F. Sewell Jr., LLC
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305

Paul Reece Marr
Paul Reece Marr, P.C.
300 Galleria Pkwy NW, Ste 960
Atlanta, GA 30339

Lara Roeske Fernandez, Esq.
Florida Bar No. 0055800
101 E. Kennedy Boulevard, Suite 2700
Tampa, Florida 33602

Walter E. Jones
Balch & Bingham, LLP
30 Ivan Allen Jr. Blvd NW, Ste 700
Atlanta, GA 30308

Clay Martin Townsend
Morgan & Morgan, PA
20 North Orange Avenue Suite 1500
Orlando, FL 32801

Chitttranjan (Chuck) Thakkar
6050 Peachtree Industrial Boulevard
Norcross, GA 30071

Chitttranjan (Chuck) Thakkar
17885 Collins Ave
#4001
Sunny Isles, FL 33160

M.Denise Dotson
M.Denise Dotson, LLC
PO Box 435
Avondale Estates, GA 30003

Thomas Wayne Dworschak
Office of the U. S. Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, GA 30350