

**IT IS ORDERED as set forth below:**


**Date: April 3, 2020**

_Wendy L. Hagenau_
_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 15-58440-WLH |
| | ) | (Jointly Administered) |
| BAY CIRCLE PROPERTIES, LLC *et al.*,[1] | ) | |
| | ) | CHAPTER 11 |
| Debtors. | ) | |
| | ) | JUDGE WENDY L. HAGENAU |

<u>**AMENDED AND RESTATED ORDER ON OBJECTION TO SCHEDULED CLAIMS OF NILHAN FINANCIAL, LLC IN EACH OF THE NILHAN DEVELOPERS, LLC AND NRCT, LLC CHAPTER 11 CASES OR IN THE ALTERNATIVE, AMENDED MOTION FOR ORDER AMENDING SCHEDULES**</u>

On December 6, 2019, Norcross Hospitality, LLC ("Norcross Hospitality") and Rohan and Niloy Thakkar (collectively with Norcross Hospitality, "Movants"), filed an Objection to Scheduled Claims of Nilhan Financial, LLC in each of the Nilhan Developers, LLC and NRCT, LLC Chapter 11 Cases or in the Alternative, Amended Motion for Order: 1) Amending Schedules; or 2) In the Alternative, Requiring the Trustee to Amend Schedules as Necessary to Reflect Status of Certain Scheduled Claims as Disputed and Subject to Offset [Docket No. 1269] ("Objection").[2]

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Bay Circle Properties, LLC (1578), DCT Systems Group, LLC (6978), Sugarloaf Centre, LLC (2467), Nilhan Developers, LLC (6335), and NRCT, LLC (1649) ("Jointly Administered Debtors").

[2] Movants originally filed a Motion for Order: 1) Amending Schedules; or 2) In the Alternative, Requiring the Trustee to Amend Schedules as Necessary to Reflect Status of Certain Scheduled Claims as Disputed and Subject to Offset (Doc. No. 1200). At a hearing on the motion on November 14, 2019, the Court directed Movants to amend and supplement the motion to state their substantive objection to the Nilhan Financial claims, in order to streamline the

In the Objection, the Movants sought to disallow or reduce the scheduled claims of Nilhan Financial, LLC ("Nilhan Financial") in the cases of NRCT, LLC ("NRCT") and Nilhan Developers, LLC ("Nilhan Developers" and together with NRCT, "Debtors") or alternatively to require or permit the schedules of Nilhan Developers and NRCT to be amended to show the Nilhan Financial claims as disputed.  Responses were filed by the Chapter 11 Trustee in these bankruptcy cases [Docket No. 1294], by SEG Gateway, LLC and Good Gateway, LLC (collectively, "Gateway") [Docket No. 1295], and by Douglas N. Menchise, as Chapter 7 Trustee for Nilhan Financial LLC [Docket No. 1296]. The matter came before the Court for an evidentiary hearing on February 4, 2020.  Henry Sewell appeared for the Movants, Frank DeBorde and Lisa Wolgast appeared for the Chapter 11 Trustee in these cases, Walt Jones appeared on behalf of Gateway, and Paul Marr and Lara Fernandez appeared on behalf of the Chapter 7 Trustee for Nilhan Financial.  The Court received voluminous exhibits and heard the testimony of Chuck Thakkar and Mr. Menchise, the Chapter 7 Trustee for Nilhan Financial.  The Court ruled at the conclusion of the hearing on several arguments, and its oral ruling is incorporated herein.  The Court also received and reviewed supplemental briefs on the issues of setoff and recoupment from the parties at Docket Nos. 1330, 1332, 1333 and 1334.  The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This is a core proceeding under 28 U.S.C. §157(b) (2) (B) as it involves the allowance of claims.

The Court entered its Order on Objection to Scheduled Claims of Nilhan Financial, LLC in Each of the Nilhan Developers, LLC and NRCT, LLC Chapter 11 Cases on March 23, 2020 (Doc. No. 1347), requesting the parties to provide the specific amount paid by Nilhan Developers to Bay Point Capital Partners, LP as assignee of Wells Fargo, from the sale of its property during

---

process, provide adequate notice to Nilhan Financial, and allow for a full evidentiary hearing.  Movants thereafter filed the Objection.

this case.  On March 26, 2020, the Chapter 11 Trustee filed a notice and supporting documentation showing Nilhan Developers paid $7,200,000 million to the lender in connection with the sale of its property (Doc. No. 1359).  Movants and the Chapter 7 Trustee filed responses to the notice (Docs. Nos. 1362 and 1363), but no one disputes Nilhan Developers paid $7,200,000 million on the debt secured by the property.

## FACTS

On May 4, 2015, the Jointly Administered Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.  On May 20, 2015, Nilhan Developers filed its Statement of Financial Affairs and Schedules [Case No. 15-58443, Docket Nos. 18 and 19], which were amended on May 21, 2015 [Case No. 15-58443, Docket No. 24].  Schedule F included debts owed to Nilhan Financial in the following amounts: a claim for a loan in the amount of $9,500,000, a claim for a reimbursement in the amount of $83,672, and a claim in the amount of $15,434.07.  On May 20, 2015, NRCT filed its Statement of Financial Affairs and Schedules [Case No. 15-58444, Docket Nos. 18 and19], which were amended on May 21, 2015 [Case No. 15-58444, Docket No. 23].  Schedule F included debts owed to Nilhan Financial as follows: a claim in the amount of $13,953,776 and a claim in the amount of $91,524.

The primary precipitating event for the filing of the bankruptcy cases was a scheduled foreclosure by Wells Fargo Bank on the assets of the Jointly Administered Debtors.  Chuck Thakkar, who is the principal and/or manager of the Jointly Administered Debtors and of Nilhan Financial and Niloy, Inc., has had a long-standing borrowing relationship with Wells Fargo Bank and its predecessors.  The last pre-petition iteration was an Amended and Restated Promissory Note dated April 30, 2013 in the original principal amount of $19,750,000 from Niloy, Inc. and Nilhan Financial, and an Amended and Restated and Consolidated Promissory Note dated April

3

30, 2013 in the original principal amount of $12,910,000 from Chuck and Saloni Thakkar. The notes are cross defaulted and cross collateralized. Each of the identified obligors guarantees the other note and each of the Jointly Administered Debtors are guarantors of the two notes. As of the petition date, the total amount owed on both notes, and guaranteed by the Jointly Administered Debtors, exceeded $22,000,000. Substantially all of the Jointly Administered Debtors' assets were pledged to Wells Fargo as collateral. During the course of these bankruptcy cases, the Wells Fargo claim was paid in full through the liquidation of assets of Nilhan Developers and other Jointly Administered Debtors, (but no assets of NRCT were liquidated). The claim of Wells Fargo (which was subsequently assigned to Bay Point Capital Partners, LP) was finally resolved by a settlement agreement approved by the Court on June 10, 2019. Nilhan Developers paid $7,200,000 of this claim by virtue of the sale of its real property in April 2017.

A second precipitating event in the filing of these cases was efforts by Gateway to collect on judgments obtained in Florida against Chuck Thakkar and certain entities which he manages or in which he holds an interest. None of the Jointly Administered Debtors cases was a judgment debtor to Gateway. Gateway's claims were disallowed in all of these cases except for its claim in the Bay Circle Properties, LLC case, which was secured because Chuck Thakkar was a prior owner of the real property transferred to Bay Circle.

On March 20, 2017, an involuntary Chapter 7 petition was filed against Nilhan Financial in the U.S Bankruptcy Court for the Middle District of Florida. In its Schedules, it identified that it owed its affiliates $61,539,000. The Nilhan Financial Schedules also reflected $72,000,000 of notes receivable from the affiliates. The affiliates were not identified, and the specific amounts owed by specific affiliates was not included. The Schedules included the annotation that the amount owed by affiliates was an "approximate amount owed by affiliates, per 2015 records in

4

need of updating." Ultimately, on December 15, 2017, the bankruptcy case of Nilhan Financial

was converted to a case under Chapter 7 of the Bankruptcy Code and Douglas N. Menchise was

appointed as Trustee ("Chapter 7 Trustee"). The Chapter 7 Trustee never filed a proof of claim

and did not participate in this case until July 31, 2019. By then, Gateway had negotiated a

settlement with the Chapter 7 Trustee in the Nilhan Financial case such that Gateway receives 50%

of any recovery by Nilhan Financial in these cases.

On December 11, 2018, the Bankruptcy Court in these cases appointed Ronald L. Glass as

the Chapter 11 Trustee of the Debtors ("Chapter 11 Trustee").

At the hearing on this matter, counsel for Movants stated that it only objected to the

scheduled claim of Nilhan Financial in the Nilhan Developers case in the amount of $9,500,000.

It did not object to the claim for reimbursement in the amount of $83,672 or the additional claim

in the amount of $15,434.07. Similarly, Movants announced that, as to the NRCT Schedules, they

only objected to the claim of Nilhan Financial in the amount of $13,953,776. They did not object

to the claim of $91,524.[3]

### OBJECTION TO CLAIMS

Movants objected to the $9,500,000 Nilhan Financial claim scheduled in the Nilhan

Developers case in its entirety on several bases.[4] First, they contend that the $9,500,000 claim

---

[3] Additional findings of fact are incorporated in the Court's subsequent analysis.
[4] The Objection sought, in the alternative, an order amending the Schedules or requiring the Chapter 11 Trustee to amend the Schedules as necessary. Notwithstanding a debtor has a right to amend its schedules as a matter of course until the case is closed, once the Chapter 11 Trustee was appointed, he became the representative of the estate. See Official Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In Re W.R. Grace & Co.), 285 B.R. 148, 157 (Bankr. D. Del. 2002) ("a trustee is '*the* representative of the estate'"); see also Taub v. Taub (In re Taub), 427 B.R. 208, 232 (Bankr. E.D.N.Y. 2010) (explaining that a chapter 11 trustee acts on behalf of the estate). The Chapter 11 Trustee's appointment ousted the Debtors' management. As the bankruptcy court in W.R. Grace & Co. explained, the judgment of the debtor and the trustee as to the best interest of the estate might conflict. 285 B.R. at 157. Given that the Chapter 11 Trustee represents the Nilhan Developers and NRCT estates, it is appropriate that Rohan and Niloy Thakkar, as equity holders of the Debtors, rather than the Debtors themselves, filed the Objection and sought the amendment of the Schedules.

listed on the Schedules was just an allocation of the Wells Fargo debt actually owed by Nilhan Financial to Wells Fargo and not debt owed by Nilhan Developers to Nilhan Financial. Movants contend further that, since all of Wells Fargo's claim has been satisfied in these bankruptcy cases, no further sums are due to Nilhan Financial. Secondly, Movants contend that the money Nilhan Developers received indirectly from the Wells Fargo loan did not come through Nilhan Financial, but instead came through Niloy, Inc. As such, they contend there is no consideration for an obligation by Nilhan Developers to Nilhan Financial. Finally, Movants contend that any claim of Nilhan Financial is subject to reduction through set-off or recoupment or counterclaim, particularly for the amount Nilhan Developers paid on the Wells Fargo debt owed by Nilhan Financial.

Movants objected to the $13,953,776 scheduled claim of Nilhan Financial in the NRCT case in its entirety on the basis that there was no evidence in NRCT's books and records that NRCT ever received any proceeds of the Wells Fargo loan from Nilhan Financial. They contend, therefore, there was no consideration for any obligation to Nilhan Financial. Moreover, to the extent the number reflected on the NRCT Schedules was an allocation of the Wells Fargo debt, the Wells Fargo debt was satisfied. Movants contend therefore that NRCT would have no further obligation to Nilhan Financial.

### RESPONSES

The Chapter 11 Trustee, Chapter 7 Trustee, and Gateway ("Respondents") all oppose the Objection on the same basic grounds. First, they contend the Debtors, and specifically Chuck Thakkar, are estopped from objecting to the scheduled claims because the Schedules were filed under oath. The estoppel argument is also based on the statements in Nilhan Financials' Schedules, tax returns, and financial statements, and the 341 testimony of Chuck Thakkar in the Nilhan Financial case**.** The Respondents also contend that the obligations from NRCT and Nilhan

Developers are independent obligations to Nilhan Financial and not merely an "allocation" of the Wells Fargo debt.  They contend that any claim of set-off, recoupment or contribution requires evidence that has not been presented or that Movants do not have standing to assert the claim for recoupment or contribution or that the claim is time barred in the Nilhan Financial case.

## LAW

A determination as to the allowance of a claim begins with 11 U.S.C. § 501(a), which permits a creditor to file a proof of claim.  Under 11 U.S.C. § 1111(a), a proof of claim is deemed filed under Section 501 if it is listed in Schedule F and not identified as disputed, contingent or unliquidated.  Since the claim of Nilhan Financial was not designated as being disputed, contingent or unliquidated, by operation of law, it is therefore deemed to have filed a proof of claim in each of the NRCT and Nilhan Developers cases.  In re 3333 Main LLC, No. 13-51533, 2014 WL 2338273, at *3 (Bankr. D. Conn. May 29, 2014).  A party in interest may object to a claim under 11 U.S.C. § 502(a).  There is no serious dispute that the Movants here are parties in interest since Niloy and Rohan Thakkar are the equity holders in the two Debtors at issue and Nilhan Hospitality is a creditor in the Nilhan Developers case.  A "party in interest" under 11 U.S.C. § 1109(b) is any person with a direct financial stake in the outcome, including any equity participant.  Once an objection to a claim is filed, the objecting party must " produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency . . . . The burden of persuasion under the bankruptcy claims procedure always lies with the claimant . . . ."  3333 Main, 2014 WL 2338273 at *3 (citations omitted).  This same procedure applies where the objection is to scheduled claims as opposed to a proof of claim.  Id.

7

Here, the claimant, Nilhan Financial, relied primarily on judicial estoppel and judicial admissions in support of its claim.  The Chapter 7 Trustee's position is that, because the claims were scheduled in the Nilhan Developers and NRCT Schedules, the Schedules cannot be amended or challenged.  He also relies on the Nilhan Financial Schedules and Chuck Thakkar's 341 testimony in the Nilhan Financial case.  None of these provides a basis for estoppel on these facts.

The equitable doctrine of judicial estoppel is intended to protect courts against parties who seek to manipulate the judicial process by changing their legal positions to suit the exigencies of the moment.  Slater v. U.S. Steel Corp., 871 F.3d 1174 (11th Cir. 2017).  In New Hampshire v. Maine, 532 U.S. 742 (2001) (in which the United States Supreme Court applied the doctrine to bar the State of New Hampshire from taking a different position from that taken by the state during prior litigation), the Court explained that "[u]nder the judicial estoppel doctrine, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  Id. at 742-43.  The Court further noted that the "purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  Id. at 743.

The Eleventh Circuit employs a two-part test to consider whether: (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were "calculated to make a mockery of the judicial system."  Barger v. City of Cartersville, 348 F.3d 1289, 1293-94 (11th Cir. 2003) (quoting Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1308 (11th Cir. 2001)); Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002).  The court must consider both the party's actions—whether he made inconsistent statements—and

his motive—whether he intended to make a mockery of the judicial system. The Eleventh Circuit in Slater v. U.S. Steel Corp., 871 F.3d 1174, ruled that a court should consider all the relevant facts and circumstances of the case when determining whether a party intended to make a mockery of the judicial system. The court further explained that, as an equitable doctrine, judicial estoppel should apply only when the conduct is egregious and "demand[s] equitable intervention." Id. at 1187 (citations omitted).

With respect to the Nilhan Financial Schedules, the statements made in the Schedules were made in a separate proceeding from this one, so consideration of judicial estoppel is appropriate. In those Schedules, though, the amounts due to and from affiliates is a single number and the creditor/obligor is just identified as "affiliates." The undisputed evidence was that Nilhan Financial had this "due to/from affiliates" entry because it served as a "bank" of sorts to all its affiliates, two of whom are the Debtors but many of whom are not the Jointly Administered Debtors. Nowhere in the Nilhan Financial Schedules are Nilhan Developers or NRCT identified specifically. NRCT and Nilhan Developers are affiliates of Nilhan Financial and Movants do not contest that NRCT and Nilhan Developers owe some amount to Nilhan Financial, but the Nilhan Financial Schedules contain no representation as to the amount owed from these two Debtors. Because no amounts owing from NRCT or Nilhan Development were ever specified, Movants are not judicially estopped from contesting how much is owed. Further, the Nilhan Financial Schedules state on their face they are based on the books and records of Nilhan Financial in 2015 that had to be reconciled. Chuck Thakkar testified at the Nilhan Financial 341 to the same effect. Since the representations made by Chuck Thakkar in the Nilhan Financial case were non-specific and heavily caveated, the Court does not find the position advocated by Movants and taken by Chuck Thakkar in this case to be inconsistent. Even if the statements are inconsistent to some

9

extent, because the uncertainty of the amounts owed was stated at the outset and the statements were vague, the Court does not find the present challenge to be a mockery of the judicial system.

With respect to the Nilhan Developers and NRCT Schedules, because the statements made were not in a separate proceeding, but in the same proceeding, judicial estoppel does not apply.  In re Hoffman, 605 B.R. 560, 566 (Bankr. N.D. Ga. 2019) (citing Slater, 871 F.3d at 1181).[5]  Rather, the question is whether the Schedules are a judicial admission binding on the Movants.  Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding on the party making them.  Hoffman, 605 B.R. at 564–65; see also Keller v. U.S., 58 F.3d 1194, 1198 n.8 (7th Cir. 1995); In re Summit United Serv., LLC, No. 03–67061–WHD, Adv. No. 03–6247, 2005 WL 6488106, at *4 (Bankr. N.D. Ga. Sept. 19, 2005).  Judicial admissions may not be controverted unless the court permits the admission to be withdrawn or the pleading containing the admission is amended or withdrawn.  Summit United, 2005 WL 6488106 at *4. Judicial admissions are not evidence, but "have the effect of withdrawing a fact from contention." Id. (citation omitted).  Evidentiary admissions, on the other hand, are not conclusive but are evidence to be taken into consideration by the court.  Asarco, LLC v. Noranda Mining, Inc., 844 F.3d 1201, 1212 n.3 (10th Cir. 2017).  Statements in bankruptcy schedules are executed under

---

[5] Gateway also contends Mr. Thakkar should be equitably estopped from changing the Schedules now.  Equitable estoppel "focuses on the relationship between the litigants and is intended to ensure fair dealings between the parties." Atlanta Retail, Inc. v. Eastman Kodak Co. (In re Atlanta Retail, Inc.), 294 B.R. 186, 197 (Bankr. N.D. Ga. 2003) (citation omitted).  For the doctrine to apply, "the person against whom the estoppel is to apply must have actual or constructive knowledge of the facts and must have induced, through his words or conduct, another to rely upon the purported representation.  The party seeking to assert estoppel must have neither knowledge or reasonable means or opportunity of obtaining knowledge of the facts and must have relied upon the other party's representation to his detriment." Id.  While the Chapter 7 Trustee was entitled to rely on the Debtors' Schedules initially, he was given ample opportunity to produce evidence to support his claims once the Objection was filed.  In combination with Gateway, he submitted over 50 exhibits and testified at the hearing.  Gateway has been litigating with Chuck Thakkar and his family for over 10 years, taken numerous depositions, and participated in every hearing in this case dating back to 2015.  Because a debtor's schedules can be freely amended under the Bankruptcy Rules, a debtor cannot be estopped from amending them, except in accordance with Bankruptcy law.  Gateway and the Chapter 7 Trustee have not been prejudiced by allowing them the opportunity to prove the claim of Nilhan Financial.  Equitable estoppel is not appropriate here.

penalty of perjury and, when offered against a debtor, are eligible for treatment as judicial admissions.  Hoffman, 605 B.R. at 565 (citing In re Vanguard Airlines, Inc., 298 B.R. 626, 635 (Bankr. W.D. Mo. 2003)).  The debtor's schedules, however, are not binding on a trustee.  In re Seltzer, 529 BR 385, 392-93 (Bankr. M.D. Ga. 2015).

Courts have used several analyses in deciding whether to allow a party to be relieved of a judicial admission.  See New Amsterdam Casualty Co v. Waller, 323 F.2d 20, 24 (4th Cir. 1963) ("a court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission"); Oak Mill Ent.2000 Inc v. Knopfler (In re Schraiber), 141 B.R. 1000, 1006 (Bankr. N.D. Ill. 1992) ("Once it is determined that a statement is a judicial admission it is within the court's discretion whether to accept or reject it"); Vanguard Airlines, 298 B.R. 626 (court declined to construe various statements in the schedules and otherwise as judicial admissions).  The most important basis for relieving a party of a judicial admission in the bankruptcy context is that bankruptcy schedules can be freely amended.  Bankruptcy Rule 1009 allows a debtor to amend the schedules at any time until the case is closed.  Fed. R. Bankr. P. 1009(a).  As the Eleventh Circuit has noted, "[t]he duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend [her] financial statements if circumstances change."  Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1274 (11th Cir. 2010) (citations omitted).  Once bankruptcy schedules are amended, the superseded portion ceases to be a judicial admission, and becomes only an evidentiary admission.  See In re Bohrer, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001) (citing White v. ARCO/Polymers, Inc., 720 F.2d 1391, 1396 n. 5 (5th Cir. 1983)); see also In re Cobb, 56 B.R. 440, 442 (Bankr. N.D. Ill. 1985).

11

The Objection includes a request for the Schedules to be amended.  While the Objection is filed by Movants who are not the Debtors, two of the Movants are the equity holders of the Debtors so the Court views the Objection as effectively an attempt by the Debtors to amend the Schedules. The Respondents appear to view the equity holders as equivalent to the Debtors as they argue Chuck Thakkar's statements on behalf of the Debtor should be binding against the equity holders. Moreover, the ability of the Debtors to "freely" amend their Schedules is limited by the appointment of the Chapter 11 Trustee, who at the same time is not bound by the Schedules.  If a chapter 11 trustee were not appointed, the Debtors would simply have amended their Schedules (as no court permission is required), and the Nilhan Financial claims scheduled would just be treated by the court as evidentiary admissions.  The Court sees no reason to view them differently in this context, so it will treat the Schedules as evidentiary admissions.

After considering all of the evidence, the Court finds that Nilhan Developers owed $9,500,000 to Nilhan Financial at the time the bankruptcy case was filed and as scheduled.  The Court rejects the contention that there was no consideration for the obligation or that the $9,500,000 claim was simply an "allocation" of the Wells Fargo debt.  The $9,500,000 obligation is evidenced by a promissory note from Nilhan Developers to Nilhan Financial and is listed in every tax return and financial statement for the consolidated companies presented to the Court. While the Court finds the origin of the $9,500,000 was funds from Wells Fargo, the parties executed a note and treated it as a separate obligation, not just a book entry or an allocation.

However, the question is not just whether Nilhan Developers owed money to Nilhan Financial at the time the case and Schedules were filed, but whether subsequent events in this case, i.e. the payment of the Wells Fargo claim in full by Nilhan Developers and others, is a basis for reducing or eliminating the Nilhan Financial claims in the Nilhan Developers case.  Even judicial

12

admissions and judicial estoppel do not bar an amendment based on a change in circumstances. See Hoffman, 605 B.R. at 566 (finding res judicata did not bar the debtor from amending his claimed exemptions).

The Chapter 7 Trustee argues that the claims bar date in the Nilhan Financial case has passed and that Nilhan Developers is barred from asserting a claim for contribution, subrogation and the like.  But any such deadline would not affect the right of the Chapter 11 Trustee in Nilhan Developers or any party in interest to raise defenses to the claims.  Miller v. New Penn Fin., LLC (In re Miller), No. 15-70981-WLH, 2019 WL 1112335, at *4 (Bankr. N.D. Ga. Mar. 8, 2019) ("The clear weight of authority permits parties to assert time-barred claims defensively.").

Moreover, 11 U.S.C. § 558 preserves defenses available to the debtor, and provides "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses." 11 U.S.C. § 558.  Because Section 558 preserves to the estate the defenses the debtor would have had prepetition, the Court must examine the transaction as though the bankruptcy had not been filed.  "Doing so eliminates the prepetition/post-petition distinction and, in essence, obliterates the requirement that the mutual debts must both be prepetition obligations in a § 558 context."  In re Papercraft Corp., 127 B.R. 346, 350 (Bankr. W.D. Pa. 1991); see also In re PSA, Inc., 277 B.R. 51, 54 (Bankr. D. Del. 2002) (stating that "the prepetition/postpetition distinctions are irrelevant under § 558").

The Chapter 7 Trustee asserts only the Chapter 11 Trustee in these cases can seek contribution from Nilhan Financial.  The Chapter 11 Trustee may assert the debtor's defenses under Section 558, but the right is not exclusive.  See 11 U.S.C. § 558 ("The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate").  Indeed,

13

other parties in interest may raise defenses to the allowance of claims.  See In re DVR, LLC, 582 B.R. 507, 515 (Bankr. D. Colo. 2018), aff'd, 606 B.R. 80 (D. Colo. 2019) (explaining the Code expressly grants broad standing to parties in interest to bring claim objections and air "any legitimate grounds for doubting the claim's validity").  Here, the Chapter 11 Trustee has not raised the defense, opening up the possibility for others to raise the defense to minimize recovery from the estate.

Since a party objecting to a proof of claim may assert defenses, 11 U.S.C. § 558, and setoff and recoupment are affirmative defenses, they may be used to reduce Nilhan Financial's claims in these cases, if otherwise appropriate.  See In re Trans-Action Commer. Investors, Ltd., No. 97-46121, 2002 WL 32341923 (Bankr. N.D. Cal. June 28, 2002).  The right to setoff must be established under state law in order for the debtor to assert setoff as a defense under Section 558. In re PSA, 277 B.R. at 54.  Georgia law permits setoff.  See O.C.G.A. § 13-7-1 ("Setoff does not operate as a denial of the plaintiff's claim; rather it allows the defendant to set off a debt owed him by the plaintiff against the claim of the plaintiff."), see also Super98, LLC v. Delta Air Lines, Inc., 309 F. Supp. 3d 1368, 1381 (N.D. Ga 2018) ("Under Georgia law, a set-off is a counter-demand which a defendant holds against plaintiff, arising out of a transaction extrinsic or independent of the plaintiff's cause of action.") (citations and emphasis omitted); O.C.G.A. § 23-2-76 (recognizing equitable setoff).  Georgia law requires mutuality for setoff.  O.C.G.A. § 13-7-5 ("Between the parties themselves, any mutual demands existing at the time of commencement of the suit may be set off.").

Similarly, recoupment is an affirmative defense available to a party objecting to claims under Section 558.  The recoupment statute, O.C.G.A. § 13-7-2, provides that recoupment "is a right of the defendant to have a deduction from the amount of the plaintiff's damages for the reason

14

that the plaintiff has not complied with the cross-obligations or independent covenants arising under the contract upon which suit is brought." O.C.G.A. § 13-7-3 explains the difference between setoff and recoupment as follows: "Recoupment differs from setoff in this respect: Any claim or demand the defendant may have against the plaintiff may be used as a setoff, while only a claim or demand arising out of the same transaction as that sued on by the plaintiff may be used as a recoupment."

Under Georgia law, a guarantor who pays the debt owed by its principal obligor has two separate and distinct remedies against the principal obligor: recoupment and subrogation. O.C.G.A. § 10-7-41 provides that "[p]ayment by a surety or endorser of a debt past due shall entitle him to proceed immediately against his principal for the sum paid, with interest thereon, and all legal costs to which he may have been subjected by the default of his principal." A guarantor's right to recoupment under O.C.G.A. § 10-7-41 is limited to the amounts paid on behalf of the primary obligor. See Keys v. JRN, Inc., No. 1:07-CV-16(WLS), 2009 WL 10673438, at *6 (M.D. Ga. Mar. 30, 2009). The guarantor's payment of the debt of the principal obligor triggers the guarantor's right to "proceed immediately against the principal for the sum paid, with interest thereon, and all legal costs" incurred. U.S. Fidelity & Guar. Co. v Collins, 298 S.C. 165, 167 (Ct. App. 1989) (citing O.C.G.A. § 10-7-41). If the primary obligor does not voluntarily reimburse the guarantor for amounts paid upon default, O.C.G.A. § 10-7-41 provides the guarantor a cause of action. See Lahaina Acquisitions, Inc. v. GCA Strategic Inv. Fund Ltd., 261 Ga. App. 800 (2003).

Whether called setoff or recoupment, it is undisputed that Nilhan Developers paid $7,200,000 to Wells Fargo to satisfy Nilhan Financial's primary obligation to Wells Fargo. Movants contend the amount paid on the Wells Fargo debt was $7,364,958.19 (Doc. No. 1362), which includes $7,300,000 paid for the property plus certain adequate protection payments made

by Nilhan Developers.[6]  As the Chapter 7 Trustee observes, however, while it appears the purchase

price for the Nilhan Developers property was $7,300,000, Mr. Thakkar contributed $100,000 of

that at the closing (Doc. No. 1363).  It is not disputed that Nilhan Developers received only

$7,200,000 for the property from a party not already obligated on the Wells Fargo debt.

 It is also undisputed that the $9,500,000 obligation of Nilhan Developers to Nilhan

Financial arose when Nilhan Developers borrowed money which originated from Wells Fargo.

No one challenged Chuck Thakkar's testimony that the original source of the money was Wells

Fargo.  No one disputes that Nilhan Developers paid Bay Point Capital Partners, L.P., as assignee

of Wells Fargo, $7,200,000 and that this payment occurred post-petition.  It is not unusual that a

creditor's prepetition claim would be satisfied or reduced by post-petition liquidation of assets –

that is the purpose of bankruptcy.  So under any theory, Nilhan Developers should get the benefit

of the $7,200,000 it paid on the Wells Fargo debt reducing the claim of Nilhan Financial

accordingly.

 The Court allows Nilhan Financial a claim in this case in the amount of $9,500,000 less

the $7,200,000 paid on the Wells Fargo debt on account of the sale of its property.  The claims of

Nilhan Financial in the amount of $83,672 and $15,434.07, to which no objections were made, are

also allowed in the case of Nilhan Developers.

 With respect to NRCT, the Court finds no basis for allowing a claim to Nilhan Financial in

the amount of $13,953,776.  To the extent the Respondents are attempting to preclude a finding

NRCT does not owe Nilhan Financial through judicial estoppel, the doctrine does not apply here

---

[6] That number is derived from the Report of Paul Dopp and appears to include adequate protection payments made to
Wells Fargo during this case.  (Doc. No. 1030.)  Mr. Dopp has never been subjected to cross examination, and
numerous questions were raised about his report when it was submitted to the Court as an exhibit to a motion by the
Chapter 11 Trustee.  The Court, therefore, did not rely on it.  No other evidence of payments on the debt has been
presented, other than from the sale of the property.  Whether adequate protection payments made by Nilhan Developers
should be credited to the debt was not specifically argued by the parties; to the extent the parties want the Court to
consider this issue, they may file the appropriate pleading.

as there has been no prior proceeding, judgment, or decision rendered on this matter.  See Hoffman,

605 B.R. at 566 (citing Slater, 871 F.3d at 1181).  As discussed above, the Court will deem the

Objection an amendment of the Schedules by NRCT and treat the statements in the Schedules as

evidentiary admissions.

The NRCT Schedules did list a claim in the amount of $13,953,776 to Nilhan Financial,

but no other evidence supports that liability.  There is simply no evidence of an actual transfer of

funds from Nilhan Financial to NRCT to support the claimed amount.  No note was alleged or

established between NRCT and Nilhan Financial.  Nilhan Financial never reflected an obligation

in this amount in any tax returns or financial statements and did not show an obligation in any

amount from NRCT on its tax return or financial statements after 2009.  In fact, on the Nilhan

Financial general ledger as of December 31, 2011, NRCT is listed as owing Nilhan Financial zero

dollars.  Similarly, there is nothing in the Nilhan Financial case to demonstrate NRCT actually

owed Nilhan Financial anything in the realm of $13 million.  The Chapter 7 Trustee acknowledged

at the hearing that NRCT was referenced nowhere in the Nilhan Financial Schedules and was never

mentioned at the 341 meeting.

Further, the Court appointed an examiner with respect to the Jointly Administered Debtors

(Doc. No. 134), and the subsequent analysis by the Examiner shows something different than the

amounts reflected in the NRCT schedules.  The Examiner filed two reports.  Both reports observe

the intercompany accounting for NRCT was slightly different than the other Jointly Administered

Debtors: while the books of the Jointly Administered Debtors other than NRCT showed specific

amounts owed to Nilhan Financial related to the Well Fargo debt (and a corresponding entry by

Nilhan Financial) and a separate "due to/from affiliates" account, NRCT in "prior years"

consolidated its liability on the guaranties of the Wells Fargo debt with "Due to/from Owner."

(Doc. No. 157 Ex. A p. 8; Doc. No. 274 Ex. A. p. 4 fn 4.)  The "owner" of NRCT is not Nilhan Financial, but Rohan and Niloy Thakkar.  This book entry, therefore, does not support a conclusion that the "Due to/from Owner" account is owed to Nilhan Financial.  Further, no evidence has been presented as to how much of this entry is related to the Wells Fargo debt, that under the Chapter 7 Trustee's theory may be owed to Nilhan Financial.  In addition to the "Due to/from Owner" account, the NRCT books show a specific amount owed to Nilhan Financial.  The Examiner's Report on Debtors' Intercompany Reconciliation shows the amount owed by NRCT to Nilhan Financial as of December 31, 2014 was $85,517.17, while the amount owed to Nilhan Financial as of August 31, 2015 is reflected as $25,390.61.  (Doc. No. 274, pgs 72-77).  The detailed entries of transactions between Nilhan Financial and NRCT from January 1, 2014-August 31, 2015 are included in the report. (Doc. No. 274, pgs 25-27).  This same report shows $14,538,049.89 was "Due to owner/member."  Frankly, none of the numbers determined by the Examiner are exactly what is listed in the NRCT Schedules.  But, nothing in the Examiner's reports, indicates or supports that NRCT actually owed $13,953,776 to Nilhan Financial.  Since the Examiner's review and reports were performed after the Schedules were filed, and at the behest of the Court, the Court finds it more appropriate to rely on those reports.  This is particularly true where no other evidence in these cases, or the Nilhan Financial cases supports a conclusion that NRCT owes Nilhan Financial the amount claimed.

The Chapter 7 Trustee has provided no evidence NRCT owes Nilhan Financial the claim of $13,953,776.  Accordingly, the Nilhan Financial claim of $13,953,776 in the NRCT case is disallowed.  No objection was stated to the claim of $91,524, and that claim of Nilhan Financial is allowed.

**IT IS THEREFORE HEREBY ORDERED** that Nilhan Financial holds a claim in the case of Nilhan Developers in the amount of $15,434.07, plus $83,672, plus $2,300,000, based on the undisputed amount paid by the Debtor to Wells Fargo from the sale of the property;

**IT IS HEREBY ORDERED** further that Nilhan Financial holds a claim in the case of NRCT in the amount of $91,524.

**IT IS ORDERED FURTHER** that this Order is a final order.

**END OF DOCUMENT**

**Distribution List**

Ronald L. Glass
Glass Ratner Advisory & Capital Group
Suite 110 3391
Peachtree Road Atlanta, GA 30326

Lisa Wolgast
Frank W. DeBorde
Morris, Manning & Martin LLP
3343 Peachtree Rd., N.E., Suite 1600
Atlanta, Georgia 30326

Henry F. Sewell, Jr.
Law Offices of Henry F. Sewell Jr., LLC
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305

Paul Reece Marr
Paul Reece Marr, P.C.
300 Galleria Pkwy NW, Ste 960
Atlanta, GA 30339

Lara Roeske Fernandez, Esq.
Florida Bar No. 0055800
101 E. Kennedy Boulevard, Suite 2700
Tampa, Florida 33602

Walter E. Jones
Balch & Bingham, LLP
30 Ivan Allen Jr. Blvd NW, Ste 700
Atlanta, GA 30308

Clay Martin Townsend
Morgan & Morgan, PA
20 North Orange Avenue Suite 1500
Orlando, FL 32801

Chitttranjan (Chuck) Thakkar
6050 Peachtree Industrial Boulevard
Norcross, GA 30071

Chitttranjan (Chuck) Thakkar
17885 Collins Ave
#4001
Sunny Isles, FL 33160

M.Denise Dotson
M.Denise Dotson, LLC
PO Box 435
Avondale Estates, GA 30003

Thomas Wayne Dworschak
Office of the U. S. Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, GA 30350